UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC.,<br><br>　　　　　Plaintiff,<br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>　　　　　Defendant. | Civil Action No. 1:22-cv-10407-PBS |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Defendant, United States Immigration and Customs Enforcement ("ICE" or "Defendant"), moves for summary judgment as to ICE's response to Plaintiff in this Freedom of Information Act ("FOIA") case. Plaintiff, American Civil Liberties Union of Massachusetts, Inc. ("ACLUM"), brought this action under the FOIA, 5 U.S.C. § 552, seeking any and all guidance to ICE Office of the Principal Legal Advisor ("OPLA") and/or the Office of Chief Counsel ("OCC") attorneys that is currently in effect. Dkt. 1-1. The adequacy of ICE's search is not at issue. The sole question for the court to decide is the legal justification for redactions in a stipulated subset of 43 documents that ICE produced. The redactions are: (1) internal information that ICE found was protected by the attorney work-product privilege; and (2) information compiled for law enforcement purposes which would disclose techniques, procedures, and/or guidance for law enforcement investigations. This Court should grant summary judgment in favor of ICE because ICE's redactions were authorized and reasonable under FOIA Exceptions (b)(5) and (b)(7)(E).

1

## STATEMENT OF UNDISPUTED MATERIAL FACTS

ICE relies upon its Statement of Undisputed Material Facts ("SUMF") being filed simultaneously herewith, including the Declaration of Fernando Pineiro, and exhibits attached thereto.

## LEGAL STANDARDS

The FOIA, 5 U.S.C. § 552, "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. United States Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003), *citing John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). While the FOIA requires agency disclosure under certain circumstances, it also recognizes "that public disclosure is not always in the public interest." *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982). The statute thus requires agencies to release documents responsive to a properly submitted request but also provides nine statutory exemptions to this general disclosure obligation. *See* 5 U.S.C. §§ 552(a)(3), (b)(1)-(b)(9). The exemptions are grounded in Congress' recognition "that legitimate governmental and private interests could be harmed by release of certain types of information . . . ." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Thus, while the Supreme Court has said these exemptions are to be "narrowly construed," *id.* at 630, it has cautioned courts not to fail to give the exemptions "meaningful reach and application." *John Doe Agency*, 493 U.S. at 152; *see also Stalcup v. CIA*, 768 F.3d 65, 69 (1st Cir. 2014).

Summary judgment is the procedure by which courts resolve nearly all FOIA actions. *Cunningham v. U.S. Dep't of Justice*, 40 F. Supp. 3d 71, 82 (D.D.C. 2014); *see also Stalcup*, 768 F.3d at 69. As with non-FOIA cases, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Stalcup*, 768 F.3d at 69.

It is in the context of summary judgment that courts determine whether the agency's search was "reasonably calculated to discover the requested documents," and whether the affidavits submitted by the government support the government's claims of exemption from disclosure. *Church of Scientology v. U.S. Dep't of Justice*, 30 F.3d 224, 229-30 (1st Cir. 1994); *see also Oleskey ex rel. Boumediene v. U.S. Dep't of Defense*, 658 F. Supp.2d 288, 294 (D. Mass. 2009) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also Sephton v. FBI*, 442 F.3d 27, 29 (1st Cir. 2006). Agency affidavits "are accorded a presumption of good faith," *SafeCard Servs., Inc. v. Sec. & Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and are entitled to "substantial weight" in FOIA matters, *Bell v. United States*, 563 F.2d 484, 487 (1st Cir. 1977). The test of sufficiency of the submitted affidavits is whether the affidavit demonstrates by "sufficient description [that] the contested document logically falls into the category of the exemption indicated," and the court "need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith." *Id.*; *see also Hrones v. CIA.*, 685 F.2d 13, 18 (1st Cir. 1982). A court reviews an agency's response to a FOIA request *de novo*. *See* 5 U.S.C. § 552(a)(4)(B).

## ARGUMENT

In accordance with the statutory requirements of the FOIA, the Pineiro Declaration contains a complete description of, and justification for, the information exempt pursuant to FOIA Exemptions (b)(5) and (b)(7)(E) of the FOIA, 5 U.S.C. §§ 552(b)(5), 552(b)(7)(E). *See* Pineiro Decl. ICE has adequately justified its assertion of these exemptions in its *Vaughn* index (Exhibit 1 to Pineiro Decl.) and has demonstrated that it did not improperly withhold information from ACLUM. Accordingly, ICE is entitled to summary judgment.

