UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC.,<br><br>       Plaintiff,<br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>       Defendant. | Civil Action No. 1:22-cv-10407-PBS |

**<u>DECLARATION OF FERNANDO PINEIRO</u>**

**I.   INTRODUCTION**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

    1.     I am the FOIA Director of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act Office (the "ICE FOIA Office"). The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS"). The ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2. As the FOIA Director my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office regarding the processing of FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In connection with my official duties and responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to the FOIA and the Privacy Act.

3. This declaration describes the process by which ICE received Plaintiff's FOIA request and searched for, processed, and disclosed responsive records.

4. Additionally, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration describes the portions of records ICE withheld in response to Plaintiff's FOIA request and the basis for ICE's withholdings pursuant to FOIA Exemptions (b)(5) and (b)(7)(E). Attached as **Exhibit 1** is the *Vaughn* index, which completely and accurately describes the withholdings challenged by the Plaintiff and the bases for the withholdings.

## II. PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA REQUEST AND THE INSTANT LITIGATION

5. Plaintiff submitted a FOIA request to ICE on January 31, 2022, seeking "[a]ny and all guidance to ICE OPLA and/or OCC attorneys that is currently in effect."

6. On March 16, 2022, Plaintiff filed the Complaint in this action.

7. On March 21, 2022, the ICE FOIA Office tasked the ICE Office of the Principal Legal Advisor ("OPLA") to conduct a search for responsive records. OPLA conducted searches of the OPLA Boston Field Office and the OPLA Field Legal Operations ("FLO") Office for responsive records. The responsive records found were then sent to the ICE FOIA Office for processing on April 25, 2022.

8. On May 23, 2022, ICE made a production of responsive records to Plaintiff, consisting of 613 pages subject to various FOIA Exemptions, including FOIA Exemptions (b)(5),

(b)(6), (b)(7)(C), and (b)(7)(E).

9.	On June 17, 2022, ICE made a second production of responsive records to Plaintiff, consisting of 141 pages subject to various FOIA Exemptions, including FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

10.	On November 16, 2022, upon litigation review, ICE made a supplemental re-release of three pages of responsive records, lifting some FOIA Exemption (b)(5) withholdings on each of the three pages.[1]

**III.	ORGANIZATION OF ICE'S *VAUGHN* INDEX**

11.	Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a *Vaughn* index accompanies this declaration providing a description of each redaction and applicable exemption in the pages that are at issue. Plaintiff has agreed to challenge only the redactions pursuant to Exemptions (b)(5) and (b)(7)(E) in 43 documents attached hereto as Ex. 2.

12.	The *Vaughn* index is in a table format. The first row contains the following heading titles: Entry Number, Bates Stamp Page Number(s); Withholding: Full/Partial; Description of Records and Redactions and Reasons for Redactions; and Exemption(s) Applied.

13.	The first heading, Entry Number, refers to the document contained in a compilation of the pages that are being challenged by the Plaintiff, and range from 1-43. The second heading, Bates Stamp Page Number(s), refers to the bates stamp page number at the bottom of each page, which corresponds to the location of a specific page within the complete corpus of records produced to Plaintiff. The third heading, Full/Partial Withholding, refers to the level of withholdings taken on the documents. The information below the fourth heading, Description of Records and Redactions and Reasons for Redactions, describes the redacted information and the

---

[1] Bates pages 2022-ICLI-00032 597, 598, and 674.

justification for redaction. The fifth heading, Exemption(s) Applied, describes the exemptions applied to the redactions in the documents.

## IV. DESCRIPTION OF THE RECORDS AT ISSUE

14. At issue in this case are 43 documents responsive to Plaintiff's FOIA request. Of the 43 documents, all 43 documents were subject to partial withholding. The withheld portions of the emails and documents are intra-agency communications between and among ICE attorneys. At the time of the emails and documents, including up to the present day, ICE attorneys represent DHS in removal proceedings before the Executive Office for Immigration Review ("EOIR") across the country and are actively litigating on behalf of the government in immigration courts nationwide.

15. A complete description of the 43 documents identified by Plaintiff, and the bases for the withholding of information in said documents, are detailed in ICE's *Vaughn* Index.

## V. APPLICABLE FREEDOM OF INFORMATION ACT WITHHOLDINGS
### FOIA Exemption (b)(5)

16. Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context. The information that ICE has withheld under FOIA Exemption (b)(5) is protected by the attorney work-product privilege.

17. All of the (b)(5) withholdings at issue are redactions of information exchanged between and among ICE attorneys, in contemplation of ongoing immigration litigation before the immigration courts. All of the information withheld under Exemption (b)(5) is thus protected from disclosure under the attorney work-product doctrine. The withheld information was prepared for the purpose of advancing DHS's position in active and pending litigation before the immigration courts and contains practice pointers, legal strategies, legal analysis, legal arguments, and guidance on conducting that litigation. Factual information and case summaries have not been withheld.

**FOIA Exemption (b)(7) Threshold**

18. The FOIA, 5 U.S.C. § 552(b)(7), establishes a threshold requirement that to withhold information on the basis of Exemption (b)(7), the records or information must be compiled for law enforcement purposes. The information for which FOIA Exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of non-citizens, subject to certain exceptions. *See* 8 U.S.C. § 1103. ICE is the largest investigative arm of DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries. ICE is responsible for enforcing the nation's immigration laws and identifying and eliminating vulnerabilities within the nation's borders.

