| | |
|---|---|
| **From:** | (b)(6) |
| **To:** | OPLA HQ Personnel; OPLA Field Personnel |
| **Subject:** | Broadcast Announcement: OPLA Operational Guidance Regarding Central American Resource Center v. Jaddou, No. 20-2363 (D.D.C. dismissed per stipulation Mar. 28, 2022) |
| **Date:** | Wednesday, April 20, 2022 9:08:17 AM |
| **Attachments:** | Stipulation of Settlement and Dissmissal, Central American Resource Center v. Jaddou, No. 20-2363 (D.D.C. dismissed per stipulation Mar. 28, 2022).pdf |

### **\*\*SENSITIVE \*\* ATTORNEY WORK PRODUCT\*\*ATTORNEY-CLIENT PRIVILEGE\*\***

*Disseminated on behalf of Ken Padilla . . .*

To All OPLA Personnel:

DHS recently entered into a Stipulated Settlement Agreement (the Agreement) with Plaintiff Central American Resource Center (CARECEN) regarding certain Temporary Protected Status (TPS) recipients with orders of removal or deportation, who traveled from and returned to the United States on advance parole while possessing TPS and who are seeking to apply (or have applied) for adjustment of status with U.S. Citizenship and Immigration Services (USCIS). *See Central American Resource Center v. Jaddou*, No. 20-2363 (D.D.C. dismissed per stipulation Mar. 28, 2022). A copy of the Agreement is attached for your reference.



(b)(5)

**EXHIBIT 2**

(b)(5)

(b)(5)

(b)(5); (b)(6); (b)(7)(C)
(b)(5); (b)(6); (b)(7)(C)                                                    Questions about
this guidance should be directed to OPLA FLO.

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated with applicable guidance.**

Thank you, as always, for your flexibility, dedication, and hard work.


Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement


**SENSITIVE ** ATTORNEY WORK PRODUCT**ATTORNEY-CLIENT PRIVILEGE**

**From:** (b)(6); (b)(7)(C) @ice.dhs.gov> on behalf of (b)(6); (b)(7)(C)
**Sent on:** Wednesday, March 24, 2021 5:47:50 PM
**To:** OPLA HQ Personnel (b)(7)(E) @ice.dhs.gov>; OPLA Field
Personnel (b)(7)(E) @ice.dhs.gov>
**Subject:** Broadcast Message: DHS Position on Connecticut Pardons

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

The Immigration and Nationality Act (INA) limits recognition of pardons of criminal convictions for immigration purposes to full and unconditional pardons by a governor or the President.  INA § 237(a)(2)(A)(vi); *see also Lehmann v. U.S. ex rel. Carson*, 353 U.S. 685, 689 (1957).  Accordingly, certain immigration consequences of a criminal conviction can be nullified when the pardon issues from the state's executive branch of government.  *Matter of R-*, 5 I&N Dec. 612 (BIA 1954); *see also Matter of Nolan*, 19 I&N Dec. 539 (BIA 1988).

(b)(5)

(b)(5)   Although the INA section 237(a)(2)(A)(vi) pardon clause may reasonably be interpreted to either include or exclude such a pardon, the Department of Homeland Security has now clarified that it will recognize Connecticut pardons issued by the Connecticut Board of Pardons and Parole as effective for immigration purposes under the pardon waiver clause within the INA.  *See* DHS Statement on Treatment of a Full and Unconditional Pardon Issued Under the Law and Process Currently in Place in Connecticut as Effective for Purposes of the INA § 237(a)(2)(A)(vi) Pardon Waiver Clause and 8 C.F.R. § 316.10(c)(2) (Mar. 23, 2021).

(b)(5)

**This message includes internal guidance provided for internal OPLA use only and is not**

| | |
|---|---|
| Pick a Type | Practice Pointers |
| Title | Matter of Velasquez-Rios, 27 I&N Dec. 470 (BIA Oct. 4, 2018) (A200 154 815 – LOS) [Summary and Practice Pointers] |
| Circuit/Board | BIA |
| Topic | Crimmigration--Definition of "Conviction"; Other |
| Body | On October 4, 2018, the Board of Immigration Appeals (Board) issued *Matter of Velasquez-Rios*, 27 I&N Dec. 470 (BIA 2018), holding that the amendment to section 18.5 of the California Penal Code (CPC), which retroactively lowered the maximum possible sentence that could have been imposed for an alien's state offense from 365 days to 364 days, does not affect the applicability of INA § 237(a)(2)(A)(i)(II) to a past conviction for a crime involving moral turpitude (CIMT) "for which a sentence of one year or longer may be imposed."

On July 22, 2003, the respondent, a Mexican national who had entered the United States without inspection, was convicted of possession of a forged instrument in violation of CPC § 475(a) and was sentenced to 12 days of incarceration. 27 I&N Dec. at 470. At the time of the conviction, the maximum possible sentence for the respondent's offense was 365 days. *Id.* at 471. Accordingly, the Immigration Judge (IJ) found the respondent ineligible for cancellation of removal pursuant to INA § 240A(b)(1)(C) as an alien convicted of an "offense under" INA § 237(a)(2)(A)(i) and ordered his removal. *Id.* at 470, 471. During the respondent's subsequent appeal to the Board, the California Legislature enacted CPC § 18.5, but because the statute became effective after the respondent's conviction and had no explicit retroactive effect, the Board dismissed the appeal. *Id.* at 471. The respondent filed a petition for review (PFR) with the U.S. Court of Appeals for the Ninth Circuit, and during the pendency of that PFR, the California Legislature amended CPC § 18.5 to give it retroactive effect. *Id.* The court remanded proceedings back to the Board to consider the impact of this amendment. *Id.*

The Board noted that the respondent's forgery offense is clearly a CIMT because it necessarily involved fraudulent intent. *See id.* at 471-72. As such, the only issue on appeal was whether, in light of the amendment to CPC § 18.5, the offense remained a crime "for which a sentence of one year or longer may be imposed" within the meaning of INA § 237(a)(2)(A)(i)(II). 27 I&N Dec. at 472. The Board determined |

that, given the plain meaning of the statutory language "may be imposed," the amendment to CPC § 18.5 did not change the "backward-looking inquiry" of the maximum possible sentence that an alien could have received at the time of a past conviction. *See id.* at 472-73. Finding support in federal court precedent for the use of federal law, rather than state law, to determine the immigration consequences of the respondent's conviction, *see id.* at 473-474, the Board chose to remain consistent with its "long-standing practice" of examining the statute and applicable penalty in existence when the conviction was entered, *see id.* at 473 & n.3.

In this specific case, although the respondent was sentenced to only 12 days in jail, the maximum possible sentence at the time of his conviction was 365 days, so that, under the Board's reasoning, his offense remained one "for which a sentence of one year or longer may be imposed" under INA § 237(a)(2)(A)(i)(II). 27 I&N Dec. at 474.

The opinion can be found here.

Practice Pointers

(b)(5)

- (b)(5)



-

-

(b)(5)

Effective Date        10/4/2018

Reviewed

Expires              10/4/2020

Rating (0-5)         ☆ ☆ ☆ ☆ ☆ | 0

Created at 10/15/2018 7:39 PM  by  ☐ (b)(6); (b)(7)(C)
Last modified at 10/16/2018 11:26 AM  by  ☐ (b)(6);

Close

| | |
|---|---|
| **From:** | (b)(6); (b)(7)(C) |
| **To:** | OPLA HQ Personnel; OPLA Field Personnel |
| **Subject:** | Broadcast Message: Implementing Matter of L-E-A-, 28 I&N Dec. 304 (A.G. 2021), and Matter of A-B-, 28 I&N Dec. 307 (A.G. 2021) |
| **Date:** | Thursday, June 24, 2021 2:17:28 PM |

### ***PRIVILEGED***ATTORNEY WORK PRODUCT***FOR OFFICIAL USE ONLY***NOT FOR DISSEMINATION OUTSIDE OPLA***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

On June 16, 2021, Attorney General (AG) Garland issued *Matter of L-E-A-*, 28 I&N Dec. 304 (A.G. 2021) (*L-E-A- III*), and *Matter of A-B-*, 28 I&N Dec. 307 (A.G. 2021) (*A-B- III*).

This is the third precedential opinion in *L-E-A-*.  The Board of Immigration Appeals (Board) initially held that the immediate family of the respondent's father qualified as a particular social group (PSG) for purposes of asylum and withholding of removal.  27 I&N Dec. 40, 42-43 (BIA 2017) (*L-E-A- I*).  AG Barr later held that, "in the ordinary case, a nuclear family will not, without more," qualify as a PSG and accordingly overruled the Board and abrogated all other Board precedents that were inconsistent with his decision.  27 I&N Dec. 581 (A.G. 2019) (*L-E-A- II*).  In *L-E-A- III*, AG Garland stated that the analysis in *L-E-A- II* is inconsistent with decisions of several courts of appeals and that current ongoing rulemaking addressing the meaning of "particular social group" is the preferable administrative process for addressing the issue.  AG Garland therefore concluded that *L-E-A- II* should be vacated in its entirety, returning to the preexisting state of affairs pending completion of the ongoing rulemaking process.  He further instructed that, pending completion of ongoing rulemaking efforts, immigration judges and the Board should no longer follow *L-E-A- II* when adjudicating pending and future cases.

This is also the third precedential opinion in *A-B-*.  In *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018) (*A-B- I*), AG Sessions overruled *Matter of A-R-C-G-*, 26 I&N Dec. 388 (BIA 2014), in which the Board had recognized, depending on the facts and evidence in an individual case, that "married women in Guatemala who are unable to leave their relationship" qualified as a cognizable PSG for purposes of asylum and statutory withholding of removal.  Acting AG Rosen later reviewed a subsequent Board decision in the same case to provide additional guidance on recurring issues involving asylum applicants who raise claims of persecution by non-governmental actors on account of membership in a PSG.  28 I&N Dec. 199 (A.G. 2021) (*A-B- II*).  In *A-B- III*, AG Garland vacated his predecessors' decisions in *A-B- I* and *A-B- II*.  In so doing, he indicated that he was leaving open the questions that those opinions sought to resolve in order to "ensure that the Departments [of Justice and Homeland Security] have appropriate flexibility in the forthcoming rulemaking."  28 I&N Dec. at 308.  Accordingly, he directed immigration judges and the Board to no longer follow *A-B- I* or *A-B- II* and instead, pending completion of ongoing rulemaking efforts, to follow pre-*A-B- I* precedent, including *Matter of A-R-C-G-*.

(b)(5)

Impact on Prior Guidance

(b)(5)

(b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

(b)(5)

- (b)(5)

- (b)(5)



(b)(5)

- (b)(5)

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with <u>applicable guidance</u>. If there are any legal questions about this guidance, please do not hesitate to reach out to ILPD (<u>ILPD-E</u> or <u>ILPD-W</u>), as appropriate.**

Thank you,

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

| | |
|---|---|
| **From:** | (b)(6) |
| **To:** | OPLA HQ Personnel; OPLA Field Personnel |
| **Subject:** | Broadcast Message: Implementing Niz-Chavez v. Garland, 141 S. Ct. 1474 (2021) |
| **Date:** | Thursday, June 3, 2021 9:16:22 AM |

### \*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\*

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono. . .*

On April 29, 2021, the U.S. Supreme Court issued *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), holding that the two-step process whereby DHS serves a Notice to Appear (NTA) that does not include the time and/or place of a respondent's initial master calendar hearing, and EOIR later serves a notice of hearing (NOH) providing that information, does not trigger the stop-time rule for purposes of cancellation of removal under section 240A(d)(1) of the Immigration and Nationality Act (INA). The Court concluded that the language of the stop-time rule describes a single document, to wit, "*a* notice to appear," INA § 240A(d)(1) (emphasis added), that must contain *all* the information listed in INA § 239(a)(1). 141 S. Ct. at 1480-81.

The Court analyzed the statutory language at INA § 240A(d)(1), which provides that the stop-time rule is triggered when a noncitizen "is served a notice to appear" as defined in INA § 239(a)(1). Section 239(a)(1) in turn defines "a 'notice to appear'" as written notice that includes, *inter alia*, the time and place of the noncitizen's hearing. The Court found that Congress's use of the indefinite article "a" in both statutory provisions indicates that it intended that a single document, referred to as an NTA, trigger the stop-time rule. While the Court acknowledged the Government's policy argument regarding administrative inconvenience, it found that it did not justify departing from the statutory language.

(b)(5)

(b)(5)

(b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

(b)(5)

(b)(5)

(b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

- (b)(5)



(b)(5)

(b)(5)

(b)(5)

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure.  Please ensure that it is treated consistent with applicable guidance.  If there are any legal questions about this guidance or *Niz-Chavez*, please do not hesitate to reach out to ILPD (Niz-Chavez Discussion Board, ILPD-E or ILPD-W), as appropriate.**

Thank you,


Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

### ***PRIVILEGED***ATTORNEY WORK PRODUCT***FOR OFFICIAL USE ONLY***NOT FOR DISSEMINATION OUTSIDE OPLA***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono. . .*

On March 4, 2021, the Supreme Court issued _Pereida v. Wilkinson_, No. 19-438, 2021 WL 816351 (U.S. Mar. 4, 2021), holding, in a 5-3 decision, that because the Immigration and Nationality Act (INA) places the burden of proof on an applicant for discretionary relief from removal to establish eligibility for such relief, an applicant for cancellation of removal under section 240A(b)(1) of the INA bears the burden of showing that he or she has not been convicted of an offense disqualifying him or her from that form of relief. That burden is not carried when the evidentiary record is ambiguous as to whether the noncitizen has been convicted of a disqualifying offense. The Court's decision resolves a longstanding conflict among the circuit courts. *See Pereida*, 2021 WL 816351, at *4.

