## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendant. | Civil Action No. 1:22-cv-10407-PBS |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This Freedom of Information Act (FOIA) case concerns 42 email and other broadcast messages (Broadcasts) sent by high-up attorneys at Immigration and Customs Enforcement (ICE) to the agency's line prosecutors. Although ICE contends that most of the contents of these Broadcasts must be redacted as attorney work product, and that some of their contents must be redacted as a record compiled for law enforcement purposes, it has failed to meet its burden of proof to justify these redactions. To the contrary, the record demonstrates that ICE's broad redactions encompass unprivileged communications of agency policy and sweep well beyond anything that might be considered the private mental impressions of an attorney working on a case. Because ICE has not shown that the Broadcasts are privileged, nor that their disclosure is harmful to the interests protected by FOIA's exemptions, the plaintiff is entitled to summary judgment.

### STATEMENT OF FACTS

At present, ICE prosecutes over two million immigration removal cases and detains over 20,000 people in the United States. Plaintiff's Statement of Undisputed Material Facts (SUMF)

1

¶ 50. Within ICE, the Office of the Principal Legal Advisor (OPLA) sets policies that guide the ICE attorneys who prosecute those cases. *Id.* ¶¶ 51-53.

OPLA is the largest legal program at the Department of Homeland Security (DHS), employing approximately 1,250 attorneys who serve as the exclusive representatives of the federal government in removal proceedings against immigrants. ECF No. 22 ¶¶ 20-21. OPLA issues guidance to its attorneys in the form of written broadcast messages that set agency policy in response to changing priorities and other legal developments. SUMF ¶ 51. As an executive agency, ICE has discretion to enforce the law based on various priorities, and OPLA's policies thus change between administrations. *Id.* ¶ 54. Millions of immigrants are affected by these changes. *Id.* ¶ 50.

On January 31, 2022, Plaintiff American Civil Liberties Union of Massachusetts (ACLUM) submitted a FOIA request seeking "[a]ny and all guidance to ICE OPLA and/or OCC [Office of Chief Counsel] attorneys that is currently in effect." *Id.* ¶ 56. When ICE failed to respond within FOIA's statutory time limits, ACLUM filed suit. *Id.* ICE produced documents totaling 754 pages on May 23 and June 17, 2022, ECF No. 22 ¶¶ 4-5, and supplemented its production with further disclosures on three pages of records on November 16, 2022, *id.* ¶ 6.

This case now focuses on 42 Broadcasts sent by OPLA to the line attorneys who represent ICE in removal proceedings against noncitizens in immigration court.[1] Many of the Broadcasts respond to particular developments that are relevant to ICE's work, such as new case law, new programs, or new litigation settlements. ECF No. 22-2. In its production of Broadcasts in this case, ICE has left unredacted many case summaries and factual descriptions of the development at issue.

---

[1] ICE formally terms most of the challenged documents "Broadcast Messages." For simplicity, the plaintiff refers to all of the documents as "Broadcasts" whether or not they are formally "Broadcast Messages." All of the challenged documents were sent from OPLA headquarters or from supervisors or leadership at OPLA Boston. SUMF ¶ 58. Most were sent to all OPLA attorneys while some were sent to all OPLA Boston attorneys. *Id.*

ECF No. 22-1 at ¶ 17. But beyond the "factual information and case summaries," which ICE does not contend are work product, ICE has redacted nearly everything else. ICE characterizes the remaining material as "practice pointers, legal strategies, legal analysis, legal arguments, and guidance" on litigation before immigration courts. ECF No. 22 ¶ 15. ICE contends that the withheld material is work product and protected from disclosure by FOIA Exemption 5, which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

But the withheld portions of the Broadcasts appear to contain non-exempt statements of agency policy. A few of the Broadcasts also appear to contain disclosable administrative instructions. ICE does not claim to have segregated and released statements of agency law and policy, administrative instructions, or anything other than "factual information and case summaries." *See* ECF No. 22-1 ¶ 17. Accordingly, ACLUM contests ICE's Exemption 5 redactions, as well as a redaction to one portion of a document that ICE withheld as a "record compiled for law enforcement purposes" under Exemption 7(E). *See* 5 U.S.C. § 552(b)(7)(E).

## LEGAL STANDARD

FOIA was enacted "to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). Because FOIA requires "broad disclosure" of records upon request by the public, the government is required to turn over all responsive information "unless it determines that a specific exemption, narrowly construed, applies." *Church of Scientology Int'l v. DOJ*, 30 F.3d 224, 228 (1st Cir. 1994). Even if some information contained within a record is properly withheld pursuant to an exemption, the government must produce all segregable information subject to disclosure, and if it fails to do so, it "must offer some basis" for its conclusion that no segregable information exists. *Id.* at 236; *see* 5 U.S.C. 552(a)(8)(A)(ii).