A. **ICE Properly Withheld Information Pursuant to Exemption 5**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *State of Maine v.*

3

*U.S. Dep't of Interior*, 298 F.3d 60, 66 (1st Cir. 2002); 5 U.S.C. § 552(b)(5). "Exemption 5 incorporates the privileges available to Government agencies in civil litigation, such as the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021); *Dep't of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001); *see also State of Maine*, 298 F.3d at 66.

ICE properly applied Exemption (b)(5) to redact information protected under the attorney work-product doctrine. "It is well established that this exemption [(b)(5)] was intended to encompass the attorney work-product rule." *FTC v. Grolier Inc.,* 462 U.S. 19, 20 (1983). "The privilege protects work done by an attorney in anticipation of, or during, litigation from disclosure to the opposing party." *State of Maine*, 298 F.3d at 66. The First Circuit has held that "documents should be deemed prepared for litigation and within the scope of the Rule if, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *Id.* at 68 (internal citations omitted). "The purpose of the privilege is to protect the integrity of the adversary process by 'providing a working attorney with a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories.'" *ACLU v. United States Dep't of Educ.*, 320 F. Supp. 3d 270, 281 (D. Mass. 2018) (citing *Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Office for U.S. Attorneys*, 844 F.3d 246, 250–51 (D.C. Cir. 2016)). Invocation of the privilege does not depend on the existence of a specific case or claim. *Nat'l Ass'n of Criminal Def. Lawyers*, 844 F.3d at 255; *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992) (documents that "contain[ ] tips for handling [a class of] cases that could affect subsequent . . . litigation" are the "sort of information—prepared in anticipation of litigation— [that] falls within the attorney work-product privilege and, therefore, within exemption 5"), *abrogated on other grounds*, *Milner v. Department of the Navy*, 131 S. Ct. 1259 (2011).

Here, ICE properly withheld portions of internal guidance issued by OPLA to ICE attorneys in contemplation of and for the purpose of advancing litigation before the immigration courts. The documents at issue were sent by OPLA attorneys to other OPLA attorneys. SUMF ¶¶ 9, 13. OPLA attorneys serve as the exclusive representatives of the Department of Homeland Security in immigration removal proceedings before the Executive Office of Immigration Review. *Id.* ¶¶ 10, 21. The documents consist of "Broadcast Announcements," "Broadcast Messages," "Practice Pointers," "Standard Operating Procedures," and other emails, which convey confidential practice pointers, legal strategies, legal arguments, and legal analysis on various issues arising during litigation before the immigration courts, as well as guidance on how to conduct that litigation *Id.* ¶ 15; Pineiro Decl. Ex.1. These documents were drafted to support and advise ICE attorneys litigating in immigration court and assist them in prevailing on behalf of the government. *Id*. Such information is squarely protected by the attorney work-product privilege. *See Hawkinson v. ICE*, 554 F. Supp. 3d 253, 271 (D. Mass. 2021) (document "drafted by OPLA OCC Boston in order to provide guidance to their attorneys with respect to the handling of bond hearings that were anticipated to occur as the result of the Brito decision" were properly withheld as attorney work-product); *ACLUM*, 320 F. Supp. 3d at 280-82 (portions of Procedures Manual that provided guidance to attorneys in advance of initiating litigation to collect student loan debt was properly withheld as attorney work-product); *Nat'l Ass'n of Criminal Def. Lawyers*, 844 F.3d at 246, 255 (DOJ manual for federal prosecutors was protected by the work-product privilege); *see also ACLU v. DOJ*, 880 F. 3d 473, 486 (9th Cir. 2018) ("the portions of the USABook that present legal arguments supporting the agency's positions on the type of authorization necessary to obtain electronic information are attorney work product"). Release of this information would deprive ICE attorneys of "a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories'" regarding their practice before the immigration courts. *ACLUM,* 320 F. Supp. 3d at 281. Thus, ICE properly found

that the work-product privilege applies to all of the substantive redactions, and ICE is entitled to summary judgment.

The *Vaughn* index filed with this motion provides additional, document-specific detail about the reasons why ICE withheld information pursuant to Exemption 5. Pineiro Decl., Ex. 1.

### B. ICE Properly Withheld Information Pursuant to Exemption 7(E)

ICE properly withheld the following limited information pursuant to Exemption 7(E): internal agency group email addresses; screenshots of OPLA's internal PLAnet database, instruction for attorneys on how to use it, and a PLAnet database code; and law enforcement sensitive processes and procedures related to INTERPOL Notices. SUMF ¶ 27. To meet its burden, ICE must first establish that the records are law enforcement records and then show that they fit within one of the subcategories of Exemption 7.