19. The Office of the Principal Legal Advisor ("OPLA") is the largest legal program in DHS, with over 1,250 attorneys and 290 support personnel. By statute, OPLA serves as the exclusive representative of DHS in immigration removal proceedings before EOIR, litigating all removal cases including those against criminal non-citizens, terrorists, and human rights abusers. OPLA also provides a full range of legal services to ICE programs and offices. OPLA provides legal advice and prudential counsel to ICE personnel on their customs, criminal, and immigration law enforcement authorities, the Freedom of Information Act and Privacy Act, ethics, liability under the Federal Tort Claims Act, and a range of administrative law issues, such as contract, fiscal, and employment law. OPLA attorneys provide essential support to the Department of

Justice in the prosecution of ICE cases and in the defense of ICE's authorities in federal court. In addition to its headquarters in Washington, D.C., OPLA has 25 field locations with a presence in more than 60 offices throughout the United States.

20. The ICE information at issue in this case was compiled by ICE to assist in the conduct of removal proceedings before EOIR and relates to ICE's obligation to enforce the immigration laws of the United States by investigating, detaining, and pursing removal proceedings against non-U.S. individuals who may be illegally present in the United States. Therefore, all of the ICE information responsive to Plaintiffs' FOIA request withheld under Exemption (b)(7)(E) pertains to the detention and removal of individuals who may be illegally present in the United States, was compiled for law enforcement purposes, and meets the threshold requirement of FOIA Exemption (b)(7).

**Exemption (b)(7)(E)**

21. FOIA Exemption (b)(7)(E), 5 U.S.C. §552(b)(7)(E), protects from disclosure records complied for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

22. Accordingly, ICE applied FOIA Exemption (b)(7)(E) to protect from disclosure information related to internal agency group email addresses, Interpol Notices, and screenshots, instructions, and a database code related to the ICE OPLA internal database, PLAnet. Disclosure of this information could reveal law enforcement techniques, procedures, and/or guidelines which could reasonably be expected to risk circumvention of the law.

23. ICE officers, Special Agents, and OPLA attorneys use the internal group email

inboxes to conduct their official job duties. These email inboxes contain and facilitate communications amongst ICE employees and are used to advance the ICE mission, which is to protect the United States from the cross-border crime and illegal immigration that threatens national security and public safety.

24. The PLAnet database is a case management system used primarily by OPLA attorneys to manage their immigration cases. The ICE Office of Enforcement and Removal Operations ("ERO") is responsible for identifying non-citizens illegally present in the United States, apprehending them and managing them while they are in custody, and removing them from the United States. ERO Officers also use PLAnet to stay abreast of changes in custody decisions for a particular non-citizen and to help with the execution of final removal orders. The basic function of the system is to provide attorneys and ERO Officers with comprehensive information on cases being litigated under the Immigration and Nationality Act in immigration court and federal court.

25. The disclosure of internal group email inbox addresses and PLAnet information could aid unauthorized parties in gaining improper access to law enforcement databases and systems and assist in the unauthorized party's navigation of those law enforcement databases and systems. Knowing the database structure, how to navigate the system, or internal paths and codes could reveal sensitive information that would allow a hacker to access or manipulate the agency's database or systems. Disclosure of these techniques and practices could permit those seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. Release of the internal email inboxes would increase the chance that a bad actor could harm the agency by attempting to hack ICE systems, such as through the use of phishing scams, or by attacking ICE systems, such as through a brute

force attack.

26. Further, how law enforcement officers or OPLA attorneys access and navigate databases, as well as the internal group email addresses, are law enforcement techniques and procedures that are not commonly known. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

27. The release of law enforcement sensitive information regarding INTERPOL Notices and the law enforcement processes and procedures related to use of those Notices in removal proceedings before EOIR could reasonably be expected to risk circumvention of the law. INTERPOL Notices are international alerts circulated by Interpol to communicate information from police in a member state to their counterparts around the world about crimes, criminals, and threats. Disclosure of law enforcement sensitive techniques and procedures regarding the use of INTERPOL Notices in removal proceedings, including how to verify the Notices, would reveal law enforcement techniques, procedures, or guidelines which could reasonably be expected to risk circumvention of the law. Thus, disclosure of these techniques could allow subjects of the INTERPOL Notices to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. This information is not widely known. Disclosure serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

V. **FOIA IMPROVEMENT ACT**

28. The FOIA Improvement Act of 2016 codified the Department of Justice's foreseeable harm standard, which ICE has been following for years. ICE FOIA only withholds information when the agency reasonably foresees that disclosure would harm an interest protected

8

by an exemption or disclosure is prohibited by law.

29. In this case, with respect to Exemption (b)(5), the agency reasonably foresees that disclosure would harm the attorney work-product privilege, which protects the adversarial trial process by insulating the attorney's preparation from scrutiny. The identifiable and foreseeable harm in disclosing this information would be its chilling effect on the ability of agency attorneys to effectively communicate with each other regarding how to prepare to represent the agency in litigation. Further, disclosure of these records also would inhibit the candid discussion of issues between employees, which would hinder the ability of the OPLA attorneys to be fully informed about legal issues arising before the immigration courts, as well as inhibit their ability to assess any future litigation risks.

30. In this case, with respect to Exemption (b)(7)(E), the agency reasonably foresees that disclosure would: 1) cause harm by disclosing law enforcement sensitive database screenshots, codes, instructions, and internal group email inboxes that would allow bad actors to access or manipulate ICE systems; 2) cause harm by disclosing law enforcement sensitive techniques and procedures regarding the use of INTERPOL Notices in removal proceedings, including how to verify the Notices.

## VI. SEGREGABILITY

31. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

32. ICE conducted a line-by-line review to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

33. With respect to the records that were released, all information not exempted from

disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

**JURAT CLAUSE**

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct to the best of my knowledge and belief.

Signed this 17th day of November, 2022.

FERNANDO PINEIRO JR
Digitally signed by FERNANDO PINEIRO JR
Date: 2022.11.17 09:46:06 -05'00'

_____
Fernando Pineiro, FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009