(b)(5)

(b)(5) The Court rejected the argument that, pursuant to *Moncrieffe v. Holder*, 569 U.S. 184 (2013), a conviction should be presumed to rest on the minimum conduct necessary to commit the offense, finding that *Moncrieffe* addressed the immigration consequences of a known offense, rather than the determination of which offense had been committed. *See Pereida*, 2021 WL 816351, at *8; *see also id.* at *6 (explaining that the presumption does not answer the question of which crime a person is convicted of). The Court emphasized that evidentiary issues regarding a conviction are bound to occur occasionally regardless of who bears the burden of proof, but Congress had explicitly spoken to the burden of proof in this instance, and it was not the Court's place to engage in judicial policymaking in the face of clear Congressional intent. *See id.* at *9.

(b)(5)

In light of this decision, OPLA attorneys should consider the following practice pointers:

- (b)(5)

- 

-



This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance. If there are any questions about this guidance or *Pereida*, please do hesitate to reach out to ILPD (ILPD-E or ILPD-W), as appropriate.

Thank you,

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security


Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

On November 27, 2019, in *Brito v. Barr*, No. 19-11314, 2019 WL 6333093 (D. Mass. Nov. 27, 2019), the U.S. District Court for the District of Massachusetts granted Plaintiffs' motion for summary judgment and entered a permanent injunction, **effective December 13, 2019**, affecting the standard of proof for bond hearings under section 236(a) of the Immigration and Nationality Act (INA) for detained aliens subject to the jurisdiction of the Boston Immigration Court. The injunction applies to:

Pre-Hearing Class: All individuals who:

    (1) are or will be detained pursuant to INA section 236(a);

    (2) are held in immigration detention in Massachusetts or are otherwise subject to the jurisdiction of the Boston Immigration Court, and

    (3) *have not* received a bond hearing before an immigration judge; and

Post-Hearing Class: All individuals who:

    (1) are or will be detained pursuant to INA section 236(a);

    (2) are held in immigration detention in Massachusetts or are otherwise subject to the jurisdiction of the Boston Immigration Court, and

    (3) *have* received a bond hearing before an immigration judge.

Members of the certified classes are entitled to receive bond hearings in which the Government must prove by <u>clear and convincing evidence</u> that the alien is a danger or by a <u>preponderance of the evidence</u> that the alien is a flight risk. Moreover, in those bond hearings, the immigration judge must consider the alien's ability to pay in setting a bond over $1,500, as well as alternative conditions of release, such as GPS monitoring, that "reasonably assure the safety of the community and the alien's future appearances." **This injunction is applicable only to aliens detained in Massachusetts or otherwise subject to the jurisdiction of the Boston Immigration Court.**

The Government must provide a copy of the district court's order to all class members by December 13, 2019, and to all new members of the Pre-Hearing Class once ICE makes an initial determination to detain them pursuant to INA section 236(a). Enforcement and Removal Operations will provide the district court's order, <u>along with a certificate of service,</u> to currently detained class members by December 13, 2019. (b)(5)

(b)(5)

Post-Hearing class members are entitled to a new bond hearing if they can demonstrate prejudice due to constitutional defects in the original bond hearing(s), but they may secure this new bond hearing only through the filing of individual habeas petitions.

OPLA attorneys should consider the following practice pointers:

- (b)(5)

(b)(5)

- 

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with <u>applicable guidance</u>.**
Thank you,
Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

| | |
|---|---|
| **From:** | (b)(6) |
| **To:** | OPLA HQ Personnel; OPLA Field Personnel |
| **Subject:** | Broadcast Message: Updated Guidance -- Matter of Negusie, 28 I&N Dec. 399 (A.G. 2021) |
| **Date:** | Thursday, December 16, 2021 3:35:17 PM |

## ***PRIVILEGED***ATTORNEY WORK PRODUCT***FOR OFFICIAL USE ONLY***NOT FOR DISSEMINATION OUTSIDE OPLA***

### *Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

On October 12, 2021, Attorney General (AG) Garland directed the Board of Immigration Appeals (BIA or Board) to refer to him for review its unpublished decision in Daniel Ghirmay Negusie, A015 575 924 (BIA Mar. 16, 2021), which AG Garland stayed pending his review. *See Matter of Negusie,* 28 I&N Dec. 399 (A.G. 2021). This case has a long history, including a decision by the U.S. Supreme Court, which held that the Immigration and Nationality Act (INA) is ambiguous with respect to whether duress and coercion are relevant in applying the persecutor bar and remanded for the BIA to make a "determination of the statutory interpretation question and its application to this case" in the first instance. *See Negusie v. Holder*, 555 U.S. 511, 524 (2009). On June 28, 2018, the BIA published a decision in which it recognized a "narrow duress exception" to the persecutor bar, created a five-part test for a duress defense, and found that the respondent did not satisfy that test but was nevertheless eligible for deferral of removal under the regulations implementing U.S. obligations under Article 3 of the Convention Against Torture (CAT), to which the persecutor bar is inapplicable. *See Matter of Negusie*, 27 I&N Dec. 347, 353, 363 (BIA 2018). On November 5, 2020, then-AG Barr vacated the BIA's decision, ruling that there is no exception for coercion or duress implied in the persecutor bar and remanding for the BIA to receive updated background checks. *See Matter of Negusie*, 28 I&N Dec. 120, 155 (A.G. 2020). On March 16, 2021, the BIA dismissed the respondent's appeal and affirmed the immigration judge's grant of deferral of removal under the CAT. AG Garland's referral stays only the BIA's unpublished decision in that case, leaving former AG Barr's decision in *Matter of Negusie*, 28 I&N Dec. 120 (A.G. 2020), as applicable precedent at this time.

(b)(5)

OPLA attorneys should consider the updated *Negusie* practice pointers below. A more detailed summary of the case and practice pointers can be found here.

- (b)(5)

(b)(5)

- (b)(5)

- 

- (b)(5)

- 

- 

-



(b)(5)

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance. If you have questions about this guidance, or *Negusie*-related issues arise your case, please contact HRVLD or ILPD (ILPD-E or ILPD-W), as appropriate.

Thank you,

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations

Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

| **From:** | (b)(6): |
| **To:** | OPLA HQ Personnel; OPLA Field Personnel |
| **Subject:** | Broadcast Message: Guidance on Sensitive Gender-Based PSG Issues in EOIR and Circuit Court Litigation |
| **Date:** | Monday, March 7, 2022 10:40:02 AM |

### ***PRIVILEGED***ATTORNEY WORK PRODUCT***FOR OFFICIAL USE ONLY***NOT FOR DISSEMINATION OUTSIDE OPLA***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

(b)(5)

(b)(5)

(b)(5)



**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure.  Please ensure that it is treated consistent with applicable guidance.  If there are any legal questions about this guidance, please do not hesitate to reach out to ILPD (ILPD-E or ILPD-W), as appropriate.**

Thank you,

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

### ***PRIVILEGED***ATTORNEY WORK PRODUCT***FOR OFFICIAL USE ONLY***NOT FOR DISSEMINATION OUTSIDE OPLA***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono. . .*

On June 10, 2021, the U.S. Supreme Court issued *Borden v. United States*, 141 S. Ct. 1817, 2021 WL 2367312 (2021), holding that an offense requiring a mens rea of recklessness cannot qualify as a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i), because such an offense does not, as required by the statute, have "as an element the use, attempted use, or threatened use of physical force against the person of another." In so holding, the Court resolved a circuit split and overruled contrary caselaw in the Fifth, Eighth, Tenth, and D.C. Circuits. *See* 2021 WL 2367312, at *4 n.1–2.

Although a criminal sentencing case, *Borden* is significant to our practice because the "violent felony" definition is analogous to the "crime of violence" definition at 18 U.S.C. § 16(a), which is the basis for finding an offense to be an aggravated felony under section 101(a)(43)(F) of the Immigration and Nationality Act (INA). Unlike a "violent felony," a "crime of violence" includes offenses where property, not a person, is the recipient of the actual or intended use of force. But as noted by the Court, the "crime of violence" definition is "relevantly identical" to the "violent felony" definition. 2021 WL 2367312, at *5. Indeed, the Court's prior decision in an immigration case, *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which held that the "crime of violence" definition at 18 U.S.C. § 16(a) does not encompass offenses with a negligent mens rea, figured prominently in *Borden*, as did the Court's prior decision in another criminal case, *Voisine v. United States*, 579 U.S. 686 (2016), which held that the definition of a "misdemeanor crime of domestic violence" at 18 U.S.C. § 922(g)(9) covers reckless offenses. Moreover, the Court observed that in *Borden* it was reaching a question it had reserved in both *Leocal* and *Voisine*. 2021 WL 2367312, at *5.

In *Borden*, the Court found critical the fact that text of the "violent felony" definition at 18 U.S.C. § 924(e)(2)(B)(i) requires the use of force to be "against the person of another" and thus "demands that the perpetrator direct his action at, or target, another individual"—a characteristic absent in reckless conduct. *See id.* The Court contrasted this text with the "misdemeanor crime of domestic violence" definition at 18 U.S.C. § 922(g)(9), which has no similar phrase. *See id.* Importantly, the Court found support for its textual analysis in *Leocal*, which emphasized the inclusion in the "crime of violence" definition the virtually identical phrase "against the person or property of another." *See id.* at *7–8, 11. In light of *Borden*, therefore, an offense requiring a mens rea of recklessness does not fall within the "crime of violence" definition at 18 U.S.C. § 18(a) and will not be an aggravated felony under INA § 101(a)(43)(F).

In light of *Borden*, OPLA attorneys should consider the following practice pointers regarding new or pending cases:

- (b)(5)



(b)(5)

(b)(5)

(b)(5)

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance. If there are any legal questions about this guidance or *Borden* please do not hesitate to reach out to ILPD (ILPD-E or ILPD-W), as appropriate.**

Thank you,

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE
ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono. . .*

On April 23, 2020, the Supreme Court issued *Barton v. Barr*, 140 S. Ct. 1442 (2020), holding that the stop-time rule of section 240A(d)(1) of the Immigration and Nationality Act (INA), which terminates an alien's continuous residence or physical presence for purposes of cancellation of removal and voluntary departure, is triggered by the commission of a criminal offense that renders an alien removable, regardless of whether the alien is charged in removal proceedings with the corresponding ground of removal. The Court premised its holding on, among other reasons, the language of the stop-time rule, which identifies offenses "referred to in section 212(a)(2)" of the INA and thus does not depend on the actual "offense of removal," *see* 140 S. Ct. at 1451, which the Court defined as "the offense that was the ground on which the immigration judge, at the removal proceeding, found the noncitizen removable," *id.* at 447 n.4.

The Court contrasted this aspect of the stop-time rule with the INA provisions governing mandatory pre-order detention, section 236(c)(1), and jurisdiction for judicial review of removal orders, section 242(a)(2)(C). *See* 140 S. Ct. at 1451. Specifically, the Court reasoned in apparent dicta that, unlike the stop-time rule, these "provisions make contextual sense *only if the offense justifying detention or denying jurisdiction is one of the offenses of removal*." *Id.* (emphasis added). In short, the Court read section 236(c)(1) as requiring that an alien be charged with removal based on the offense justifying mandatory detention. (b)(5)

(b)(5)

(b)(5) In briefing and at oral argument, the Government argued – consistent with *Kotliar* – that an alien is subject to mandatory detention based on potential grounds for removal, *see* Brief for the Respondent at 30, *Barton*, 140 S. Ct. 1442 (No. 18-725), 2019 WL 3987631, at \*30, or removal charges that are capable of being lodged against the alien, *see* 140 S. Ct. at 1459 (Sotomayor, J., dissenting).

In light of this decision, (b)(5) but should consider the following additional practice pointers:

- (b)(5)

(b)(5)

- 

- 

-

- 
(b)(5)

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance. If there are any questions about this guidance, *Barton*, or pre-order custody, please do hesitate to reach out to ILPD (ILPD-E or ILPD-W), as appropriate.

Thank you,

Ken Padilla

Deputy Principal Legal Advisor for Field Legal Operations

Office of the Principal Legal Advisor

U.S. Immigration and Customs Enforcement

U.S. Department of Homeland Security

Adam V. Loiacono

Deputy Principal Legal Advisor for Enforcement and Litigation

Office of the Principal Legal Advisor

U.S. Immigration and Customs Enforcement

U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

| From: | (b)(6); (b)(7)(C) |
| To: | OPLA HQ Personnel; OPLA Field Personnel |
| Subject: | Broadcast Message: Implementing Gayle v. Warden Monmouth Cnty. Corr. Inst. Within the Jurisdiction of the Third Circuit |
| Date: | Thursday, September 23, 2021 12:20:48 PM |

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***
*Disseminated on behalf of Adam V. Loiacono and Kenneth Padilla . . .*

On September 3, 2021, the U.S. Court of Appeals for the Third Circuit issued *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, No. 19-3241, 2021 WL 4006189 (3d Cir. Sept. 3, 2021), holding that: (1) section 236(c) of the Immigration and Nationality Act (INA), which prohibits the release of certain noncitizens, satisfies due process "even where [the noncitizen] has a substantial and ultimately successful defense to removal"; (2) the government must prove by a preponderance of the evidence that the detainee is "properly included" within INA § 236(c) "as both a factual and a legal matter" at a bond hearing conducted pursuant to *Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999); (3) the Executive Office for Immigration Review (EOIR) must make a contemporaneous record of the *Joseph* hearing available; and (4) INA § 242(f)(1) prohibits class-wide injunctive relief.  In so holding, the Third Circuit affirmed the U.S. District Court for the District of New Jersey's summary judgment order in part, reversed in part, vacated the entry of injunctive relief, and remanded for entry of appropriate declaratory relief.



(b)(5)

(b)(5)  The court recognized that the Supreme Court held that immigration detention need only "bear[] a reasonable relation to the purpose for which the individual was committed," and that INA § 236(c) passes muster under that standard because the "detention of deportable criminal [noncitizens] *pending their removal proceedings*" advances Congress's goal of preventing noncitizens with criminal histories from absconding while removal proceedings are pending and further ensures that the noncitizen will be successfully removed, if so ordered.  *Gayle*, 2021 WL 4006189, at \*4 (quoting *Demore v. Kim*, 538 U.S. 510, 527-28 (2003)).  The court then noted more recent Supreme Court precedent, *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018), and *Nielsen v. Preap*, 139 S. Ct. 954, 959 (2019), to confirm that the mandatory detention of noncitizens, even those with potentially successful defenses to removal, does not violate due process.