3

A complainant may sue in federal district court to seek an order requiring the government to produce any records improperly withheld or redacted. *Id.* § 552(a)(4)(B). These cases are typically resolved on motions for summary judgment, where the "movant is entitled to summary judgment when the evidence shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Block & Leviton LLP v. FTC*, 2020 WL 6082657, at *3 (D. Mass. Oct. 15, 2020) (quoting Fed. R. Civ. P. 56) (Saris, J.). The agency bears the burden of demonstrating that withholding is permitted under FOIA. *See id*.

To decide if an agency has met its burden, a court follows two steps. First, it determines *de novo* the applicability of the asserted exemption(s), *see* 5 U.S.C. § 552(a)(4)(B), construing the exemptions "narrowly, with all doubts resolved in favor of disclosure," *Moffat v. DOJ*, 716 F.3d 244, 250 (1st Cir. 2013). Second, it assesses whether the agency has sufficiently "articulate[d] a link between the withheld information and [a] foreseen harm" to an interest protected by the specific FOIA exemption. *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 109 (D.D.C. 2021). "An agency's failure to make both showings warrants disclosure." *Id.* at 110.

## ARGUMENT

Because ICE has not shown that its Exemption 5 redactions are in fact attorney work product whose disclosure would harm the agency, ICE has not met its burden to justify its substantial redactions of the 42 Broadcasts to its attorneys. Nor has it met its burden to justify its reliance on Exemption 7(E) to redact one of these Broadcasts, as it has not offered sufficient evidence that the record was created for a law enforcement purpose or that disclosure would risk circumvention of the law. Summary judgment for the plaintiff is warranted.

## I.  ICE's redactions in 42 Broadcasts to ICE attorneys are not supported by Exemption 5

ICE has redacted most of the contents of its Broadcasts as attorney work product. But these

redactions fail both of the requirements for redaction under FOIA: ICE has not shown that the redacted material is protected work product, nor articulated any foreseeable harm that could follow from disclosure. Its Exemption 5 redactions are therefore improper.

### A.  ICE has not demonstrated that its Exemption 5 redactions are work product.

ICE has not met its burden to show that the work product privilege applies to the 42 Broadcasts to its attorneys. In this case, ICE correctly determined that portions of its Broadcasts that simply describe factual or legal developments to OPLA attorneys—*i.e.*, the description of a new program, regulation, settlement, or case law—are not work product. But ICE incorrectly concluded that everything else in its Broadcasts to its these attorneys is work product. That conclusion sweeps too broadly. Agency policy, for example, is not properly withheld pursuant to Exemption 5, because an agency's uniform articulation of the *positions* that attorneys should take on behalf of the agency are not work product. Even if they relate to litigation, such agency-wide positions do not reveal the private thoughts of an attorney or the litigation strategy to be applied in adversarial cases. The same is true of instructions to an agency's attorneys about administrative aspects of their work. Because ICE has made no effort to segregate out policy statements and other non-privileged material, and because its *Vaughn* index contains only conclusory statements that do not permit a court to conclude that any of the Broadcasts contains protected work product, ICE has failed to show that its redactions fall within Exemption 5.

### 1.  ICE applied an overbroad understanding of attorney work product to improperly redact non-exempt policy and administrative information.

The attorney work product privilege protects the "mental impressions" and "processes" of an attorney working in anticipation of litigation. *See Hickman v. Taylor*, 329 U.S. 495, 510-11, 514 (1947). "The mere relation of documents to litigation does not automatically endow those documents with privileged status," even when documents are drafted by attorneys. *Maine v. DOI*,

298 F.3d 60, 69 (1st Cir. 2002). Instead, the privilege "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 864 (D.C. Cir. 1980). It is designed to "protect the adversary trial process itself," *id.*, by protecting that "certain degree of privacy," without which "[a]n attorney's thoughts . . . would not be his own." *Hickman*, 329 U.S. at 510-11.

Under those principles, ICE leadership's communications of the agency's policy and legal positions to OPLA attorneys is not attorney work product. Nor are administrative instructions.

*First*, as a general matter, agency law and policy positions cannot be withheld under Exemption 5. The Supreme Court has explained that "Exemption 5, properly construed, calls for 'disclosure of all opinions and interpretations which embody the agency's effective law and policy . . . .'" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (quoting Kenneth C. Davis, *The Information Act: A Preliminary Analysis*, 34 U. Chi. L. Rev. 761, 797 (1967)). Statements that represent agency-wide legal positions do not reveal any attorney's preparation in anticipation of cases they may litigate and do not impact the integrity of the trial process. *See* Davis, 34 U. Chi. L. Rev. at 797 ("[T]he work product of a private attorney is something altogether different from a basic memorandum by the legal staff of an agency which is used by the agency as a guide in the handling of cases involving private parties.").