#### 1. Law Enforcement Threshold

Exemption 7 guards against the release of information that has been "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7); *Abdul-Alim v. Wray*, 277 F. Supp. 3d. 199, 213 (D. Mass. 2017) ("Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes."). Courts assume that a "law enforcement agency[s']" records are for law-enforcement purposes, because government agencies "typically go about their intended business," and courts apply a "more deferential attitude toward [their] claims of 'law enforcement purpose.'" *Pratt v. Webster*, 673 F.2d 408, 418–19 (D.C. Cir. 1982); *Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016) ("Exemption 7 uses the term 'law enforcement' to describe the act of enforcing the law, both civil and criminal.").

ICE is a law enforcement agency. *See Advancement Project v. U.S. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 144 (D.D.C. 2021) ("ICE's central mission is to enforce immigration law, so its

6

claims about the purpose of withheld records deserve deference."); *see also Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 31 (D.D.C. 2018) ("[T]his Court concludes, consistent with many other decisions in this Circuit, that ICE is a law enforcement agency."). Pursuant to the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of non-citizens, subject to certain exceptions. *See* 8 U.S.C. § 1103; SUMF ¶ 18. ICE is the largest investigative arm of DHS and the second largest investigative agency in the federal government. *Id.* ¶ 19. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries, and is responsible for enforcing the nation's immigration laws, and identifying and eliminating vulnerabilities within the nation's borders. *Id*. ICE OPLA is the largest legal program within DHS, with over 1,250 attorneys and 290 support personnel. *Id.* ¶ 20. By statute, OPLA serves as the exclusive representative of DHS in immigration removal proceedings. *Id.* ¶ 21. The Court should therefore defer to ICE's assessment that the records at issue were compiled for law enforcement purposes. *See Pratt*, 673 F.2d at 418–19.

The "deferential" standard of review in this circumstance is not "vacuous." *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998). Instead, the agency's declarations "must establish a rational 'nexus between the investigation and one of the agency's law enforcement duties,' and a connection between an 'individual or incident and possible security risk or violation of federal law.'" *Id.* (quoting *Pratt*, 673 F.2d at 420–21); *see also Moradi v. Morgan*, 527 F. Supp. 3d 144, 159 (D. Mass. 2021). The records and information at issue in this matter were compiled by ICE to assist in the conduct of removal proceedings before EOIR and pertain to ICE's obligation to enforce the immigration laws of the United States by investigating, detaining, and pursuing removal proceedings

against non-U.S. individuals who may be present in the United States illegally. *Id.* ¶ 24; *see Long v. Immigr. & Customs Enf't*, 149 F. Supp. 3d 39, 49 (D.D.C. 2015) ("[R]ecords concerning how [ICE] databases are constructed and how they operate .... easily qualify as records or information 'compiled for law enforcement purposes.'"); *see also Roseberry-Andrews*, 299 F. Supp. 3d at 33 (collecting cases); *Am. Immigr. Laws. Ass'n v. U.S. Dep't of Homeland Sec.*, 485 F. Supp. 3d 100, 111 (D.D.C. 2020) ("CBP's computer systems and means of communication enable it to convey law enforcement information, "gather, analyze and utilize" this information, and run "database queries" to carry out its enforcement mandate.").

Additional information about the law enforcement purpose of each record withheld in part is supplied in ICE's *Vaughn* index. Pineiro Decl., Ex. 1. Because the withheld information was compiled for law enforcement purposes, SUMF ¶ 25, the threshold requirement of FOIA Exemption 7 is met.

2. Techniques, Procedures, and Guidelines

Exemption 7(E) permits agencies to withhold law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."[1] 5 U.S.C. § 552(b)(7)(E). Information may be withheld

---

[1] The D.C. Circuit has held that an agency must show "(i) that the withheld records or information would disclose techniques and procedures for law enforcement investigations and (ii) that their disclosure would reasonably risk circumvention of the law." *Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016). Some circuit courts of appeal have concluded that the circumvention of law requirement "applies only to guidelines for law enforcement investigations or prosecutions, not to techniques and procedures." *See Villar v. FBI*, 2018 WL 3542861, at * n. 8 (D. N.H. July 23, 2018) (citing *Am. Civil Liberties Union of N. California v. United States Dep't of Justice*, 880 F.3d 473, 491 (9th Cir. 2018) and *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681–82 (2d Cir. 2010)). The First Circuit has not addressed this issue. *Id.* Because ICE has demonstrated risk of circumvention of the law for all of the information withheld under 7(E), the Court does not need to reach this question.