However, the court placed the burden on the government to show by a preponderance of the evidence that a noncitizen falls within INA § 236(c) as both a factual and legal matter at a *Joseph* hearing.  This ruling deviates from longstanding BIA precedent requiring only that DHS establish a "reason to believe" that a detainee is properly included under INA § 236(c). (b)(5)

(b)(5)

(b)(5)  The *Gayle* court, applying the due process factors identified in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and, in doing so, considering the liberty interests and substantial duration of detention for noncitizens, determined that the government's "reason to believe" standard improperly placed too heavy of a burden on the noncitizen.  The court further held that EOIR must make a record of "sufficient completeness for adequate and effective appellate review" of a noncitizen's *Joseph* hearing due to "the substantial individual interest in liberty, the relatively high value of additional safeguards, and the minimal burden on [EOIR]."  *Gayle*, 2021 WL 4006189, at \*9.  The requirement does not require a verbatim transcript; "'[a]lternative methods of reporting [the] proceedings are permissible' if they create 'an equivalent report of the events' . . . ." *Id.* (quoting *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971)).

With respect to INA § 242(f)(1), which limits the jurisdiction of federal class action suits, the Third Circuit agreed with the Sixth and Tenth Circuits and held that the statute prohibits classwide injunctions even when the class is composed entirely of noncitizens who are already in removal proceedings. *See Gayle*, 2021 WL 4006189, at *10 (citing *Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018), and *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999)). Only the Ninth Circuit has reached a different interpretation, and that case remains pending. *See Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1151 (9th Cir. 2020), *vacated on other grounds*, 141 S. Ct. 1041 (2021).

In light of *Gayle*, OPLA attorneys should consider the following practice pointers regarding new or pending cases **within the jurisdiction of the Third Circuit**:



- (b)(5)

**This message includes internal guidance provided for internal OPLA use only and is not**

**intended for public disclosure.  Please ensure that it is treated consistent with <u>applicable guidance</u>.**

Thank you,

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

### ***PRIVILEGED***ATTORNEY WORK PRODUCT***FOR OFFICIAL USE ONLY***NOT FOR DISSEMINATION OUTSIDE OPLA***

***Disseminated on behalf of Adam V. Loiacono and Karen Lundgren . . .***

On July 15, 2021, Attorney General (AG) Garland issued *Matter of Cruz-Valdez*, 28 I&N Dec. 326 (A.G. 2021), vacating then-AG Sessions' decision in *Matter of Castro-Tum*, which had held that immigration judges and the Board of Immigration Appeals (Board) "do not have the general authority to suspend indefinitely immigration proceedings by administrative closure," and directed immigration judges and the Board to only administratively close cases if "a previous regulation or a previous judicially approved settlement expressly authorizes such an action[,]" 27 I&N Dec. 271, 272 (A.G. 2018). *Cruz-Valdez* directs immigration judges and the Board to apply the framework for administrative closure prior to *Castro-Tum*, set forth in *Matter of Avetisyan*, 25 I&N Dec. 688 (BIA 2012), and *Matter of W-Y-U-*, 27 I&N Dec. 17 (BIA 2017), except to the extent that a court of appeals in the relevant jurisdiction has held in a precedent decision that immigration judges and the Board lack administrative closure authority under existing regulations.

As the AG noted in *Cruz-Valdez*, the U.S. Courts of Appeals for the Third, Fourth, and Seventh Circuits overruled *Castro-Tum*. *See Arcos Sanchez v. Att'y Gen.*, 997 F.3d 113, 121-22 (3d Cir. 2021); *Meza Morales v. Barr*, 973 F.3d 656, 667 (7th Cir. 2020); *Romero v. Barr*, 937 F.3d 282, 292 (4th Cir. 2019). The Sixth Circuit Court of Appeals, on the other hand, agreed with *Castro-Tum* in *Hernandez-Serrano v. Barr*, 981 F.3d 459, 464 (6th Cir. 2020), but subsequently ruled that immigration judges and the Board have the authority to grant administrative closure to allow noncitizens to apply for provisional unlawful presence waivers in *Garcia-DeLeon v. Garland*, 999 F.3d 986, 989 (6th Cir. 2021).

In light of *Cruz-Valdez*, OPLA attorneys should consider the following practice pointers:

(b)(5)

-

(b)(5)

- 

- 

- 

- 

(b)(5)

(b)(5)

-



**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance. If there are any legal questions about this guidance, please do not hesitate to reach out to ILPD (ILPD-E or ILPD-W), as appropriate.**

Thank you,

Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

Karen Lundgren
Acting Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

| From: | (b)(6); |
|---|---|
| To: | OPLA HQ Personnel; OPLA Field Personnel |
| Subject: | Broadcast Message: Implementing Matter of O-F-A-S-, 27 I&N Dec. 709 (BIA 2019) |
| Date: | Tuesday, May 12, 2020 7:58:07 AM |

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

On December 6, 2019, the Board of Immigration Appeals (Board), published its decision in *Matter of O-F-A-S-*, 27 I&N Dec. 709 (BIA 2019), which held that, for purposes of the regulations implementing U.S. obligations under Article 3 of the Convention Against Torture (CAT), 8 C.F.R. §§ 1208.16(c), 1208.17, 1208.18, torturous conduct committed by a public official who is acting "in an official capacity" equates to the "under color of law" legal framework from the civil rights context. The Board made clear that conduct by a "rogue official" who is not operating under the color of law does not fall within those regulations and that the key consideration in determining whether a public official is operating under the color of law is whether he was able to engage in torturous conduct because of his government position or if he could have done so without a connection to the government.

In *O-F-A-S-*, the respondent, a Guatemalan citizen and national, testified that in 2016, an individual called him to extort money from him, and two weeks later, several men wearing Guatemalan national police uniforms physically assaulted and threatened him at his home in an attempt to collect the money. The men caused the respondent's left shoulder to dislocate, and they took a portion of money the respondent had stored in his car. After the men learned that a neighbor had called the police to report a disturbance, they threatened the respondent with further violence if he did not pay the balance of their demand or he reported them to the police.

The respondent entered the United States about one month later, in April 2016, and applied for asylum in September 2017. The immigration judge (IJ) pretermitted the asylum claim as time-barred and denied the respondent's claims for statutory withholding of removal and CAT protection. On appeal, the Board determined that the IJ properly held that the respondent did not establish his eligibility for protection. In reaching this determination, the Board primarily addressed the issue of whether the men who harmed the respondent were acting "in an official capacity," that is, "under color of law," or were, instead, "rogue officials."

Discussing the "public official" aspect of the CAT and the pertinent implementing regulation, 8 C.F.R. § 1208.18(a), the Board emphasized that "[t]he history and purpose of the [CAT] reflect that its protection was intended to apply only to torture that occurs in the context of governmental authority," and that "[t]here is no indication that the Department of Justice intended to exceed the intent of the drafters of the [CAT] when the regulation was promulgated." *O-F-A-S-*, 27 I&N Dec. at 713. Thus, the Board concluded that the regulation, like the CAT, does not cover acts committed by individuals in a personal capacity. *See id.* In support of this conclusion, the Board referenced the Senate ratification process for the CAT, during which the President's transmittal message cited to a "color of law" standard. *See id.* at 712. Accordingly, the Board held that "torturous conduct committed by a public official who is acting 'in an official capacity,' that is, 'under color of law' is covered by the [CAT], but such conduct by an official who is not acting in an official capacity, also known as a 'rogue official,' is not covered[.]" *Id.* at 713. In doing so, the Board followed the Attorney General's lead in *Matter of Y-L-, A-G- & R-S-R-*, 23 I&N Dec. 270, 285 (A.G. 2002), where the Attorney General suggested that "acting in an official capacity" means "under color of law." *O-F-A-S-*, 27 I&N Dec. at 714.

(b)(5)

(b)(5)                                                                                     Consequently, OPLA attorneys

should consider the following practice pointers:

- (b)(5)

- 

- 

- 

  - (b)(5)

  - 

  - 

  - 

  - 

- (b)(5)

(b)(5)



**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with <u>applicable guidance</u>.**

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

On July 30, 2020, the Attorney General (AG) issued a published decision in *Matter of Reyes, 28 I&N Dec. 52 (A.G. 2020),* holding that if each means of violating a statute qualifies as an aggravated felony, an alien convicted under that statute is removable under INA § 237(a)(2)(A)(iii), even if the statute is categorically "overbroad" as to any individual subparagraphs of the aggravated felony definition. Applying that holding to the facts of the respondent's case, the AG concluded that her conviction for second degree grand larceny under N.Y. Penal Law § 155.40(1) is an aggravated felony because every means of violating the statute constitutes an aggravated felony, either theft or fraud under INA § 101(a)(43)(G) and (M)(i), respectively. *See* 28 I&N Dec. at 65.

The respondent was convicted under N.Y. Penal Law § 155.40(1), which criminalizes eight types of wrongful taking. *Id.* at 56, 63. DHS charged her with removability under INA § 237(a)(2)(A)(iii) for having been convicted of an aggravated felony theft offense, INA § 101(a)(43)(G), or aggravated felony fraud offense, INA § 101(a)(43)(M)(i). *Id.* at 56. On referral, the AG concluded that neither the INA nor applicable caselaw requires that the means of violating an indivisible criminal statute correspond to one, and only one, of the aggravated felony subparagraphs at INA § 101(a)(43)(A)–(U), *see id.* at 59–60; this holding applies "even if the strictures of the categorical approach obscure the specific offense committed," *see id.* at 62. The AG also determined that application of his holding to the respondent's case would not violate retroactivity principles, as it did not depart from settled practice, and that anti-retroactivity principles generally do not apply to a litigant whose case results in a precedent resolving an open legal question. *See id.* at 66–67. The AG vacated the decision terminating proceedings and remanded for further proceedings. *Id.* at 67.

In light of the AG's opinion, OPLA attorneys should consider the practice pointers below. A more detailed summary and practice pointers can be found here.

- (b)(5)

- 

  - (b)(5)

  -



- (b)(5)
  - (b)(5)
- (b)(5)
  - (b)(5)

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance. If you have questions about this guidance, you may contact ILPD (ILPD-E or ILPD-W), as appropriate.

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

***PRIVILEGED***ATTORNEY WORK PRODUCT***FOR OFFICIAL USE ONLY***NOT FOR DISSEMINATION OUTSIDE OPLA***

| | |
|---|---|
| **From:** | (b)(6): |
| **To:** | OPLA HQ Personnel; OPLA Field Personnel |
| **Subject:** | Broadcast Message: Implementing Matter of Thomas and Thompson, 27 I&N Dec. 674 (A.G. 2019) |
| **Date:** | Tuesday, December 31, 2019 1:16:42 PM |

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

*Disseminated on behalf of Ken Padilla and Adam Loiacono . . .*

On October 25, 2019, the Attorney General (AG) issued a published decision in *Matter of Thomas and Thompson*, 27 I&N Dec. 674 (A.G. 2019), holding that state court orders modifying, clarifying, or otherwise altering a criminal alien's sentence will be given effect for immigration purposes *only* when the orders are based on a procedural or substantive defect in the underlying criminal proceeding. Such state court orders will have no effect for immigration purposes when based on reasons unrelated to the merits of the underlying criminal proceeding, such as rehabilitation or immigration hardship. In so ruling, the AG explicitly overruled the contrary Board of Immigration Appeals (BIA) precedents in *Matter of Cota-Vargas*, 23 I&N Dec. 849 (BIA 2005); *Matter of Song*, 23 I&N Dec. 173 (BIA 2001); and *Matter of Estrada*, 26 I&N Dec. 749 (BIA 2016). The AG also overruled *Matter of Adamiak*, 23 I&N Dec. 878, 880 (BIA 2006), and *Matter of Rodriguez-Ruiz*, 22 I&N Dec. 1378, 1380 (BIA 2000), insofar as they suggest that the Full Faith and Credit Act applies to proceedings before immigration judges (IJs) and the BIA.

In short, the AG held that, "[g]oing forward, immigration courts should apply the test articulated in *Matter of Pickering*[, 23 I&N Dec. 621, 624 (BIA 2003), *rev'd on other grounds*, *Pickering v. Gonzales*, 465 F.3d 263 (6th Cir. 2006)] in determining the immigration consequence of any change in a state sentence, no matter how the state court describes its order." *Matter of Thomas and Thompson*, 27 I&N Dec. at 675. The AG's opinion can be found here.

In light of the AG's opinion, OPLA attorneys should consider the practice pointers below. These practice pointers, as well as the above summary, can also be found here.

- (b)(5)
- 
- 
- 
-

(b)(5)

(b)(5)

(b)(5)

(b)(5)



- (b)(5)

- ○ (b)(5)

  - ○

  - ○

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance. If you have questions about *Matter of Thomas and Thompson* or any of the guidance provided herein, please do not hesitate to contact ILPD (ILPD-E or ILPD-W) or FLO, as appropriate.
Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations

Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

| | |
|---|---|
| **From:** | (b)(6); |
| **To:** | OPLA HQ Personnel; OPLA Field Personnel |
| **Subject:** | Broadcast Message: Implementing Ramos v. Louisiana, 140 S. Ct. 1390 (2020) |
| **Date:** | Thursday, June 11, 2020 10:29:53 AM |

### ***PRIVILEGED***ATTORNEY WORK PRODUCT***FOR OFFICIAL USE ONLY***NOT FOR DISSEMINATION OUTSIDE OPLA***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

On April 20, 2020, the Supreme Court decided *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), holding that the Sixth Amendment requires a unanimous verdict to convict a defendant of state criminal charges. (b)(5)

(b)(5)

(b)(5) On May 4, 2020, the Supreme Court granted a petition for a writ of certiorari in *Edwards v. Vannoy*, No. 19-5807, 2020 WL 2105209 (U.S. May 4, 2020) (Mem.), to decide whether *Ramos* applies retroactively. In light of *Ramos*, OPLA attorneys should bear in mind the points below when dealing with an alien removable on the basis of a Louisiana or Oregon conviction. First and foremost, the Court emphasized that the question of whether its decision in *Ramos* applies retroactively was not before it and would have to be decided in a future case. *See* 140 S. Ct. at 1407. True to its word, the Court promptly identified a case to decide in the near future whether *Ramos* will apply retroactively: *Edwards*, No. 19-5807. (b)(5)

(b)(5)

(b)(5)

(b)(5)



This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance. If you have questions about this guidance or about *Ramos*, please do not hesitate to contact ILPD (ILPD-E or ILPD-W), as appropriate.