*Second*, courts have recognized that documents conveying agency law and policy positions still must be disclosed—and are not transformed into attorney work product that can be withheld under Exemption 5—when those documents are distributed to agency lawyers involved in litigation. *See Nat'l Ass'n of Crim. Def. Laws. v. DOJ*, 844 F.3d 246, 255 (D.C. Cir. 2016) (*NACDL*); *ACLU of N. Cal. v. DOJ*, 880 F.3d 473, 486 (9th Cir. 2018). In *Jordan v. Department*

*of Justice*, the D.C. Circuit denied deliberative process and work product protections to the "instructions or guidelines issued by the U.S. Attorney and directed at his subordinates" regarding prosecutorial discretion. 591 F.2d 753, 757-58, 774-76 (D.C. Cir. 1978). Those instructions were "effective policy" and were "promulgated as general standards to guide the Government lawyers" deciding which cases to bring to trial; they did not contain the sort of "factual information, mental impressions, conclusions, opinions, legal theories or legal strategies" relevant to a specific trial or even "prepared in anticipation of trials in general." *Id.* at 774-76 (internal quotations omitted);[2] *see also American Immigration Council v. DHS*, 905 F. Supp. 2d 206, 222 (D.D.C. 2012) (distinguishing between "a legal opinion meant to bind the agency," which is not work product, and "a memo plotting litigation strategy," which is).

Similarly, in *NACDL*, the D.C. Circuit explained that work product protection does not extend to the "statements of agency policy" in the United States Attorneys' Manual (now called the Justice Manual), but the privilege does extend to portions of a "Blue Book" providing "litigation strategies," including "practical how-to advice . . . about how to handle different scenarios and problems" and "potential responses" to certain "challenges prosecutors may encounter." 844 F.3d at 252 (internal quotations and citations omitted). The *NACDL* court then remanded for the disclosure of any "reasonably segregable" "nonexempt statements of policy" in the Blue Book. *Id.* at 257.

These decisions recognize that broad agency policies are not litigation strategies, and thus their disclosure in response to FOIA requests does not intrude on the "privacy" of agency attorneys preparing for litigation. *Coastal States*, 617 F.2d at 864. For instance, the Justice Manual identified

---

[2] *Jordan* resulted in amendments to Exemption 7(E). *See ACLU of N. California v. FBI*, 881 F.3d 776, 780 n.3 (9th Cir. 2018) (citing S. Rep. No. 98-221, at 25 (1983)).

in *NACDL* as non-exempt policy includes public guidance to prosecutors for seeking and disclosing exculpatory evidence to criminal defendants, including the specific procedures that prosecutors must follow to obtain potential impeachment information from investigative agencies like the Federal Bureau of Investigation (FBI).[3] The *positions* of the Department of Justice (DOJ) on those issues are distinct from the *strategies* a federal prosecutor might use when litigating a disagreement with a criminal defendant about whether the DOJ must disclose a particular piece of evidence, and from the "mental impressions" and "processes" of an attorney prosecuting a case in collaboration with the FBI. *Hickman*, 329 U.S. at 510-11, 514.

*Third*, as relevant to a small subset of the Broadcasts, courts have repeatedly recognized that "communications dealing with merely administrative, logistical, or scheduling matters" are "outside the scope of the work-product doctrine . . . ." *Valley Forge Ins. Co. v. Hartford Iron &*

---

[3] This Justice Manual, previously known as the U.S. Attorney's Manual, guides how federal prosecutors should respond to certain scenarios with respect to discovery, structure charges against a potential defendant, refrain from certain prosecutorial actions, and maximize evidentiary benefits to the government. *Justice Manual*, US. Dep't Just., at 9-16.330, justice.gov/jm/justice-manual (stating that "prosecutors should not seek in plea agreements to have a defendant waive claims of ineffective assistance of counsel" and that if a waiver exists, they should decline to enforce it); *id.* at 9-5.002 (enumerating factual considerations prosecutors should consider "when considering providing discovery beyond that required by the discovery obligations or providing discovery sooner than required," such as "enhancing the likelihood of receiving reciprocal discovery by defendants" and "strategic considerations that enhance the likelihood of achieving a just result in a particular case"); *id.* at 9-5.004 (suggesting various courses of action if an "e-communication contains sensitive information," including filing "a motion for a protective order, seek[ing] supervisory approval to delay disclosure, mak[ing] appropriate redactions, summariz[ing] the substance of an e-communication in a letter . . . or tak[ing] other safeguarding measures"); *id.* at 9-27.320 ("[I]n a case in which a substantive offense was committed pursuant to an unlawful agreement, inclusion of a conspiracy count is permissible and may be desirable to ensure the introduction of all relevant evidence at trial. Similarly, it might be important to include a perjury or false statement count in an indictment charging other offenses, in order to give the jury a complete picture of the defendant's criminal conduct.").