"not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009); *see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting that exemption 7(E) offers "a relatively low bar for the agency to justify withholding" information).

First, ICE applied a limited number of Exemption 7(E) redactions to protect from disclosure internal agency group mailbox addresses, screenshots of OPLA's internal PLAnet database, as well as instruction for attorneys on how to use it, and a PLAnet database code, none of which is commonly known. SUMF ¶¶ 27, 34. The group mailbox addresses are used by ICE officers, Special Agents, and OPLA attorneys for internal purposes to conduct agency work and advance ICE's mission. *Id.* ¶ 28. The PLAnet database is a case management system, used primarily by OPLA attorneys to manage their immigration cases. *Id.* ¶ 29. Officers within ICE Office of Enforcement and Removal Operations, which is responsible for identifying non-citizens illegally present in the United States, apprehending them, managing them while they are in custody, and removing them from the United States, also use PLAnet to stay abreast of changes in custody decisions for a particular non-citizen and to help with the execution of final orders of removal. *Id.* "ICE's internal methods of managing, collecting, and organizing law enforcement data qualify as techniques, procedures or guidelines for the purposes of Exemption 7(E)." *Advancement Project*, 549 F. Supp. 3d at 145. The disclosure of internal group email inbox addresses and PLAnet information could aid unauthorized parties in gaining improper access to law enforcement databases and systems and assist in the unauthorized party's navigation of those law enforcement databases and systems. *Id.* ¶ 30. Knowing the database structure, how to navigate the system, or internal paths and codes could reveal sensitive information that would allow a hacker to access or manipulate the agency's database or systems. *Id.* ¶ 31; *see*

9

*Advancement Project*, 549 F. Supp. 3d at 147 ("With respect to the records related to ICE's internal case management systems, the agency asserts that a wrongdoer could misuse information to breach its systems and alter or delete data. The Court agrees.") (internal citations omitted). Likewise, release of the internal agency group mailbox addresses would increase the chances that bad actors could harm the agency by attempting to hack ICE systems, such as through the use of phishing scams, or by attacking ICE systems, such as through a brute force attack. SUMF ¶ 32; *see Rojas-Vega v. ICE*, 302 F. Supp. 3d 300, 310-11 (D.D.C. 2018) (affirming use of Exemption 7(E) by ICE to withhold "internal URLs, case numbers, case categories, subject identification numbers, and internal identifying codes and departure statuses."); *Roseberry-Andrews*, 299 F. Supp. 3d at 32 (ICE properly withheld "information about ICE databases, such as internal resource-location addresses and case numbers" under Exemption 7(E)).

ICE also withheld law enforcement sensitive information regarding the process and procedures for using INTERPOL Notices in removal proceedings. SUMF ¶ 36. INTERPOL Notices are international alerts circulated by Interpol to communicate information from police in a member state to their counterparts around the world about crimes, criminals, and threats. *Id.* ¶ 37. Disclosure of law enforcement sensitive techniques and procedures regarding the use of INTERPOL Notices in removal proceedings, including how to verify the Notices, would reveal law enforcement techniques, procedures, or guidelines which could reasonably be expected to risk circumvention of the law. *Id.* ¶ 38. Disclosure of these techniques and guidelines could permit those seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. *Id.* ¶ 39. This information is not widely known. *Id.* ¶ 40. Disclosure serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. *Id.*

The *Vaughn* index filed with this motion provides additional, document-specific detail about the reasons why ICE withheld information pursuant to Exemption 7(E). Pineiro Decl., Ex. 1.

### C. ICE Disclosed All Reasonably Segregable Information

Finally, ICE has established that all reasonably segregable, non-exempt information has been disclosed. SUMF ¶ 48.  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). ACLUM cannot make that showing. Indeed, the record here shows that ICE exercised its discretionary authority to release much of the substance of the documents, as long as it did not infringe too far on the core values underlying the attorney work-product privilege. ICE conducted a line-by-line review of the documents at issue and ICE did not withhold any non-exempt information on the grounds that it was non-segregable. SUMF ¶ 49.  This Court should sustain ICE's redactions and grant summary judgment in favor of ICE.

### CONCLUSION

Based upon the foregoing, Defendant's Motion for Summary Judgment should be granted.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:   /s/ *Erin E. Brizius*
ERIN E. BRIZIUS
Assistant U.S. Attorney
John J. Moakley Federal Courthouse
One Courthouse Way, Ste. 9200
Boston, MA  02210
(617) 748-3398
erin.e.brizius2@usdoj.gov