Thank you,

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement

Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement

***PRIVILEGED***ATTORNEY WORK PRODUCT***FOR OFFICIAL USE ONLY***NOT FOR DISSEMINATION OUTSIDE OPLA***

| From: | (b)(6) |
| --- | --- |
| To: | OPLA HQ Personnel; OPLA Field Personnel |
| Subject: | Broadcast Message: Saravia Settlement Agreement |
| Date: | Thursday, January 21, 2021 12:13:46 PM |
| Attachments: | Saravia - Class Settlement Agreement.pdf |
| | Saravia Class Member - Field Guidance Flowchart.pdf |
| | ICE Form 71-073.pdf |

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

On January 14, 2021, the U.S. District Court for the Northern District of California granted final approval of a settlement agreement in *Saravia v. Barr,* No. 17-03615 (N.D. Cal. Jan. 19, 2021) (order approving settlement). This order dissolves the nationwide preliminary injunction issued on November 20, 2017. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1205–06 (N.D. Cal. 2017). The settlement agreement (attached and available HERE) now governs the treatment of class members and contains various requirements that apply to enforcement actions against minors.

The nationwide *Saravia* settlement agreement class includes:

> all noncitizen minors meeting the following criteria: 1) the noncitizen minor came to the United States as an unaccompanied minor; 2) the noncitizen minor was previously detained in [U.S. Department of Health and Human Services (HHS), Office of Refugee Resettlement (ORR)] custody and then released by ORR to a sponsor; and 3) the noncitizen minor has been or will be rearrested by [the U.S. Department of Homeland Security (DHS)] on the basis of a removability warrant based in whole or in part on allegations of gang affiliation.

*Saravia* Settlement Agreement at ¶ I.T.

Note: Any individual who is 18 years of age or older is not a *Saravia* class member. A minor subject to a final order of removal is likewise not a *Saravia* class member.

The settlement agreement requires the distribution of the attached *Saravia* flowchart. (b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure.  Please ensure that it is treated consistent with applicable guidance.  For questions regarding the terms of the settlement agreement please contact EROLD at** (b)(7)(E) **@ice.dhs.gov.**

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

***PRIVILEGED***ATTORNEY WORK PRODUCT***FOR OFFICIAL USE ONLY***NOT FOR DISSEMINATION OUTSIDE OPLA***

| From: | (b)(6); |
|---|---|
| To: | OPLA HQ Personnel; OPLA Field Personnel |
| Subject: | CORRECTED Broadcast Message: Implementing Matter of Castillo-Perez, 27 I&N Dec. 664 (A.G. 2019) |
| Date: | Tuesday, December 31, 2019 3:26:42 PM |

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***
*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

On October 25, 2019, the Attorney General (AG) issued a published decision in *Matter of Castillo-Perez*, 27 I&N Dec. 664 (A.G. 2019), holding that an alien with multiple driving-under-the-influence (DUI) convictions presumptively lacks good moral character under section 101(f) of the Immigration and Nationality Act (INA) and, in turn, is ineligible for cancellation of removal for certain nonpermanent residents under INA § 240A(b). The AG reaffirmed existing and longstanding caselaw on good moral character, emphasizing that an alien must at least meet the generally accepted and average moral standards of society, and that an alien's criminal record is "highly probative" but not dispositive in determining whether the alien lacks good moral character. *See* 27 I&N Dec. at 666-67. The AG's opinion can be found here.

The AG found that given the uniform rejection of drunk and impaired driving across the nation, multiple DUI convictions represent a repeated failure to meet the community's moral standards, rather than a single lapse that would be less probative of moral character. *See id.* at 669-70. The AG also noted that multiple DUI convictions should prompt an immigration judge (IJ) to analyze whether the alien may lack good moral character as a habitual drunkard under INA § 101(f)(1). *See id.* at 670 n.2. Further, the AG opined that multiple DUI convictions would likely result in a denial of cancellation of removal in the exercise of discretion. *See id.* at 670-71.

In discussing the presumption that an alien with multiple DUI convictions lacks good moral character, the AG underscored that the good moral character requirement attaches to the entire 10-year period before the application for cancellation of removal is adjudicated, so that an alien cannot rebut the presumption simply by showing subsequent efforts to reform; the alien must, in fact, show that he had good moral character even during the period in which he or she committed the DUI offenses. *See id.* at 671. Otherwise, absent "substantial relevant and credible contrary evidence," IJs must deny cancellation of removal to aliens with multiple DUI convictions in the relevant 10-year period. *See id.* The AG concluded by affirming the Board of Immigration Appeals (Board) denial of cancellation of removal, noting that the respondent's criminal and immigration history established that he lacked good moral character for failing to adhere to society's moral standards for the relevant decade, even with subsequent rehabilitative efforts. *See id.* at 672-73.

In light of the AG's opinion, OPLA attorneys should consider the practice pointers below. These practice pointers, as well as the above summary, can be found here.

(b)(5)

(b)(5)

(b)(5)



- (b)(5)

- (b)(5)

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance. If you have questions about continuances, *Matter of Castillo-Perez*, or any of the guidance provided herein, please do not hesitate to contact ILPD (ILPD-E or ILPD-W) or FLO, as appropriate.

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
Adam V. Loiacono

Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

**From:** (b)(6); (b)(7)(C)
**Sent:** Tuesday, December 31, 2019 1:05 PM
**To:** OPLA HQ Personnel (b)(7)(E) @ice.dhs.gov>; OPLA Field Personnel (b)(7)(E) @ice.dhs.gov>
**Subject:** Broadcast Message: Implementing Matter of Castillo-Perez, 27 I&N Dec. 664 (A.G. 2019)

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***
*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

On October 25, 2019, the Attorney General (AG) issued a published decision in *Matter of Castillo-Perez*, 27 I&N Dec. 664 (A.G. 2019), holding that an alien with multiple driving-under-the-influence (DUI) convictions presumptively lacks good moral character under section 101(f) of the Immigration and Nationality Act (INA) and, in turn, is ineligible for cancellation of removal for certain nonpermanent residents under INA § 240A(b). The AG reaffirmed existing and longstanding caselaw on good moral character, emphasizing that an alien must at least meet the generally accepted and average moral standards of society, and that an alien's criminal record is "highly probative" but not dispositive in determining whether the alien lacks good moral character. *See* 27 I&N Dec. at 666-67. The AG's opinion can be found here.

The AG found that given the uniform rejection of drunk and impaired driving across the nation, multiple DUI convictions represent a repeated failure to meet the community's moral standards, rather than a single lapse that would be less probative of moral character. *See id.* at 669-70. The AG also noted that multiple DUI convictions should prompt an immigration judge (IJ) to analyze whether the alien may lack good moral character as a habitual drunkard under INA § 101(f)(1). *See id.* at 670 n.2. Further, the AG opined that multiple DUI convictions would likely result in a denial of cancellation of removal in the exercise of discretion. *See id.* at 670-71.

In discussing the presumption that an alien with multiple DUI convictions lacks good moral character, the AG underscored that the good moral character requirement attaches to the entire 10-year period before the application for cancellation of removal is adjudicated, so that an alien cannot rebut the presumption simply by showing subsequent efforts to reform; the alien must, in fact, show that he had good moral character even during the period in which he or she committed the DUI offenses. *See id.* at 671. Otherwise, absent "substantial relevant and credible contrary evidence," IJs must deny cancellation of removal to aliens with multiple DUI convictions in the relevant 10-year period. *See id.* The AG concluded by affirming the Board of Immigration Appeals (Board) denial of cancellation of removal, noting that the respondent's criminal and immigration history established that he lacked good moral character for failing to adhere to society's moral standards for the relevant decade, even with subsequent rehabilitative efforts. *See id.* at 672-73.

In light of the AG's opinion, OPLA attorneys should consider the practice pointers below. These practice pointers, as well as the above summary, can be found here.

- (b)(5)

(b)(5)

- 

- 

- 

-



- (b)(5)
  - (b)(5)
  - (b)(5)

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance. If you have questions about continuances, *Matter of Castillo-Perez*, or any of the guidance provided herein, please do not hesitate to contact ILPD (ILPD-E or ILPD-W) or FLO, as appropriate.

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

*Disseminated on behalf of Kenneth Padilla and Adam V. Loiacono…*

To all OPLA Attorneys:

(b)(5)

- (b)(5); (b)(7)(E)
- 
- 

(b)(5); (b)(7)(E)

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.**

Thank you,

Ken Padilla

Deputy Principal Legal Advisor for Field Legal Operations

Office of the Principal Legal Advisor

U.S. Immigration and Customs Enforcement

Adam V. Loiacono

Deputy Principal Legal Advisor for Enforcement and Litigation

Office of the Principal Legal Advisor

U.S. Immigration and Customs Enforcement

| From: | (b)(6); (b)(7)(C) |
|---|---|
| To: | OPLA HQ Personnel; OPLA Field Personnel |
| Subject: | Guidance (Ninth Circuit): Impact of Jennings v. Rodriguez, 138 S. Ct. 830 (2018), on Casas-Castrillon v. Dep"t of Homeland Sec., 535 F.3d 942 (9th Cir. 2008), and Diouf v. Napolitano ("Diouf II"), 634 F.3d 1081 (9th Cir. 2011) |
| Date: | Friday, April 13, 2018 12:23:01 PM |

***Disseminated on behalf of Adam V. Loiacono and Ken Padilla…***

This message provides guidance on the OPLA position regarding the impact of the U.S. Supreme Court's decision in _Jennings v. Rodriguez_, 138 S. Ct. 830 (2018), on the Ninth Circuit's precedent decisions in _Casas-Castrillon v. Dep't of Homeland Sec._ (_"Casas"_), 535 F.3d 942 (9th Cir. 2008), and _Diouf v. Napolitano_ (_"Diouf II"_), 634 F.3d 1081 (9th Cir. 2011).

(b)(5)

(b)(5)

- (b)(5)

  ○ (b)(5)

(b)(5)

(b)(5)

(b)(5)

We will provide additional updated guidance as it becomes necessary and appropriate. In the meantime, if you have questions about *Jennings v. Rodriguez*, any of the above practice pointers or guidance, or about other custody issues, please contact DCLD ((b)(7)(E) @ice.dhs.gov), EROLD (b)(7)(E) @ice.dhs.gov), or ILPD ((b)(7)( @ice.dhs.gov or (b)(7)(E) @ice.dhs.gov), as appropriate.

Adam V. Loiacono

Deputy Principal Legal Advisor for Enforcement and Litigation

Ken Padilla

Deputy Principal Legal Advisor for Field Legal Operations

U.S. Immigration and Customs Enforcement

U.S. Department of Homeland Security

| | |
|---|---|
| **From:** | (b)(6) |
| **To:** | OPLA Field Personnel |
| **Subject:** | Guidance on Redacting the Form I-213 |
| **Date:** | Monday, September 16, 2019 7:26:36 AM |
| **Attachments:** | Guidance to OPLA Field Locations on redacting Form I-213 9.5.19.docx |

***Disseminated on behalf of Ken Padilla…***

To All OPLA Field Attorneys:

(b)(5)

(b)(5)     FLO,
together with ILPD and GILD, prepared the attached guidance detailing the appropriate redactions on the I-213. Effective immediately, please ensure that your practice is consistent with this guidance.

      I want to thank DCC (b)(6); (b)(7)(C) ALA (b)(6); (b)(7)(C) (ILPD), Chief (b)(6); (b)(6); (GILD), and ALA (b)(6); (b)(7)(C) (GILD) for their collective efforts in developing this guidance.

      If you have any questions, please discuss with your management team.

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor

*Disseminated on behalf of Kenneth Padilla…*

**Guidance to the Office of the Principal Legal Advisor (OPLA) Field Legal Operations (FLO) on redacting the U.S. Department of Homeland Security (DHS) Immigration and Customs Enforcement (ICE), Record of Deportable/Inadmissible Alien Form I-213 (I-213)**

This guidance is provided specifically for OPLA FLO Assistant Chief Counsel (ACC) on redaction of the I-213 when submitting the I-213 as an evidentiary document to the Executive Office for Immigration Review (EOIR) in immigration proceedings.

Generally, the standards for redacting the I-213 depend on who is making the request for the information, the purpose for which the record will be used, and what the applicable legal authorities are that govern the use/disclosure of the record. There are many different forums where release of the I-213 is appropriate and legally permissible (i.e., in response to a FOIA/Privacy Act request, in response to a Law Enforcement Agency request, in response to discovery requests, for purposes of litigation in removal proceedings, etc.). The decision to redact certain information is fact-driven and varies depending on an analysis of the factors listed above with the legal authorities governing use/disclosure of agency records.

The I-213 is an official record created by Department of Homeland Security agents and officers in the performance of their official duties and is inherently reliable in immigration court.[1] An ACC may submit the I-213 in immigration proceedings for a variety of reasons such as, evidence to prove alienage, manner of apprehension, or for purposes of impeachment when the alien presents testimony that is inconsistent with prior statements or events documented in the I-213. Disclosure of the I-213 is discretionary unless needed to sustain the Department's burden of proof. (b)(5)

(b)(5)

For purposes of presenting evidence in immigration proceedings the following information must always be redacted from the I-213:

(b)(7)(E)

---

[1] *See Matter of Fatahi*, 26 I&N Dec. 791, 792-93 n.1 (BIA 2016) (explaining that the I-213 is generally considered admissible and inherently reliable, absent any indication that it contains information that is incorrect or was obtained by coercion or force); *Matter of Barcenas*, 19 I&N Dec. 609, 611 (BIA 1988) (same); *Matter of Mejia*, 16 I&N Dec. 6, 8 (BIA 1976) (same).