*Metal, Inc.*, 2018 WL 739870, at \*4 (N.D. Ind. Feb. 6, 2018).[4] For example, in a FOIA case directed at the DOJ's Office of Immigration Litigation's handling of petitions for judicial review, the court rejected the government's assertion of work product privilege over documents discussing issues including "how cases are assigned internally," the "internal checklist for handling cases and issues in cases," and "internal procedures for tracking time and hours spent on cases." *Louise Trauma Center, LLC v. DOJ*, 2022 WL 278771, at \*6 (D.D.C. Jan. 30, 2022). While those topics were "literally in anticipation of litigation," they did "not anticipate litigation in the manner that the privilege requires" because they pertained to "purely administrative issues." *Id*. (internal citations omitted).

### 2. ICE has not segregated policy statements and other non-privileged material and thus has not justified its work product redactions.

ICE has not demonstrated that the redacted portions of its Broadcasts are the protected mental impressions of attorneys engaged in weighing facts and evidence, evaluating a case, strategizing, and preparing legal theories. Instead, it has painted with a broad brush, redacting everything or nearly everything that is not "factual information and case summaries," ECF No. 22-1 at ¶ 17, and relying on conclusory assertions that the redacted material is privileged.

As ICE acknowledges, it had a duty to segregate and produce any portions of the Broadcasts that were not exempt from disclosure. *See* 5 U.S.C. § 552(b); ECF No. 21 at 11. ICE contends that it has fulfilled that duty, conducted a "line-by-line review," and released all "non-

---

[4] *See also Keaton v. Hannum*, 2013 WL 1818993, at \*7 (S.D. Ind. Apr. 29, 2013) (records pertaining to scheduling are not work product); *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 593 n.180 (S.D. Fla. 2013) (same); *Pic Grp., Inc. v. LandCoast Insulation, Inc.*, 2010 WL 1741703, at \*2 (S.D. Miss. Apr. 28, 2010) ("[C]ommunications that relate merely to logistical matters, such as scheduling meetings or conference calls . . . do not constitute work product."); *Zummer v. Sallet*, 2021 WL 6496828, at \*7 (E.D. La. Feb. 24, 2021) (same).

exempt portions" of documents. ECF No. 22-1 at ¶¶ 32-33.[5] But ICE discharged that duty based on an overbroad definition of attorney work product. Its Rule 56.1 statement indicates that it views its Broadcasts as attorney work product simply because they are communications to and from attorneys "in contemplation of ongoing immigration litigation," without regard to their content. *See* ECF No. 22 at ¶¶ 13-14. And while ICE repeatedly describes segregating "factual information and case summaries," ECF No. 21 at 11; ECF No. 22 ¶¶ 16, 48; ECF ¶ No. 22-1 at ¶¶ 17, 33, it never claims to have segregated and produced any other material.

True, ICE does state that the redacted material "contains" things that sound in work product: "practice pointers, legal strategies, legal analysis, legal arguments, and guidance on conducting . . . litigation." ECF ¶ No. 22-1 at ¶ 17.[6] The *Vaughn* index further repeats that each document "contains" the "thoughts, opinions, and impressions of agency counsel, including guidance from senior attorneys to line attorneys regarding litigation strategy in immigration court; and thoughts and guidance on how agency attorneys can overcome recent challenges resulting from" a particular legal development. ECF No. 22-2 at 1-16.

Yet none of these statements provide sufficient information permitting this Court to conclude that the withheld information is protected work product rather than "the agency's effective law and policy," *Sears*, 421 U.S. at 153, or other nonprivileged material. That is because

---

[5] ICE does not contend that any factual information in the Broadcasts—*e.g.*, information about broad developments impacting numbers of cases—is work product or not segregable. *See* ECF No. 22-1 at ¶¶ 17, 33.

[6] The declaration of ICE FOIA director Fernando Pineiro even states that "[t]he withheld information was prepared for the purpose of advancing DHS's position in active and pending litigation." ECF No. 22-1 at ¶ 17. But this assertion is mere boilerplate. The declarant does not claim any personal knowledge regarding the creation of any of the documents or any basis to distinguish whether their purpose was primarily to disseminate information about a new development, share DHS policy, provide legal strategies to advance DHS's position in court, or other.

ICE failed to meaningfully describe "*each* document or portion thereof withheld," and to provide "a relatively detailed justification specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *King v. DOJ*, 830 F.2d 210, 224 (D.C. Cir. 1987) (internal quotations and citations omitted). Instead, ICE's affidavit and *Vaughn* index provide only "sweeping" and "conclusory" statements that do little more than "recit[e] [legal] standards" and that "cannot support summary judgment." *Id.* at 219 (internal quotations and citations omitted); *see also Maine*, 298 F.3d at 69; *Louise Trauma Ctr.*, 2022 WL 278771, at *5 (agency must *show* that disclosure would "risk revealing . . . litigation strategies and legal theories"; "broad assertions" are insufficient to meet this burden).