(b)(7)(E)

(b)(7)(E)

Other information that _may_ need to be redacted is third-party information (i.e., names, addresses, contact information, details that identify parties that are not the subject of the removal proceedings), law enforcement sensitive information (b)(7)(E)
(b)(7)(E)

(b)(7)(E) When this information is necessary to support the Department's position the ACC should consult with OPLA management.

Kenneth Padilla
Deputy Principal Legal Advisor
Office of the Principal Legal Advisor

September 16, 2019

(b)(7)(E)

### ***PRIVILEGED***ATTORNEY WORK PRODUCT***FOR OFFICIAL USE ONLY***NOT FOR DISSEMINATION OUTSIDE OPLA***

*Disseminated on behalf of Kenneth Padilla and Adam V. Loiacono…*
On July 2, 2019, the U.S. District Court for the Western District of Washington issued a nationwide preliminary injunction in *Padilla v. ICE*, No. 18-928, 2019 WL 2766720 (W.D. Wash. July 2, 2019), ECF No. 149, *appeal docketed*, No. 19-35565 (9th Cir. July 3, 2019), ordering the Department of Justice's Executive Office for Immigration Review (EOIR) to conduct bond hearings within seven days of a bond hearing request by a class member, and to release such aliens if a bond hearing is not conducted within seven days. The preliminary injunction further requires that EOIR: (1) place the burden of proof on the U.S. Department of Homeland Security (DHS) in those bond hearings to demonstrate why the class member should not be released on bond, parole, or other conditions; (2) record the bond hearing and produce the recording or verbatim transcript of the hearing upon appeal; and (3) produce a written decision with particularized determinations of individualized findings at the conclusion of the bond hearing.

The class of aliens to whom the preliminary injunction applies includes: "All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under [section 235(b) of the Immigration and Nationality Act (INA)], were determined to have a credible fear of persecution, but are not provided a bond hearing with a verbatim transcript or recording of the hearing within seven days of requesting a bond hearing." Aliens pending a credible fear determination or who have received a negative credible fear determination are not part of the class. Arriving aliens are not part of the class, even if they have been found to have a credible fear. To reiterate, the preliminary injunction applies only to non-arriving aliens processed through expedited removal who are determined to have a credible fear of persecution or torture.

On Friday, July 12, 2019, the U.S. Court of Appeals for the Ninth Circuit granted a temporary stay of the district court's preliminary injunction. *Padilla v. ICE*, No. 19-35565 (9th Cir. July 12, 2019), ECF No. 14. Yesterday, however, the Ninth Circuit lifted the temporary stay of the entire preliminary injunction and issued a stay pending appeal with regard to only part of the preliminary injunction. *Padilla v. ICE*, No. 19-35565 (9th Cir. July 22, 2019), ECF No. 18. The Ninth Circuit declined to stay the district court's ruling that class members must continue to receive bond hearings before EOIR, even though the Attorney General held in *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019) that the expedited removal statute gives no jurisdiction to EOIR to conduct such hearings. The Ninth Circuit did, however, stay the procedural requirements of the preliminary injunction, including that EOIR: (1) conduct bond hearings within seven days of a bond hearing request by a class member, and to release such aliens if a bond hearing is not conducted within seven days; (2) place the burden of proof on DHS; (3) record the bond hearing and produce the recording or verbatim transcript of the hearing upon appeal; and (4) produce a written decision at the conclusion of the bond hearing.

(b)(5)

(b)(5)

Yesterday evening, Enforcement and Removal Operations (ERO) issued guidance titled, UPDATED GUIDANCE: Implementation of the Modified Nationwide Preliminary Injunction in *Padilla v. ICE*, No. 18-928, 2019 WL 2766720 (W.D. Wash. July 2, 2019), addressing the procedures and mechanisms for release applicable to all aliens subject to expedited removal who are transferred to full removal proceedings under section 240 of the INA. OPLA attorneys should also familiarize themselves with the ERO guidance.

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.**

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

**From:** (b)(6); (b)(7)(C)
**Sent:** Monday, July 15, 2019 4:10 PM
**To:** OPLA Field Personnel (b)(7)(E) @ice.dhs.gov>; OPLA HQ Personnel (b)(7)(E) @ice.dhs.gov>
**Subject:** Implementing Matter of M-S-, 27 I&N Dec. 509 (A.G. 2019)
**Importance:** High

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

*Disseminated on behalf of Kenneth Padilla and Adam V. Loiacono…*

On April 16, 2019, the Attorney General issued *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019), holding that "[a]n alien who is transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture is ineligible for release on bond. Such an alien must be detained until his or her removal proceedings conclude, unless he or she is granted parole." The Attorney General expressly overruled *Matter of X-K-*, 23 I&N Dec. 731, 736 (BIA 2005), which previously authorized immigration judges to conduct custody redetermination hearings ("bond hearings") for inland expedited removal cases—those aliens designated under INA § 235(b)(1)(A)(iii) who are subject to expedited removal, found to have a credible fear of persecution or torture, and referred for removal proceedings pursuant to 8 C.F.R. § 208.30(f).

In *Matter of M-S-*, consistent with *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the statutory

text of INA § 235(b)(1)(B)(ii), and the implementing regulations, the Attorney General concluded that whether arriving at the border or apprehended in the interior of the United States, "all aliens transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond." *Matter of M-S-*, 27 I&N Dec. at 515, 518-19. Moreover, unless paroled by the Secretary of Homeland Security pursuant to INA § 212(d)(5)(A), transferred aliens must remain detained until the completion of removal proceedings. *Id*. at 510. Importantly, such authority belongs exclusively to the Department of Homeland Security; Executive Office for Immigration Review (EOIR) adjudicators do not have parole authority. *See Matter of Arrabally*, 25 I&N Dec. 771, 777 n.5 (BIA 2002) ("parole authority is now exercised exclusively by the DHS"); *Matter of Singh*, 21 I&N Dec. 427, 434 (BIA 1996) ("neither the Immigration Judge nor th[e] Board has jurisdiction to exercise parole power"). In order to accommodate operational planning by DHS, the Attorney General delayed the effective date of the decision for 90 days to July 15, 2019. The decision can be found here. In light of *Matter of M-S-*, OPLA attorneys should consider the following practice pointers:

(b)(5)

- (b)(5)

(b)(5)

Should you have any questions about this case or its application, please contact the ILPD East or West mailboxes (b)(7)(E) @ice.dhs.gov or (b)(7)(E) @ice.dhs.gov).

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with <u>applicable guidance</u>.**

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono. . .*

On August 16, 2018, the Attorney General (AG) issued his decision in *Matter of L-A-B-R-*, 27 I&N Dec. 405 (A.G. 2018), clarifying that the "good cause" standard for continuances and adjournments, 8 C.F.R. §§ 1003.29, 1240.6, is a substantive requirement that limits the discretion of immigration judges and "is not a mere formality that permits immigration judges to grant continuances for any reason or no reason at all." *L-A-B-R-*, 27 I&N Dec. at 406. He determined that the "overuse of continuances in the immigration courts is a significant and recurring problem" and "[u]njustified continuances provide an illegitimate form of de facto relief from removal." *Id.* at 411. The decision can be found here.

As such, the AG held that when determining whether good cause exists to continue proceedings for a collateral matter, immigration judges should continue applying a multifactor analysis, as directed by the Board of Immigration Appeals (Board) in *Matter of Hashmi*, 24 I&N Dec. 785 (BIA 2009), but that the principal focus should be on (1) the likelihood that the collateral relief will be granted, and (2) whether the collateral relief will materially affect the outcome of the removal proceedings. While "[t]he good-cause standard in section 1003.29 requires consideration and balancing of all relevant factors[,]" the factors "are not all of equal importance." *L-A-B-R-*, 27 I&N Dec. at 413. Because 8 C.F.R. § 1003.29 focuses on the sufficiency of the "cause," the emphasis of the good-cause inquiry is on "'whether a continuance is likely to do any good.'" *Id.* (citing *United States v. Swanson*, 572 F.3d 523, 526 (5th Cir. 1978)). Whether the continuance is likely to do any good turns on whether the alien would ultimately receive the collateral relief and such relief would materially affect the outcome of the removal proceedings. *Id.*

Immigration judges should also consider relevant secondary factors, including the alien's diligence in pursuing collateral relief, DHS's position on the motion for continuance, concerns of administrative efficiency, the length of the continuance requested, the number of hearings held and continuances granted previously, and the timing of the continuance motion. Notably, the AG found that DHS' position on the continuance motion is not controlling, even if DHS consents or does not oppose a continuance. Moreover, the AG expressly stated that immigration judges should not shift the burden to DHS to demonstrate an absence of good cause. As with any multifactor balancing analysis, the AG noted that an alien's strength on certain factors may compensate for a weaker showing on others, but emphasized that a truly weak showing on the likelihood of success of the collateral relief "may be dispositive" as to whether good cause exists. *L-A-B-R-*, 27 I&N Dec. at 417. Specifically, the AG found that there would be no good cause for an alien in removal proceedings seeking a continuance to apply for a provisional unlawful presence waiver from USCIS because an alien is ineligible for such relief while in removal proceedings. *Id.* (citing 8 C.F.R. § 212.7(e)(4)(iii)). Furthermore, he noted that an alien's pending collateral attack on a criminal conviction is "too tentative" and "speculative" to support a continuance of removal proceedings. *Id.*

The AG further noted that, even if the alien's collateral proceedings show "clear promise," *id.* at 418, it may still be impossible to determine that such collateral relief will affect the disposition of removal proceedings. For example, good cause would not exist for an alien to seek a visa petition if the immigration judge would nonetheless deny the application for adjustment of status because the alien is statutorily ineligible or does not merit a favorable

exercise of discretion. Similarly, if an alien is eligible for a visa petition, but the priority date is too remote, the alien's success on an application for adjustment of status may be too speculative to establish good cause. *Id*. Because an immigration judge's principal focus should be on the likelihood of collateral relief, the AG indicated that an immigration judge should assess the speculative nature of a collateral matter by reviewing an alien's evidentiary submission, to include copies of the submissions in the collateral proceeding and supporting affidavits. *Id*. An alien who fails to submit such evidence will most likely fail to meet his burden of proof. In addition, the immigration judges must state the reasons for granting a continuance on the record or in a written decision. *Id.*

In light of *L-A-B-R-*, OPLA attorneys should consider the following practice pointers:

- (b)(5)



- 



- 



- 



- (b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance. If you have questions about continuances, *Matter of L-A-B-R-*, or any of the guidance provided herein, please do not hesitate to contact ILPD (ILPD-E or ILPD-W) or FLO, as appropriate.

Ken Padilla

Deputy Principal Legal Advisor for Field Legal Operations

Office of the Principal Legal Advisor

U.S. Immigration and Customs Enforcement

Adam V. Loiacono

Deputy Principal Legal Advisor for Enforcement and Litigation

Office of the Principal Legal Advisor

U.S. Immigration and Customs Enforcement

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

*Disseminated on behalf of Kerry E. Doyle . . .*

In March 2021, U.S. Customs and Border Protection (CBP) instituted the "Notice to Report" (NTR) process whereby it released into the United States certain noncitizens encountered at the southwest border without issuing them a notice to appear (NTA). As a result, on November 7, 2021, Enforcement and Removal Operations (ERO) began implementing Operation Horizon (OH) to identify, locate, and initiate removal proceedings against those noncitizens issued an NTR.

Three categories of noncitizens have been released by CBP under the NTR process: (1) noncitizens released as an act of prosecutorial discretion (NTR PD); (2) noncitizens paroled with SmartLINK (a mobile phone supervision device); and (3) noncitizens paroled with a GPS ankle monitor. (b)(5)

(b)(5)

(b)(5)

- (b)(5); (b)(7)(E)

- 

-

- (b)(5)

  - (b)(5)

- (b)(5)

  - (b)(5)

    - (b)(5)

(b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

  o (b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

- (b)(5)

(b)(5)

Legal questions about this guidance should be directed to ILPD (ILPD-E or ILPD-W), as appropriate. Questions regarding implementation of the program should be directed to OPLA FLO.

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.**

Thank you for your efforts to support OH and the ICE mission.


Kerry E. Doyle
Principal Legal Advisor
U.S. Immigration and Customs Enforcement

*Disseminated on behalf of Adam V. Loiacono and Ken Padilla . . .*

On April 17, 2018, in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the Supreme Court held that 18 U.S.C. § 16(b), which formed half of the "crime of violence" definition, is unconstitutionally vague. Section 16(b) defined a crime of violence as "any . . . offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The Immigration and Nationality Act's (INA) "aggravated felony" definition at section 101(a)(43)(F) and the crime of domestic violence ground of deportability at section 237(a)(2)(E)(i) both relied, in part, on 18 U.S.C. § 16(b).