What is more, the record contains indications that many of the redactions do, in fact, contain nonprivileged statements of agency law or policy. For starters, one of the Broadcasts was previously disclosed to another FOIA requester nearly in full, without any significant redaction. *See* Ex. 1 to Swaminathan Decl. (demonstrative exhibit comparing prior release of information to present redactions of the same information); ECF No. 22-3 at 131. That previously released record over which ICE now asserts work product privilege elaborates on OPLA's "policy" of being "reasonable" when a noncitizen in removal proceedings requests documents in their file. *Id.*

Other documents appear to contain statements directing OPLA attorneys to make particular redactions when providing a noncitizen with a "Form I-213," ECF No. 22-3 at 65-67, providing instructions for the handling of prosecutorial discretion requests, ECF No. 22-3 at 140-48, and potentially setting new direction for the handling of asylum claims in domestic violence cases after a prior administration's restrictions on asylum in this area, *see id.* at 23-25. These are the sorts of agency positions that courts have determined to be disclosable policy statements in the criminal

context. *See NACDL*, 844 F.3d at 252 (Justice Manual is not work product); *supra* note 4 (identifying comparable policy from the Justice Manual).

At least some documents also appear to contain administrative instructions that are unprotected by Exemption 5. For example, one document focusing on a fast-tracked set of cases known as the "dedicated docket" ("DD") contains redactions of text under headers that include, "Identifying Cases for upcoming DD Hearings - Requesting Files/Processing Files Post Hearing," and "ERO Filing of NTAs and Processing of A-Files." ECF No. 22-3 at 132-34, 135-39. Because ICE has not shown that the Broadcasts are attorney work product rather than other nonprivileged communications to OPLA attorneys, its Exemption 5 claim must fail.

**B.  ICE has failed to show that disclosure would harm the integrity of the trial process.**

Even if the redacted portions of the Broadcasts were attorney work product—though they are not—ICE must still show that their disclosure would cause foreseeable harm to an interest protected by the work product privilege, *i.e.*, the integrity of the trial process. Because ICE has not demonstrated that producing the Broadcasts will harm that interest, disclosure is required.

The foreseeable harm requirement was added to FOIA in 2016 as part of the FOIA Improvement Act and makes it mandatory for an agency to disclose records unless it "reasonably foresees that disclosure would harm" an interest protected by an exemption. The amendment "was intended to restrict agencies' discretion in withholding documents under FOIA," *Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019), and requires an inquiry that is independent from a claimed exemption, *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021). An agency must "articulate, in a focused and concrete way, the harm that would result from disclosure, including the basis and likelihood of that harm." *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 110 (D.D.C. 2021) (internal

quotations omitted). "Agencies cannot rely on mere speculative or abstract fears, or fear of embarrassment to withhold information. Nor may the government meet its burden with generalized assertions . . . ." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th at 369 (internal citations omitted). "[W]hat is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue" harm the agency. *Id*. at 370. If an agency provides "nearly identical boilerplate statements and generic and nebulous articulations of harm," its burden is unmet. *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (internal quotations omitted).

Here, ICE has not met its burden to demonstrate that the integrity of the adversary process—the interest protected by the attorney work product privilege, *U.S. v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 30-31 (1st Cir. 2009) (en banc)—would be harmed by disclosure of the Broadcasts. ICE's memorandum makes no reference to harm at all. And the assertions of harm in ICE's supporting materials are conclusory statements. ICE broadly asserts, as to all of the records, that lifting the Exemption 5 redactions would "inhibit the candid discussion of issues between employees, which would hinder the ability of the OPLA attorneys to be fully informed about legal issues arising before the immigration courts, as well as inhibit their ability to assess any future litigation risks." ECF No. 22 ¶ 44; *see id.* ¶ 43 (claiming a "chilling effect" on agency attorneys).

But such blanket assertions that government speech would be chilled, without a precise connection to the specific disclosure at issue, are not enough. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th at 371. For example, in *American Immigration Council v. CBP*, a court found insufficient the agency's assertion that disclosure of documents regarding an asylum screening pilot program "would have a chilling effect on [its] ability to fully consider and evaluate in writing the efficacy and development of its programs by revealing how the CBP employees prioritized

different facts, what they considered to be important, and other considerations in deliberating as to the continuation of the program." 590 F.Supp.3d 306, 334 , at *1 (D.D.C. Mar. 11, 2022). The court rejected this rationale as "close to arguing that any material covered by the deliberative process privilege also meets the foreseeable harm standard." *Id.* The claim in *this* case that disclosure would chill ICE attorneys' "discussions" is even less detailed and concrete than the one rejected by the court in *American Immigration Council*. After all, the Broadcasts at issue here are one-way communications from top-line supervisors; they contain no replies or any "discussions" at all. SUMF ¶ 56; ECF No. 1-1 (seeking guidance *to*, not discussions among, OPLA attorneys).