Justice Kagan, joined by Justices Ginsburg, Breyer, and Sotomayor, and joined in part by Justice Gorsuch, delivered the opinion of the Court. The Court concluded that the result in *Dimaya* directly followed from its decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court struck down the Armed Career Criminal Act's (ACCA) "violent felony" definition (any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another") as unconstitutionally vague. Comparing § 16(b) to the ACCA "violent felony" definition, the Court found that § 16(b) suffers from the same two fatal defects that combine to make the provision unconstitutionally vague: (1) it requires the use of an "ordinary case" test, under which courts have to imagine the risk that force or violence will be used in the hypothetical "ordinary case" of a statute's violation; and (2) it presents a lack of clarity with respect to the threshold risk of force necessary to satisfy the statute. With respect to the "ordinary case" test, the Court explained that it "created 'grave uncertainty about how to estimate the risk posed by a crime' because it 'tie[d] the judicial assessment of risk' to a hypothesis about the crime's 'ordinary case.'" *Dimaya*, 138 S. Ct. at 1213-14 (explaining that under the "ordinary case" test, "a court focused on neither the 'real-world facts' nor the bare 'statutory elements' of an offense [but instead imagines] an 'idealized ordinary cases of the crime'" (internal citation omitted)). Repeating the questions it posed in *Johnson*, the Court asked how adjudicators are to go about identifying the "ordinary case": "Statistical analyses? Surveys? Experts? Google? Gut instinct?" *Id.* at 1215 (citing *Johnson*, 135 S. Ct. at 2557). Speaking to the uncertainty of the level of risk that makes a crime violent under § 16(b), the Court explained that using a qualitative standard, such as "substantial risk" or "foreseeable risk" is not alone problematic. *Id.* "The difficulty comes in § 16's residual clause just as in the ACCA's, from applying such standard to 'a judge-imagined abstraction'—*i.e.*, 'an idealized ordinary case of the crime.'" *Id.* at 1215-16 (citing *Johnson*, 135 S. Ct. at 2558, 2561)

One part of Justice Kagan's decision, joined by Justices Ginsburg, Breyer, and Sotomayor, explains that the prohibition on vagueness in criminal statutes is an essential part of due process, as it "guarantees that ordinary people have fair notice of the conduct a statute proscribes" and provides standards to govern the actions of law enforcement officers. *Id.* at 1212. In that part, the plurality declined to apply a less exacting vagueness standard merely because removal is a civil, as opposed to a criminal, matter. *See id.* at 1212-13.

Justice Gorsuch, who concurred in part and concurred in the judgment of the Court, penned a concurring opinion in which he discussed the constitutional underpinnings of the vagueness doctrine and concluded that § 16(b) is unconstitutionally vague. *See id.* at 1223-34. He also stated that, for purposes of this opinion, he presumed that § 16(b) required the application of the categorical

approach, but that he was open to alternative arguments about the proper interpretation of the statute. *See id.* at 1232-33.

Chief Justice Roberts, joined by Justices Kennedy, Thomas, and Alito, and Justice Thomas, joined by Justices Kennedy and Alito, issued dissenting opinions. Chief Justice Roberts, relying on textual differences between the ACCA's residual clause and § 16(b), concluded that § 16(b) is not unconstitutionally vague. *See id.* at 1234-41. Justice Thomas, in relevant part, opined that even assuming the vagueness doctrine applied, he would not invalidate § 16(b) because it is subject to a "reasonable alternative interpretation" that would avoid the constitutional issue—asking whether a defendant's actual conduct presented a substantial risk of physical force rather than whether the "ordinary case" presents such a risk. *See id.* 1250-59.

In light of *Dimaya*, OPLA attorneys should consider the following practice pointers:



- (b)(5)

  - (b)(5)

- (b)(5)

(b)(5)

If you have questions about *Dimaya* or any of the above practice pointers, please feel free to contact ILPD (b)(7)( )@ice.dhs.gov or (b)(7)(E)@ice.dhs.gov).

Thanks,

Adam V. Loiacono

Deputy Principal Legal Advisor for Enforcement and Litigation

Office of the Principal Legal Advisor

U.S. Immigration and Customs Enforcement

U.S. Department of Homeland Security

Ken Padilla

Deputy Principal Legal Advisor for Field Legal Operations

Office of the Principal Legal Advisor

U.S. Immigration and Customs Enforcement

U.S. Department of Homeland Security

| | |
|---|---|
| Pick a Type | Practice Pointers |
| Title | Matter of L-E-A-, 27 I&N Dec. 40 (BIA 2017) [Summary and Practice Pointers] |
| Court/Board | |
| Topic | Asylum/WH--Misc |
| Body | |

(b)(5)

On May 24, 2017, the Board of Immigration Appeals' (Board or BIA) issued a precedent decision in _Matter of L-E-A-, 27 I&N Dec. 40 (BIA 2017)_, dealing with the cognizability of family-based particular social groups (PSGs) and related nexus issues. The underlying factual scenario involved an applicant for asylum and statutory withholding of removal, [1] who was threatened by a drug cartel in an attempt to coerce him to sell contraband in his father's store after his father had refused to do so.

(b)(5)

### Family-Based PSG Issue

In its decision, the Board made the following points with respect to whether putative family-based PSGs may be cognizable. First, the Board held that a determination of whether a putative family-based PSG is cognizable is analyzed under the same standards as any other putative PSG, i.e., on a case-by-case basis, focusing on the three requirements of a common, immutable characteristic, particularity, and

socially distinction. 26 I&N Dec. at 42. Second, and relatedly, the Board emphasized that not all putative PSGs that involve family members will meet the requirements of particularity and social distinction. Rather, "the inquiry in a claim based on family membership will depend on the nature and degree of the relationships involved and how those relationships are regarded by the society in question." *Id.* at 42-43.

In this regard, the Board found that members of an "immediate family" [3] may constitute a cognizable PSG, and, in fact, held that the "immediate family" of the subject respondent's father in the instant case so qualified. *Id.* at 42, 43. However, the Board emphasized that simply inserting the characteristic of "family" into a putative PSG formulation does not necessarily mean that it will be legally viable. *Id.* at 42-43 ("Not all social groups that involve family members meet the requirements of particularity and social distinction."). For example, citing *Matter of S-E-G-*, 24 I&N Dec. 579, 585 (BIA 2008), the Board noted that a group composed of "family members of Salvadoran youth who have been subjected to recruitment efforts by MS-13 and who have rejected or resisted membership in the gang" is too "amorphous" to constitute a cognizable PSG, because it could include fathers, mothers, siblings, uncles, aunts, nieces, nephews, grandparents, and cousins.

(b)(5)

(b)(5)

(b)(5)

(b)(5)

### Nexus Issue

In *L-E-A-*, the Board also made a number of important points concerning the appropriate nexus analysis to apply in the context of family-based PSG claims.  As a primary matter, the Board observed that simply because an individual may belong to a cognizable family-based PSG does not necessarily mean that any harm inflicted or threatened will be on account of, or because of, such a protected ground.  Rather, the requisite nexus must be independently established.  27 I&N Dec. at 43. In terms of its approach to assessing nexus, while the Board could have been more explicit, its decision is best read to synthesize two existing tests for assessing whether the "one central reason" standard has been met.[7]

(b)(5)

(b)(5)

Step One:

(b)(5)

(b)(5)

Step Two:

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)



**"Persecution" and the Intent to "Overcome"**

Finally, in a footnote, the Board's decision in *L-E-A-* reaffirms the desire to "overcome" a protected trait is a requisite part of the concept of "persecution."  27 I&N Dec. at 44 n.2 (observing that "in *Matter of Kasinga*, 21 I&N Dec. 357, 365 (BIA 1996), we clarified that a punitive intent is not required and held, instead, that the focus is only whether the persecutor intended to 'overcome [the protected] characteristic of the victim.'" (bracketed language in the original)).

Yes, we DO realize that this guidance is almost as long as the *L-E-A-* decision itself, and, in fact, with this post-script, it is, in fact, now just as long, but we nevertheless hope you find it useful!

Should you have any questions about *Matter of L-E-A-*, or protection law issues more generally, please do not hesitate to reach out to ILPD

via the ILPD-E or ILPD-W mailboxes.

(b)(5)

(b)(5)



Practice Pointers

Effective Date

Reviewed

Expires

Rating (0-5) ★★★★★ |0

Created at 7/17/2017 9:39 AM by (b)(6); (b)(7)(C)
Last modified at 11/2/2017 4:34 PM by (b)(6); (b)(7)(C)

Close

| | |
|---|---|
| Pick a Type | Practice Pointers |
| Title | Matter of Negusie, 28 I&N Dec. 120 (A.G. 2020) [Summary and Practice Pointers] |
| Court/Board | AG |
| Topic | Asylum/WH--Bars |
| Body | On October 12, 2021, Attorney General (AG) Garland directed the Board of Immigration Appeals (BIA or Board) to refer to him for review its unpublished decision in Daniel Ghirmay Negusie, A015 575 924 (BIA Mar. 16, 2021), which AG Garland stayed pending his review. *See Matter of Negusie,* 28 I&N Dec. 399 (A.G. 2021). The fact of referral, per se, does not affect the AG decision issued on November 5, 2020, in *Matter of Negusie*, 28 I&N Dec. 120 (A.G. 2020), where the former AG vacated the prior decision of the Board at 27 I&N Dec. 347 (BIA 2018) and held that the Immigration and Nationality Act's (INA) persecutor bar to asylum and withholding of removal does not include an exception for coercion or duress, *see* INA §§ 101(a)(42), 208(b)(2)(A)(i), 241(b)(3)(B)(i). The 2020 decision also clarified that the burden of proof applicable to the persecutor bar does not require the Department of Homeland Security (DHS) to present prima facie evidence that an applicant assisted or otherwise participated in persecution before the 8 C.F.R. § 1240.8(d) regulatory requirement that the applicant prove by apreponderance of the evidence that the bar does not apply is triggered. *Negusie*, 28 I&N Dec. at 154. |

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

Practice Pointers   The *Updated OPLA Guidance: Matter of Negusie,* 28
                    I&N Dec. 120 (A.G. 2020), issued on December 8,
                    2020, is rescinded.

- (b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

- The AG's 2020 decision applies to the persecutor bar to asylum, statutory withholding of removal, and Convention Against Torture (CAT) withholding of removal. *Negusie*, 28 I&N Dec. at 155.  There is no persecutor bar to CAT deferral of removal.  8 U.S.C. §§ 1208.16(c)(4), 1208.17(a).

- (b)(5)

(b)(5)

- AG Barr expressly rejected the notion that voluntariness or duress is a factor to be assessed in determining whether conduct constitutes assistance in persecution, sometimes framed by courts as a "totality of the relevant conduct" approach. *See id.* at 145 n.22 (citing *Hernandez v. Reno*, 258 F.3d 806, 814 (8th Cir. 2001), and *Matter of A-H-*, 23 I&N Dec. 774, 785 (A.G. 2005)).

- (b)(5)

- (b)(5)

Effective Date        12/16/2021

Reviewed

Expires

Rating (0-5)        ☆☆☆☆☆ | 0

Created at 12/16/2021 11:11 AM  by (b)(6); (b)(7)(C)
Last modified at 12/16/2021 5:49 PM  by (b)(6); (b)(7)(C)

Close

| | |
|---|---|
| Pick a Type | Practice Pointers |
| Title | Matter of W-Y-U-, 27 I&N Dec. 17 (BIA Apr. 18, 2017) [Summary and Practice Pointers] |
| Court/Board | BIA |
| Topic | Jurisdiction and BIA/IJ Authority Issues |
| Body | UPDATE:  This decision was **overturned by the Attorney General** in Matter of Castro-Tum, 27 I&N Dec. 271 (A.G. May 17, 2018) (A206 842 910 – PHI). |

On April 18, 2017, the Board of Immigration Appeals (Board) issued *Matter of W-Y-U-*, 27 I&N Dec. 17 (BIA 2017), which clarified its decision in *Matter of Avetisyan*, 25 I&N Dec. 688 (2012), by holding that the primary consideration for an Immigration Judge (IJ) in evaluating whether to administratively close or recalendar proceedings is whether the party opposing administrative closure has provided a persuasive reason for the case to proceed and be resolved on the merits.  The Board also held that, in considering administrative closure, an Immigration Judge cannot review whether an alien falls within the enforcement priorities of the Department of Homeland Security (DHS), which has exclusive jurisdiction over matters of prosecutorial discretion.

The pro se respondent, a native and citizen of China, entered the United States in 2008 and timely applied for asylum and protection from removal.  *Matter of W-Y-U-*, 27 I&N Dec. at 18.  DHS made a motion for administrative closure as a matter of prosecutorial discretion, which the IJ granted over the respondent's objection.  *Id*.  When the respondent moved to recalendar proceedings so that he could pursue his applications for relief, the IJ denied the motion in order to conserve "limited adjudication resources to resolve actual cases in dispute."  *Id*.  The respondent filed an interlocutory appeal with the Board arguing that refusing to recalendar proceedings placed him in a legal limbo and prevented him from having his case resolved on the merits.  *Id*. at 18-19.  The Board agreed with the respondent that his case was an "actual case in dispute" and that the opportunity to have his removal hearing adjudicated to completion was a persuasive reason to recalendar the proceedings.  *Id*. at 19-20.

In reaching this conclusion, the Board reaffirmed its holding in *Matter of Avetisyan*, that IJs and the Board have the authority to administratively close a case when appropriate, even if a party opposes it.  *Id*. at 18, 20 & n.5 (citing that "neither party 'has absolute veto power over administrative closure requests.'" (quoting *Matter of Avetisyan*, 25 I&N Dec. at 692)).  In *W-Y-U-*, the Board also discounted two possible justifications for administrative closure.  First, the Board held that "docket efficiency" is not an appropriate consideration in evaluating the appropriateness of administrative closure.  *Id*. at 18-19.  Second, the Board held that IJs cannot weigh whether DHS considers the respondent to be an enforcement priority or will actually remove the respondent from the United States as "prosecutorial discretion is a matter within the exclusive jurisdiction of the DHS." *Id*. at 19.   The Board then reaffirmed the application of the six-factors set out in *Avetisyan* for weighing the appropriateness of administrative closure, but clarified that the "primary consideration is whether the party opposing administrative closure has provided a persuasive

reason for the case to proceed and be resolved on the merits." *Id*. at 20.

In this case, the Board concluded that the respondent met his burden of persuasion to establish that his case should proceed and be resolved on the merits. *Id.* at 20. Specifically, the Board reasoned that the respondent had a strong interest in proceeding with litigating his applications for relief to a resolution, as such litigation would bring finality to his proceedings. *Id.* ("[A]n unreasonable delay in resolution of proceedings may operate to the detriment of aliens by preventing them from obtaining relief that can provide lawful status or, on the other hand, it may 'thwart the operation of statutes providing for removal' by allowing aliens to remain indefinitely in the United States without legal status." (citation omitted)). To this end, the Board cited that there is an important public interest in bringing finality to immigration proceedings. *Id.* at 19-20 (citing *INS v. Abudu*, 485 U.S. 94, 107 (1988) ("There is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases.")). Accordingly, the Board remanded the case with instructions for the IJ to recalendar removal proceedings. *Id*.