If anything, disclosure of the Broadcasts would *benefit* the integrity of the adversarial process. This is illustrated by the one page in which ACLUM can see "behind" ICE's present redactions because ACLUM happens to have obtained an unredacted version of the same page— specifically, a 2013 email—that ICE produced in largely unredacted form in response to a previous FOIA request. *See* Ex. 1 to Swaminathan Decl. The unredacted page reveals that, in the wake of a Ninth Circuit decision about a noncitizen that had been deprived of his immigration "A-file," *see Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010), ICE encouraged its attorneys to provide certain documents to noncitizens in immigration court, but only "if requested" by the noncitizen. *See* Ex. 1 to Swaminathan Decl.

Public release of this document benefits the adversary process in immigration court. Most noncitizens in immigration court have no lawyer, and even if represented, must litigate their removal cases with a staggering asymmetry of information. *See Nightingale v. USCIS*, 507 F. Supp. 3d 1193, 1198 (N.D. Cal. 2020).[7] The integrity of the adversarial process would be helped

---

[7] *What Does Legal Representation Look Like In Immigration Courts Across the Country?*, AM. IMMIGR. COUNCIL (Aug. 23, 2022), immigrationimpact.com/2022/08/23/legal-representation-

if noncitizens knew which documents OPLA lawyers may be willing to turn over, but ICE's current redactions to this document would prevent noncitizens and their counsel from learning that information. It is thus fortunate that ACLUM and others already have a copy of the 2013 email. But now ICE has redacted the cover email through which it re-circulated this policy to Boston OPLA attorneys in 2022, *see* ECF No. 22-3 at 129, and these redactions make it impossible to discern from the documents whether the 2013 policy is in effect. If these redactions are allowed to stand, then ICE may continue to prevent people in immigration proceedings—unlike criminal defendants who can simply view the DOJ's Justice Manual online—from knowing its policies with respect to discovery. Such a lack of transparency deeply harms, rather than helps, the integrity of the adversary process. *See Nightingale*, 507 F. Supp. 3d at 1198-99 (recognizing that noncitizens in removal proceedings who do not have access to their files are "at a distinct disadvantage").

So too for other documents in this production. The Broadcasts guide ICE prosecutors in the 2 million pending removal proceedings—including how the agency will handle requests to dismiss or administratively close a removal case, *id.* at 35-37, respond to asylum claims by survivors of domestic violence, *id.* at 23, and address the cases of noncitizens affected by the horrific policy of family separation, *id.* at 115-19. Given that this sort of information has been published by the DOJ in the context of criminal prosecutions, it is hard to imagine what harm could come from informing noncitizens and their counsel of the broad policies governing their cases, also prosecuted by the federal government, in immigration courts.

## II. The plaintiff is entitled to summary judgment as to ICE's redaction under Exemption 7(E) of a document concerning the use of Interpol Notices.

ICE has not sufficiently described the nature of the information contained within the record

---

immigration-courts-across-country (only 44% of noncitizens generally, and 14% of detained noncitizens, have legal representation in removal proceedings).

entitled "Foreign Fugitive Portfolio – INTERPOL Transition," ECF No. 22-3 at 60, or the harm

that would result from disclosure, and has failed to carry its burden to justify its redactions pursuant

to Exemption 7(E).[8] Exemption (7)(E) permits non-disclosure of "records or information compiled

for law enforcement purposes, but only to the extent that the production of such law enforcement

records or information . . . would disclose techniques and procedures for law enforcement

investigations or prosecutions or would disclose guidelines for law enforcement investigations or

prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law

. . . ." 5 U.S.C. § 552(b)(7)(E). "[T]he standard of review of a claimed 7(E) exemption, while

highly deferential, is not 'vacuous,'" and the agency must meet the statutory requirements to claim

the exemption. *Long v. ICE*, 149 F. Supp. 3d 39, 53 (D.D.C. 2015). Because the agency has not

done so, this Court should require disclosure.

*First*, ICE has not provided sufficient information to show that the record was created for

law enforcement purposes. While ICE is a law enforcement *agency*, ECF No. 21 at 6, "[n]ot every

document produced by a law enforcement agency necessarily meets [the] threshold requirement"

in Exemption 7(E), that a record be created for a law enforcement *purpose*, *CLEAR v. CBP*, 2022

WL 16636686, at *9 (E.D.N.Y. Nov. 2, 2022). "Courts have generally interpreted Exemption 7 as

applying to records that pertain to specific investigations conducted by agencies . . . in other words,

investigatory files." *Fams. for Freedom v. CBP*, 797 F. Supp. 2d 375, 397 (S.D.N.Y. 2011). The

document here is directed at attorneys and provides "information regarding the process and

procedures for using INTERPOL Notices in removal proceedings." ECF No. 21 at 10. Without