**Practice Pointers**

DHS attorneys should consider the following practice points when (b)(5)

(b)(5)

- (b)(5)

- (b)(5)

(b)(5)

Should you have any questions regarding this decision and its application, please do not hesitate to contact us via the ILPD-E or ILPD-W email boxes.

Effective Date    4/18/2017

Reviewed

Expires    4/18/2019

Rating (0-5)    ☆ ☆ ☆ ☆ ☆ | 0

Created at 5/16/2017 9:49 AM  by (b)(6); (b)(7)(C)
Last modified at 6/1/2018 2:33 PM  by (b)(6); (b)(7)(C)

Close

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

This message provides updates to the February 14, 2020 broadcast message below concerning "Liberian Refugee Immigration Fairness" (LRIF), which provided an avenue by which certain qualifying aliens could apply for adjustment of status (AOS) with the Department of Homeland Security (Department). *See* National Defense Authorization Act (NDAA) for Fiscal Year 2020, Pub. L. No. 116-92, div. F, tit. LXXVI, subtit. B, § 7611, 133 Stat. 1198, 2309 (2019).

On December 27, 2020, the President signed into law the Consolidated Appropriations Act, 2021 (CAA 2021). Section 901 of the CAA 2021, titled "Extension of Period for [AOS] for Certain Liberian Nationals," extends the period during which certain Liberian nationals and certain family members may apply for AOS under the LRIF from one year to two years after the date of enactment of the NDAA. *See* CAA 2021, Pub. L. No. 116-260, div. O, tit. IX, § 901, 134 Stat. 1182 (2020). Therefore, an alien is eligible for LRIF AOS if he or she properly files a Form I-485, Application to Register Permanent Residence or Adjust Status, with U.S. Citizenship and Immigration Services (USCIS) by December 20, 2021. *See* NDAA § 7611(b)(1)(A), *amended by* CAA 2021 § 901.

(b)(5)

(b)(5)

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.

Thank you,

Ken Padilla

Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor

U.S. Immigration and Customs Enforcement

U.S. Department of Homeland Security

Adam V. Loiacono

Deputy Principal Legal Advisor for Enforcement and Litigation

Office of the Principal Legal Advisor

U.S. Immigration and Customs Enforcement

U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

**From:** (b)(6); (b)(7)(C)                    @ice.dhs.gov>

**Sent:** Friday, February 14, 2020 12:04 PM

**To:** OPLA Field Personnel <(b)(7)(E)                    @ice.dhs.gov>; OPLA HQ Personnel <(b)(7)(E)                    @ice.dhs.gov>

**Subject:** Broadcast Message: Liberian Refugee Immigration Fairness

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

On December 20, 2019, the President signed into law the National Defense Authorization Act (NDAA) for Fiscal Year 2020. Section 7611 of the NDAA, titled "Liberian Refugee Immigration Fairness" (LRIF), provides an avenue by which certain qualifying aliens may apply for adjustment of status (AOS) with the Department of Homeland Security (Department). *See* NDAA, Pub. L. No. 116-92, div. F, tit. LXXVI, subtit. B, § 7611, 133 Stat. 1198, 2309 (2019).

An alien is eligible for LRIF AOS if he or she:

1. Is a national of Liberia;
2. Has been continuously physically present in the United States during the period starting on November 20, 2014, and ending on the date he or she properly files the Form I-485, Application to Register Permanent Residence or Adjust Status, with U.S. Citizenship and Immigration Services (USCIS) **or** is the spouse, child, or unmarried son or daughter of such a Liberian national (i.e., one who meets the continuous physical presence requirement);
3. Is otherwise eligible for an immigrant visa;
4. Is admissible to the United States for lawful permanent residence; and
5. Properly files a Form I-485 with USCIS by December 20, 2021.

NDAA § 7611(b)(1), (c)(1)(A)-(B).

For LRIF AOS purposes, an alien will not be considered to have maintained continuous physical presence if he or she was absent from the United States for one or more periods amounting, in the aggregate, to more than 180 days. *Id.* § 7611(c)(2).

The grounds of inadmissibility at sections 212(a)(4) (public charge), 212(a)(5) (labor certification), 212(a)(6)(A) (present without admission or parole), and 212(a)(7)(A) (documentation requirements) of the Immigration and Nationality Act (INA), do **not** apply. *Id.* § 7611(b)(2). And, an applicant may, of course, seek a waiver of any other grounds of inadmissibility for which he or she is eligible under the INA.

Further, an alien is *in*eligible for LRIF AOS if he or she:

1. Has been convicted of an aggravated felony;
2. Has been convicted of two or more crimes involving moral turpitude (other than a purely political offense); or

3. Has ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion.

*Id.* § 7611(b)(3).

An alien who applies for LRIF AOS while in exclusion, deportation, or removal proceedings may not be ordered removed while his or her application is pending with USCIS. *Id.* § 7611(d)(2)(A). In addition, the fact that an alien may be eligible for LRIF AOS will not preclude the alien from seeking any other form of relief from removal for which he or she is eligible. *Id.* § 7611(i)(2). If an alien is already subject to an unexecuted final order of exclusion, deportation, or removal, he or she may seek a stay of removal with the Department pending the outcome of his or her adjustment application. *Id.* § 7611(d)(1).

(b)(5)

In light of this recent legislation, OPLA attorneys should follow the guidance below.

(b)(5)

(b)(5)



(b)(5)

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance. If you have questions about the implementation of LRIF or any of the guidance provided herein, please do not hesitate to contact ILPD (ILPD-E or ILPD-W), FLO, or EROLD as appropriate.

Thank you,

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security


Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

| From: | (b)(6): |
| To: | ^Los Angeles OPLA Distribution List |
| Subject: | UPDATED Broadcast Message: Procedures on the Handling of Joint Motions for a Continuance or Administrative Closure for Ms. L Class Members, Potential Class Members, and Their Children |
| Date: | Wednesday, September 22, 2021 2:07:49 PM |
| Attachments: | image001.png |
| | SOP_Tracking Case Initiatives in PLAnet_Ms. L and EO 14011_2021.07.02.pdf |

All:

Please review the below guidance for cases relating to *Ms. L* class members. (b)(5)

(b)(5)

(b)(5)

Thank you.

(b)(6);

### ***PRIVILEGED***ATTORNEY WORK PRODUCT***FOR OFFICIAL USE ONLY***NOT FOR DISSEMINATION OUTSIDE OPLA***

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

On June 26, 2018, the U.S. District Court for the Southern District of California issued a nationwide preliminary injunction in *Ms. L. v. I.C.E.*, requiring, subject to limited exceptions, including those separated in the interior of the United States, the reunification of noncitizen parents and their children from whom they were previously separated by the U.S. Department of Homeland Security (DHS). 310 F.Supp.3d 1133 (S.D. Cal. 2018). Reunification of the separated families remains ongoing. On November 15, 2018, a partial settlement agreement was entered into, establishing the mechanism by which certain separated parents and their children may pursue asylum or other protection in the United States. The parties have since resumed negotiations with a goal of reaching agreement on a comprehensive settlement consistent with President Biden's February 2, 2021, Executive Order, titled *Executive Order on the Establishment of Interagency Task Force on the Reunification of Families*." Exec. Order No. 14,011, 86 Fed. Reg. 8273 (Feb. 2, 2021) (E.O. 14,011) (establishing a task force whose objectives include facilitating reunification of children separated from their families at the United States-Mexico border between January 20, 2017, and January 20, 2021, under the prior administration's "Zero-Tolerance" Policy and providing additional services and support to the families, including trauma and mental health services).

(b)(5)

(b)(5); (b)(7)(E)

d

e

s:

*** PRIVILEGED MATERIAL: PRE-DECISIONAL/ATTORNEY-CLIENT/ATTORNEY WORK PRODUCT***

(b)(5); (b)(7)(E)

- (b)(5)
- 
- 
- 
- 
- 

(b)(5)

(b)(5)

(b)(5)

(b)(5)

(b)(5)

- 
- 
- 

(b)(5)

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with <u>applicable guidance</u>.**

Best regards,
Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
Adam V. Loiacono

Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

**From:** (b)(6); (b)(7)(C)                          @ice.dhs.gov>
**Sent:** Friday, November 6, 2020 10:00 AM
**To:** OPLA HQ Personnel <(b)(7)(E)                  @ice.dhs.gov>; OPLA Field Personnel
(b)(7)(E)                  @ice.dhs.gov>
**Subject:** Broadcast Message: Settlement Agreement Impacting Aliens Who Did Not Receive
Individualized Notice of the One-Year Deadline to File an Asylum Application – Mendez Rojas v.
Johnson, No. 16-1024 (W.D. Wash. filed June 30, 2016)

### \*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\*

*Disseminated on behalf of Ken Padilla and Adam V. Loiacono . . .*

On November 4, 2020, in *Mendez Rojas v. Wolf*, No. 16-1024 (W.D. Wash. filed June 30, 2016), the United States District Court for the Western District of Washington granted the parties' joint motion for approval of a settlement agreement to implement the permanent injunction issued in *Mendez Rojas v. Johnson*, 305 F. Supp. 3d 1176 (W.D. Wash. 2018), effective immediately. **This settlement agreement is applicable nationwide**, and is available here.

The settlement applies to:

> Class A ("Credible Fear Class"): All individuals who were encountered by DHS upon arrival or within fourteen days of unlawful entry; were released by DHS after they have been found to have a credible fear of persecution or torture pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) [INA § 235(b)(1)(B)(ii)] and 8 C.F.R. §§ 208.30, 1208.30, 1003.42; and did not receive individualized notice of the one-year deadline to file an asylum application as set forth in 8 U.S.C. § 1158(a)(2)(B) [INA § 208(A)(2)(b)].

>> A.I.: All individuals in Class A who *are not* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

>> A.II.: All individuals in Class A who *are* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

> Class B ("Other Entrants Class"): All individuals who were encountered by DHS upon arrival or within fourteen days of unlawful entry; expressed a fear of return to their country of origin; were released by DHS upon issuance of an NTA; and did not receive individualized notice of the one-year deadline to file an asylum application set forth in 8 U.S.C. § 1158(a)(2)(B) [INA § 208(A)(2)(b)].

>> B.I.: All individuals in Class B who *are not* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

>> B.II.: All individuals in Class B who *are* in removal proceedings and who

either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

*See Mendez Rojas v. Wolf,* No. 16-1024 (W.D. Wash. filed June 30, 2016), ECF Nos. 78 (SETTLEMENT AGREEMENT) and 82 (ORDER).

Individuals who fall within one of the four class definitions, and who otherwise meet the terms of the settlement agreement, are entitled to have their asylum application treated as timely filed by USCIS and EOIR. Subject to all other limitations set forth in the settlement agreement, Classes A(ii) and B(ii) include only individuals who were issued Notices to Appear (NTAs) and/or were in removal proceedings on or after June 30, 2016. Individuals who were issued NTAs on or after June 5, 2020, cannot establish Class membership, as this is the date DHS implemented the revised NTA, which includes notice of the one-year asylum application filing deadline.

**Class members must assert their rights by March 31, 2022.** The settlement agreement explains how Class members can assert their rights, including instructions for individuals whose removal proceedings have been administratively closed or who have received final orders of removal but who have not yet been removed from the United States. Class members are encouraged, but not required, to utilize template notices of class membership, motions to recalendar, and motions to reopen drafted by Class counsel.

OPLA attorneys should review the settlement agreement and consider the following practice pointers:

(b)(5)

- 
- 
-



- (b)(5)

The settlement agreement supersedes the parties' interim agreement, and the associated OPLA Field Legal Operations guidance, that were in place during the course of settlement negotiations.

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure.  Please ensure that it is treated consistent with applicable guidance.**

Thank you,

Ken Padilla
Deputy Principal Legal Advisor for Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security


Adam V. Loiacono
Deputy Principal Legal Advisor for Enforcement and Litigation
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

**\*\*\*PRIVILEGED\*\*\*ATTORNEY WORK PRODUCT\*\*\*FOR OFFICIAL USE ONLY\*\*\*NOT FOR DISSEMINATION OUTSIDE OPLA\*\*\***

| | |
|---|---|
| **From:** | (b)(6); (b)(7)(C) |
| **Sent:** | Thu, 31 Dec 2020 18:58:44 +0000 |
| **To:** | # Boston OCC Attorneys |
| **Cc:** | (b)(6); (b)(7)(C) |
| **Subject:** | IHP NTA Review |
| **Attachments:** | 248 (b)(6); - NTA and supporting docs - IHP.pdf, 248 (b)(6): - NTA and Removability package - IHP.docx |

Hi Attorneys in Boston,

I have assigned most of you to a spot in a column on the calendar called "IHP Review" so that you can assist with the legal sufficiency review of Institutional Hearing Program cases. IHP cases are done by televideo from state prisons, where criminal aliens are serving their sentences. The purpose of the program is administrative efficiency, such that the aliens' removal proceedings will be resolved by the time they finish their sentences and are taken into custody by DHS. (b)(5)

(b)(5)

Prep

1. (b)(5)

2.

Review

3. (b)(5)

4. (b)(5)

5. (b)(5)

(b)(5); (b)(6); (b)(7)(C)

Filing the NTA/Evidence - When we receive the A file from ERO

6. (b)(5); (b)(6); (b)(7)(C)

7.
8.
9.

Please let me know if you have any questions.  Thanks!