---

[8] Without conceding that Exemption 7(E) was properly invoked, ACLUM does not challenge redactions to any email inbox addresses described in entry 1 of the *Vaughn* index; the database screenshot and steps at entry 35; or the database code at entry 41. The plaintiff challenges only the Exemption 7(E) redactions to a single one-page document, ECF No. 22-3 at 60.

any specific information about how this Broadcast is investigative, there is no reason to conclude that it is anything other than a guide to attorneys relating to evidentiary questions of the sort that trial attorneys regularly confront. *See New Orleans Workers' Ctr. for Racial Just. v. ICE*, 373 F. Supp. 3d 16, 65 (D.D.C. 2019) (but a "defendant's broad assertion that all the records responsive to the plaintiffs' FOIA request were compiled for law enforcement purposes is alone plainly insufficient to satisfy its burden") (internal quotations and citations omitted).

*Second*, ICE has not shown that disclosure of this record would risk circumvention of the law. As a threshold matter, ICE must satisfy Exemption 7(E)'s "circumvention" requirement both because the statute requires it every time Exemption 7(E) is invoked,[9] and because—even if that were not the case—the document here is a "guideline," to which the circumvention requirement undoubtedly applies. Courts have interpreted the term guidelines as referring to "guidance for *future* conduct," *N.Y. Times Co. v. Secret Serv.*, 2018 WL 722420, at *7 (S.D.N.Y. Feb. 5, 2018), and held that documents that "provide instructions to investigators and prosecutors regarding how to lawfully obtain electronic location information . . . constitute 'guidelines for law enforcement investigations and prosecutions . . . .'" *ACLU of N. Cal.*, 880 F.3d at 492. Not only does the document here appear to provide instruction for the future conduct of ICE attorneys, but ICE describes the document as including "guidance from senior attorneys to line attorneys" and "thoughts and guidance on how to use and verify INTERPOL Notices in removal proceedings." ECF No. 22-2 at 8. The Broadcast is a guideline which can only be withheld if "if such disclosure

---

[9] Although the First Circuit has not resolved the question, the D.C. Circuit has correctly interpreted the requirement to show a risk of circumvention of the law to apply to *all* information defined by Exemption 7(E), regardless of whether that information is a technique, procedure, or guideline. *Sack v. DOD*, 823 F.3d 687, 694 (D.C. Cir. 2016) (Kavanaugh, J.). ICE appears to concede the correctness of the D.C. Circuit's position in its *Vaughn* index. *See* ECF No. 22-2 at 8; *cf.* ECF No. 21 at 8 n.1. This reading aligns with the principle that to fulfill the purposes of FOIA, its exemptions must be narrowly construed. *See Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011).

could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Here, ICE has not demonstrated that disclosure would risk circumvention of the law. ICE asserts generally that "[d]isclosure of law enforcement sensitive techniques and procedures regarding the use of INTERPOL Notices in removal proceedings, including how to verify the Notices, would reveal law enforcement techniques, procedures, or guidelines which could reasonably be expected to risk circumvention of the law," ECF No. 22-1 at ¶ 27, and that such disclosures would enable people "to take proactive steps to counter operational and investigative actions" by the government, ECF No. 22-2 at 8. But ICE nowhere explains these assertions or provides any more specific information that would allow a Court to meaningfully evaluate this contention. This is insufficient to shield the document.

ICE's assertions of a risk of circumvention are also undercut by public awareness about Interpol notices. "Implicit in [the risk of circumvention] analysis is that law enforcement techniques or procedures that are universally known to the public cannot be shielded from disclosure under the Act." *ACLU of Maine Found. v. DHS*, 470 F. Supp. 3d 40, 47 (D. Me. 2020) (internal quotations omitted). But ICE has published information about its partnership with Interpol for years[10] and the DOJ has set forth public guidance on the use of Notices in criminal proceedings.[11] Numerous courts have, in publicly available orders and opinions, also discussed the ramifications of Interpol Notices in bond and merits hearings in immigration court, as well as

---

[10] *See, e.g.*, ICE Newsroom, *ICE, US Marshals Arrest 45 International Fugitives With Interpol Notices* (June 24, 2016), ice.gov/news/releases/ice-us-marshals-arrest-45-international-fugitives-interpol-notices; ICE, *Project Red* (last updated on Nov. 3, 2021), ice.gov/features/project-red.