Best regards,
(b)(6);

(b)(6); (b)(7)(C)
Deputy Chief Counsel
DHS/ICE/OPLA/Boston
JFK Federal Building (b)(6);
Boston, MA 02203
(b)(6); Office
617-565-4921 Fax
(b)(6); (b)(7)(C) @ice.dhs.gov<mailto: (b)(6); @ice.dhs.gov>

*** Warning *** Attorney/Client Privilege *** Attorney Work Product *** This communication and any attachments may contain confidential and/or sensitive attorney/client privileged information or attorney work product and/or law enforcement sensitive information.  It is not for release, review, retransmission, dissemination, or use by anyone other than the intended recipient.  Please notify the sender if this email has been misdirected and immediately destroy all originals and copies.  Furthermore

do not print, copy, re-transmit, disseminate, or otherwise use this information. Any disclosure of this communication or its attachments must be approved by the Office of the Principal Legal Advisor, U.S. Immigration and Customs Enforcement. This document is for INTERNAL GOVERNMENT USE ONLY and may be exempt from disclosure under the Freedom of Information Act, 5 USC ?? 552(b)(5), (b)(7)

| | |
|---|---|
| **From:** | (b)(6); (b)(7)(C) |
| **Sent:** | Mon, 2 Dec 2019 18:54:58 +0000 |
| **To:** | # Boston OCC (All Employees) |
| **Subject:** | Brito Decision Issued - Burden of Proof in 236(a) bond hearings on DHS effective December 13, 2019. |
| **Attachments:** | Doc 88 112719 Memorandum and Order.pdf, Brito Memorandum and Order Class Certification.pdf |

All – Judge Saris issued the below order and the attached memorandum and order last Wednesday in the Brito class action litigation in USDC-MA. As expected, Judge Saris granted the Plaintiffs' motion for summary judgement and allowed in part and denied in part the requested declaratory and injunctive relief. The Brito class action litigation deals with bond hearings conducted in the Boston immigration court pursuant to INA Section 236(a). As set forth below, Judge Saris found that beginning on December 13, 2019, DHS bears the burden of proof in 236(a) bond hearings and must prove the alien is either dangerous by clear and convincing evidence or a risk of flight by a preponderance of the evidence and that no condition or combination of conditions will reasonably assure the alien's future appearance and the safety of the community. Judge Saris further ordered that the immigration judge must evaluate the alien's ability to pay in setting bond above $1,500 and must consider alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the alien's future appearances.

The above applies to aliens who have not yet received a bond hearing before the Boston immigration court.

(b)(5)

(b)(5)

(b)(5)

If anyone has any questions, feel free to let me know.



---

## ORDER

Plaintiffs' motion for summary judgment and motion to modify the class definitions are **ALLOWED.** Plaintiffs' request for declaratory and injunctive relief is **ALLOWED IN PART** and **DENIED IN PART.**

## DECLARATORY JUDGMENT (BOTH CLASSES)

The Court declares that aliens detained pursuant to 8 U.S.C. § 1226(a) are entitled to receive a bond hearing at which the Government must prove the alien is either dangerous by clear and convincing evidence or a risk of flight by a preponderance of the evidence and that no condition or combination of conditions will reasonably assure the alien's future appearance and the safety of the community. At the bond hearing, the immigration judge must evaluate the alien's ability to pay in setting bond above $1,500 and must consider alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the alien's future appearances.

## PERMANENT INJUNCTION (BOTH CLASSES)

The Court orders that immigration courts shall follow the requirements set forth in the above declaration, effective December 13, 2019.

The Court orders that the Government shall provide this declaratory judgment and permanent injunction to all members of both classes by December 13, 2019 and to all new members of the Pre-Hearing Class once ICE makes the initial determination to detain them pursuant to 8 U.S.C. § 1226(a). The Government shall file a certification that this has occurred by December 16, 2019.

## PERMANENT INJUNCTION (POST-HEARING CLASS ONLY)

The Court orders that the Government shall provide class counsel with the following information for each member of the Post-Hearing Class by January 3, 2020: (1) the name; (2) the current location; (3) the date the current period of detention began, (4) the name of the class member's counsel in immigration court, if any, and; (5) a statement of whether a new bond hearing has taken place after the date of this order and, if so, the outcome. The Government also shall file with the Court a copy of this information.

(b)(6); (b)(7)(C)

Assistant Chief Counsel

Office of the Principal Legal Advisor, Boston

U.S. Department of Homeland Security

U.S. Immigration and Customs Enforcement

JFK Federal Building (b)(6);

Boston, MA 02203

Office: (b)(6); (b)(7)(C)

Cell: (b)(6); (b)(7)(C)

FX: (617) 565-4921

| | |
|---|---|
| **From:** | (b)(6); (b)(7)(C) |
| **Sent:** | Tue, 25 Jan 2022 11:16:12 +0000 |
| **To:** | # Boston OCC Attorneys |
| **Subject:** | GBLS Decision on Motion to Dismiss and Guidance on Disclosure of Documents |
| **Attachments:** | OPLA Guidance on Responding to Requests for Documents from A-files January 2013.pdf, GBLS Decision on MTD.pdf |
| **Importance:** | High |

All:

On January 13, 2022, the U.S. District Court for the District of MA, Judge Casper, allowed in part and denied in part the Defendants' motion to dismiss the case. The Plaintiffs are allowed to amend their complaint by February 14, 2022.

The Plaintiffs' complaint alleged that DHS (ICE, USCIS, and CBP) have a "non-disclosure" policy of failing to produce records in the government's possession that impact claims and defenses or eligibility for benefits in immigration proceedings. The complaint alleges that the Freedom of Information Act is an inadequate method of obtaining such records. Per the complaint, ICE's and other DHS component's alleged failure to provide documents from a noncitizen's A-file violates the Immigration and Nationality Act (Act), the Administrative Procedures Act (APA), and the Due Process Clause of the Constitution.

In the decision, which is attached, the Court dismissed the due process claims for lack of standing and the APA claims as they pertained to removal proceedings but allowed the APA claims as related to the asylum regulation provisions of 8 C.F.R. §§ 208.12 and 240.69. (b)(5)

(b)(5)

(b)(5)

Also attached to this email is the 2013 OPLA guidance for responding to requests for documents from Respondents in removal proceedings. (b)(5)

(b)(5)

(b)(5) Thank you.

(b)(6);
(b)(7)(C)

(b)(6); (b)(7)(C)

**Deputy Chief Counsel**
**Office of the Principal Legal Advisor – Boston, MA**
**U.S. Immigration and Customs Enforcement**
Phone: (b)(6); (b)(7)(C)

*** Warning *** Attorney/Client Privilege *** Attorney Work Product ***

This communication and any attachments may contain confidential and/or sensitive attorney/client privileged information or attorney work product and/or law enforcement sensitive information. It is not for release, review, retransmission, dissemination, or use by anyone other than the intended recipient. Please notify the sender if this email has been misdirected and immediately destroy all originals and copies. Furthermore do not print, copy, re-transmit, disseminate, or otherwise use this information. Any disclosure of this communication or its attachments must be approved by the Office of the Principal Legal Advisor, U.S. Immigration and Customs Enforcement. This document is for INTERNAL GOVERNMENT USE ONLY and may be exempt from disclosure under the Freedom of Information Act, 5 USC §§ 552(b)(5), (b)(7).

| | |
|---|---|
| **From:** | (b)(6); |
| **Sent:** | Tuesday, January 08, 2013 5:54 PM |
| **To:** | OPLA Chief Counsels; OPLA Deputy Chief Counsels; OPLA HQ Deputy Division Chiefs; OPLA HQ Division Chiefs; OPLA HQ Personnel; OPLA Field Personnel |
| **Subject:** | Responding to Requests for Documents from Respondents in Removal Proceedings |

*Disseminated at the Request of Jim Stolley…*

Chief Counsel—

Since the Ninth Circuit's decision in *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010), the Office of the Principal Legal Advisor (OPLA) has reviewed its policies on what non-confidential documents should be made available to respondents in removal proceedings, and how those documents should be released. Although the *Dent* decision turns on an interpretation of section 240(c)(2)(B) of the Immigration and Nationality Act (INA), and hence applies in a relatively narrow range of cases, OPLA policy is to be reasonable in releasing documents requested by respondents. *Cf.* INA § 240(b)(4) (aliens in removal proceedings are to be afforded "a reasonable opportunity to examine the evidence against the[m]."); 8 C.F.R. § 1003.31(c) (allowing immigration judges to set and extend filing deadlines); Executive Office for Immigration Review, Immigration Court Practice Manual, Chapter 3.2(d) (April 1, 2008), *available at* http://www.justice.gov/eoir/vll/OCIJPracManual/Chap%203.pdf (requiring service upon opposing party to be made in a way "calculated to allow the other party sufficient opportunity to act upon or respond").

By law, every respondent in removal proceedings is provided with a copy of the charging document. (b)(5)

(b)(5)

(b)(5) If an OPLA attorney has concerns about whether a document may be released in its entirety, he or she should consult a supervisor.

(b)(5)

Thank you.

Jim Stolley
Director, Field Legal Operations
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement

2022-ICLI-00032 676

OPLA Boston

Dedicated Docket Standard Operating Procedures (1.0)

December 8, 2021

(b)(5)

(b)(5)

**Section I – ERO Filing of NTAs and Processing of A-Files**

1. **Cases with EOIR hearing date but NTA not yet uploaded to ECAS**

   (b)(5)

2. **Cases with no hearing date and no NTA**

   (b)(5)

3. **Cases improperly placed on a non-DD docket**

   (b)(5)

1

4. **ERO Boston Dedicated Docket POCs**

AFOD (b)(6); (b)(7)(C) @ice.dhs.gov
SDDO (b)(6); (b)(7)(C) @ice.dhs.gov
SDDO (b)(6); (b)(7)(C) @ice.dhs.gov
SDDO (b)(6); (b)(7)(C) @ice.dhs.gov


## Section 2 – OPLA Boston Responsibilities and Litigation of Dedicated Docket Cases

1. **Identifying Cases for upcoming DD Hearings - Requesting Files / Processing Files Post Hearing**

(b)(5)

(b)(5)

2. **Identifying Cases in PLAnet as Dedicated Docket Cases**

(b)(5)

3. **Case Preparation & Ensuring NTAs are Uploaded to ECAS**

(b)(5)

(b)(5)

4. **Cases Deemed Failure to Prosecute**

2

(b)(5)

**5. Filing Motions to Place Cases on the Dedicated Docket**

(b)(5)

**6. General Considerations for Litigating Dedicated Docket Cases**

(b)(5)

3

OPLA Boston

Dedicated Docket Standard Operating Procedures (1.1)

December 16, 2021

(b)(5)

(b)(5)

**Section I – ERO Filing of NTAs and Processing of A-Files**

1. **Cases with EOIR hearing date but NTA not yet uploaded to ECAS**

   (b)(5)

2. **Cases with no hearing date and no NTA**

   (b)(5)

3. **Cases improperly placed on a non-DD docket**

   (b)(5)

1

4. **ERO Boston Dedicated Docket POCs**

AFOD (b)(6); (b)(7)(C) @ice.dhs.gov
SDDO (b)(6); (b)(7)(C) @ice.dhs.gov
SDDO (b)(6); (b)(7)(C) @ice.dhs.gov
SDDO (b)(6); (b)(7)(C) @ice.dhs.gov

## Section 2 – OPLA Boston Responsibilities and Litigation of Dedicated Docket Cases

1. **Identifying Cases for upcoming DD Hearings - Requesting Files / Processing Files Post Hearing**

(b)(5)

(b)(5)

2. **Identifying Cases in PLAnet as Dedicated Docket Cases**

(b)(5)

3. **Case Preparation & Ensuring NTAs are Uploaded to ECAS**

(b)(5)

(b)(5)

4. **Cases Deemed Failure to Prosecute**

2

(b)(5)

5. **Filing Motions to Place Cases on the Dedicated Docket**

(b)(5)

6. **Respondents that Fail to Appear for Initial Master Hearing**

(b)(5)

- (b)(5)
- 
- 

(b)(5); (b)(6); (b)(7)(C)

(b)(5)

2022-ICLI-00032 727

(b)(5)

(b)(5)

(b)(5)

7.  **General Considerations for Litigating Dedicated Docket Cases**

(b)(5)

4

(b)(5)

## OPLA Boston Standard Operating Procedures Implementing Principal Legal Advisor Trasviña's *Interim Guidance to OPLA Attorneys Regarding Civil Immigration Enforcement and Removal Policies and Priorities* (December 8, 2021)

This memorandum outlines OPLA Boston's standard operating procedures implementing Secretary Alejandro Mayorkas's memorandum entitled, *Guidelines for the Enforcement of Civil Immigration Law* (Mayorkas Memorandum), dated September 30, 2021. As of November 29, 2021, the Mayorkas Memorandum rescinded the memorandum issued by then-Acting Secretary Pekoske, *Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities*, dated January 20, 2021, and the memorandum issued by ICE Acting Director Johnson, *Interim Guidance: Civil Immigration Enforcement and Removal Priorities*, dated February 18, 2021. While these memoranda have been superseded, Principal Legal Advisor Doyle instructed that Principal Legal Advisor Trasviña's memorandum entitled, *Interim Guidance to OPLA Attorneys Regarding Civil Immigration Enforcement and Removal Policies and Priorities* (Trasviña Memorandum), dated May 27, 2021, remains in effect to the extent that it does not conflict with the Mayorkas Memorandum.[1]

(b)(5)

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.**

(b)(5)

2

**This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.**

(b)(5)

3

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.

(b)(5)

4

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.

(b)(5)

5

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.

(b)(5)

6

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.

2022-ICLI-00032 751

(b)(5)

### III.    PD Requests Not Requiring Supervisory Approval

#### a.    Administrative Closure

On July 15, 2021, *Matter of Cruz-Valdez*, 28 I&N Dec. 326 (A.G. 2021), vacated then-AG Sessions' decision in *Matter of Castro-Tum*, 27 I&N Dec. 271 (A.G. 2018), and directed immigration judges and the Board to apply the framework for administrative closure prior to *Castro-Tum*, set forth in *Matter of Avetisyan*, 25 I&N Dec. 688 (BIA 2012), and *Matter of W-Y-U-*, 27 I&N Dec. 17 (BIA 2017).

(b)(5)

7

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.

(b)(5)

8

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.

(b)(5)

(b)(5)

9

This message includes internal guidance provided for internal OPLA use only and is not intended for public disclosure. Please ensure that it is treated consistent with applicable guidance.