[11] *See Frequently Asked Questions*, U.S. DEP'T JUST. (last updated on Oct. 25, 2022), justice.gov/interpol-washington/frequently-asked-questions (The United States does not consider a Red Notice alone to be a sufficient basis for the arrest of a subject . . . .");*Criminal Resource Manual*, U.S. DEP'T JUST. at 611, justice.gov/archives/jm/criminal-resource-manual-611-interpol-red-notices.

raised questions of public concern about their unfair and potentially unlawful use.[12]

Third, just as ICE has not shown a risk of circumvention, it has also not articulated any reasonable foreseeable harm. ICE is incorrect in its assertion that disclosure "serves no public benefit." ECF No. 22-2 at 8. In fact, limited insight into ICE's use of Interpol Notices could help noncitizens and their counsel better address the significant fairness concerns that the use of the Notices creates, and it will not harm any legitimate law enforcement interest.

**III. ICE should be ordered to produce the 42 Broadcasts without the challenged redactions.**

ICE's failure to carry its burden to show that it properly withheld records under Exemptions 5 and 7(E) entitles the plaintiff to summary judgment. And the remedy for that failure is disclosure of the 42 Broadcasts without any of the challenged redactions.

When an agency fails to meet its burden to justify its reliance on FOIA exemptions, the court may order the disclosure of the records in full. See Coastal States, 617 F.2d at 870-71 (agreeing with district court that agency had not carried its burden and upholding remedy requiring disclosure of documents). In this case, requiring full disclosure of the 42 Broadcasts—minus the

---

[12] See Hernandez Lara v. Barr, 962 F.3d 45, 48 (1st Cir. 2020) (noting that the immigration judge below denied bond based on a Notice pertaining to the noncitizen); Hernandez-Lara v. Lyons, 2021 WL 3674032 (1st Cir. Aug. 19, 2021) (noting that "the placement of the burden of proof on [the noncitizen] decisively exploited her inability to rebut the Red Notice, even though it did not specify a single act of criminal or dangerous conduct"); Gomes v. Garland, 17 F.4th 210, 213 (1st Cir. 2021) (noting that removal proceedings were initiated subsequent to the issuance of a Notice); see also Gonzalez-Castillo v. Garland, 47 F.4th 971, 977 (9th Cir. 2022) (holding that Notices "cannot constitute substantial evidence in support of the finding that 'there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States'" under 8 U.S.C. § 1158(b)(2)(A)(iii)); Barahona v. Garland, 993 F.3d 1024, 1028 (8th Cir. 2021) (finding error for agency to rely exclusively on a Notice to establish probable cause, in light of competing evidence); El Omari v. Interpol., 35 F.4th 83, 87 n.3 (2d Cir. 2022) (acknowledging "concerns about nations abusing Interpol's notice system appear in the news with some regularity"); Radiowala v. Att'y Gen. United States, 930 F.3d 577, 580 n.1 (3d Cir. 2019) (noting that "Congress has not seen fit to prescribe that an Interpol Red Notice alone is an independent basis for removal").

redactions that the plaintiff is not challenging—is proper.

Disclosure, rather than a do-over, is appropriate because ICE has already had a full opportunity to provide a meaningful *Vaughn* index and has failed to do so. *See Maine*, 298 F.3d at 73 (trial court below "did not abuse its discretion in denying the agency 'a second chance'" before ordering immediate disclosure of records). As one court noted, the "strong medicine of immediate disclosure" rather than more "second chances" is particularly warranted for "sophisticated repeat-players in FOIA litigation." *S. All. for Clean Energy v. DOE*, 853 F. Supp. 2d 60, 79 (D.D.C. 2012); *see also Coastal States*, 617 F.2d at 861 ("[T]he burden is on [agencies] to establish their right to withhold information from the public and they must supply the courts with sufficient information to allow . . . a reasoned determination that they were correct . . . ."). And this case is an appropriate one in which to order disclosure because release of the records will not harm any government or national interest and will instead allow noncitizens, their counsel, and the public to better understand the positions and actions of ICE attorneys in immigration court.

If the Court does not require ICE to disclose all of the material withheld under the challenged redactions, it should require ICE to re-produce the 42 Broadcasts without redacting agency law and policy or administrative instructions, and without the challenged 7(E) redaction. As to any remaining redactions, ICE should be required to produce a *Vaughn* index that explains in detail—in a manner specific to each document—the basis for any claimed Exemption and the "foreseeable harm" that would result from disclosure.

## CONCLUSION

For the foregoing reasons, the plaintiff respectfully requests that this Court DENY the defendant's Motion for Summary Judgment and GRANT the plaintiff's Cross-Motion for Summary Judgment, ordering the defendant to disclose the contested records.

Dated: December 22, 2022                Respectfully submitted,

                                        /s/ Adriana Lafaille
                                        Matthew R. Segal (BBO #654489)
                                        Adriana Lafaille (BBO #680210)
                                        Medha Swaminathan (Md. 2211290214)*
                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION OF MASSACHUSETTS, INC.
                                        One Center Plaza, Suite 850
                                        Boston, MA 02108
                                        (617) 482-3170
                                        alafaille@aclum.org

                                        *appearing *pro hac vice* with leave of Court