UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC.,<br><br>                Plaintiff,<br><br>  v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>                Defendant. | Civil Action No. 1:22-cv-10407-PBS |

**LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS AND COUNTERSTATEMENT TO DEFENDANT'S 56.1 STATEMENT**

1

**Defendant's Local Rule 56.1 Statement and Plaintiff's Counterstatement**

**ACLUM'S FOIA REQUEST AND ICE'S RESPONSE**

1. Plaintiff submitted a FOIA request to ICE on January 31, 2022, seeking "[a]ny and all guidance to ICE OPLA and/or OCC attorneys that is currently in effect." Pinero Decl. ¶ 5; Dkt. 1-1.

   Plaintiff's Response: Undisputed.

2. On March 16, 2022, Plaintiff filed the Complaint in this action. Pinero Decl. ¶ 6; Dkt. 1.

   Plaintiff's Response: Undisputed.

3. On March 21, 2022, the ICE FOIA Office tasked the ICE Office of the Principal Legal Advisor ("OPLA") to conduct a search for responsive records. OPLA conducted searches of the OPLA Boston Field Office and the OPLA Field Legal Operations ("FLO") Office for responsive records. The responsive records found were then sent to the ICE FOIA Office for processing on April 25, 2022. Pinero Decl. ¶ 7.

   Plaintiff's Response: Undisputed.

4. On May 23, 2022, ICE made a production of responsive records to Plaintiff, consisting of 613 pages subject to various FOIA Exemptions, including FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). *Id.* ¶ 8

   Plaintiff's Response: Undisputed.

5. On June 17, 2022, ICE made a second production of responsive records to Plaintiff, consisting of 141 pages subject to various FOIA Exemptions, including FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). *Id.* ¶ 9.

   Plaintiff's Response: Undisputed.

6. On November 16, 2022, upon litigation review, ICE made a supplemental rerelease of three pages of responsive records, lifting some FOIA Exemption (b)(5) withholdings on each of the three pages. *Id.* ¶ 10.

   Plaintiff's Response: Undisputed.

**DESCRIPTION OF THE RECORDS AT ISSUE**

7. Plaintiff has agreed to challenge only the redactions pursuant to Exemptions (b)(5) and (b)(7)(E) in 43 documents. *Id.* ¶ 12, Pineiro Decl. Ex. 2

   Plaintiff's Response: Undisputed, but the plaintiff notes there are only 42 documents, and the

   plaintiff is only challenging the Exemption 7(E) redactions in one document.

2

8. All 43 documents at issue in this case were subject to partial withholding. *Id.* ¶ 14.

   Plaintiff's Response: Undisputed that each of the 42 (not 43) disputed documents was at least partially withheld.

9. The withheld portions of the emails and documents are intra-agency communications between and among ICE attorneys. *Id.*

   Plaintiff's Response: Undisputed, with a clarification that the emails and documents are one-way communications from headquarters or high-level attorneys to OPLA trial attorneys.

10. At the time of the emails and documents, including up to the present day, ICE attorneys represent DHS in removal proceedings before the Executive Office for Immigration Review ("EOIR") across the country and are actively litigating on behalf of the government in immigration courts nationwide. *Id.*

    Plaintiff's Response: Undisputed.

11. A complete description of the 43 documents identified by Plaintiff, and the bases for the withholding of information in said documents, are detailed in ICE's *Vaughn* Index. *Id.* ¶ 15.

    Plaintiff's Response: Undisputed that ICE's *Vaughn* index contains an entry for each of the 42 (not 43) disputed documents. The plaintiff does not characterize the descriptions of the documents or of the basis for withholdings as "complete" or "detailed."

**APPLICABLE FREEDOM OF INFORMATION ACT WITHHOLDINGS**

**FOIA Exemption (b)(5)**

12. Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context. The information that ICE has withheld under FOIA Exemption (b)(5) is protected by the attorney work-product privilege. *Id.* ¶ 16.

    Plaintiff's Response: The plaintiff disputes the legal argument that the documents are privileged.

13. All of the (b)(5) withholdings at issue are redactions of information exchanged between and among ICE attorneys, in contemplation of ongoing immigration litigation before the immigration courts. *Id.* ¶ 17.

    Plaintiff's Response: Disputed as to the legal argument that the communications are "in contemplation of ongoing immigration litigation" within the meaning of the attorney work product

exception. *See American Immigration Council v. DHS*, 905 F. Supp. 2d 206, 222 (D.D.C. 2012). The plaintiff does not dispute that the senders and primary recipients of the one-way messages are attorneys.

14. All of the information withheld under Exemption (b)(5) is thus protected from disclosure under the attorney work-product doctrine. *Id.*

    Plaintiff's Response: The plaintiff disputes the legal argument that the documents are privileged.

15. The withheld information was prepared for the purpose of advancing DHS's position in active and pending litigation before the immigration courts and contains practice pointers, legal strategies, legal analysis, legal arguments, and guidance on conducting that litigation. *Id.*

    Plaintiff's Response: Disputed to the extent that the defendant is making a legal argument that the information is best characterized as "practice pointers, legal strategies, legal analysis, legal arguments, and guidance" as opposed to statements of agency policy, *see American Immigration Council v. DHS*, 905 F. Supp. 2d 206, 222 (D.D.C. 2012), but the plaintiff acknowledges many of the documents instruct OPLA attorneys to "consider the following practice pointers."

16. Factual information and case summaries have not been withheld. *Id.*

    Plaintiff's Response: Undisputed that this is ICE's position. The plaintiff notes that certain Broadcasts withhold information within the section of the record devoted to a summary of case summaries or factual information. *See, e.g.*, ECF 22-3 at 15 (two paragraphs redacted in case summary); *id.* at 17 (one paragraph redacted in case summary); *id.* at 19 (same); *id.* at 23-25 (no differentiation between case summary and practice pointers – fully redacted); *id.* at 29 (one paragraph redacted in case summary); *id.* at 32 (one paragraph and one sentence redacted in case summary); *id.* at 48 (no distinction in redaction between case summary and practice pointers); *id.* at 61-64 (same); *id.* at 84 (two paragraphs redacted in case summary); *id.* at 84-94 (no distinction in redaction between case summary and practice pointers); *id.* at 96-102 (several pages redacted prior to practice pointers); *id.* at 112 (one paragraph redacted in case summary).

**FOIA Exemption (b)(7) Threshold**

17. The FOIA, 5 U.S.C. § 552(b)(7), establishes a threshold requirement that to withhold information on the basis of Exemption (b)(7), the records or information must be compiled for law enforcement purposes. The information for which FOIA Exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement. *Id.* ¶ 18.

    Plaintiff's Response: The plaintiff disputes the legal argument that the documents satisfy this

    Exemption 7 requirement.

18. Pursuant to the Immigration and Nationality Act codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of non-citizens, subject to certain exceptions. *See* 8 U.S.C. § 1103. *Id.*

    Plaintiff's Response: Undisputed, but the Attorney General shares in aspects of this role.

19. ICE is the largest investigative arm of DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries. ICE is responsible for enforcing the nation's immigration laws and identifying and eliminating vulnerabilities within the nation's borders. *Id.*

    Plaintiff's Response: Undisputed.

20. The Office of the Principal Legal Advisor ("OPLA") is the largest legal program in DHS, with over 1,250 attorneys and 290 support personnel. *Id.* ¶ 19.

    Plaintiff's Response: Undisputed.

21. By statute, OPLA serves as the exclusive representative of DHS in immigration removal proceedings before EOIR, litigating all removal cases including those against criminal non-citizens, terrorists, and human rights abusers. *Id.*

    Plaintiff's Response: Undisputed, except that the plaintiff is unaware of any statute setting out

    OPLA's role specifically.

22. OPLA also provides a full range of legal services to ICE programs and offices. OPLA provides legal advice and prudential counsel to ICE personnel on their customs, criminal, and immigration law enforcement authorities, the Freedom of Information Act and Privacy Act, ethics, liability under the Federal Tort Claims Act, and a range of administrative law issues, such as contract, fiscal, and employment law. OPLA attorneys provide essential support to the Department of Justice in the prosecution of ICE cases and in the defense of ICE's authorities in federal court. *Id.*

Plaintiff's Response: Undisputed.

23. In addition to its headquarters in Washington, D.C., OPLA has 25 field locations with a presence in more than 60 offices throughout the United States. *Id.*

Plaintiff's Response: Undisputed.

24. The ICE information at issue in this case was compiled by ICE to assist in the conduct of removal proceedings before EOIR and relates to ICE's obligation to enforce the immigration laws of the United States by investigating, detaining, and pursing removal proceedings against non-U.S. individuals who may be illegally present in the United States. *Id.* ¶ 20.

Plaintiff's Response: Disputed that all the "information at issue" "relates to ICE's obligation to enforce the immigration laws," except in the general sense that removal cases may arise out of ICE enforcement and are prosecuted by ICE, and because there is no evidence that this statement is supported by a witness with personal knowledge. *See* Fed. R. Evid. 602; Fed. R. Evid. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.")

25. Therefore, all of the ICE information responsive to Plaintiffs' FOIA request withheld under Exemption (b)(7)(E) pertains to the detention and removal of individuals who may be illegally present in the United States, was compiled for law enforcement purposes, and meets the threshold requirement of FOIA Exemption (b)(7). *Id.*

Plaintiff's Response: The plaintiff disputes the legal argument that the documents are privileged.

**FOIA Exemption (b)(7)(E)**

26. FOIA Exemption (b)(7)(E), 5 U.S.C. §552(b)(7)(E), protects from disclosure records complied for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. *Id.* ¶ 21.

Plaintiff's Response: Undisputed to the extent ICE intends to re-articulate what the statute states.

27. Accordingly, ICE applied FOIA Exemption (b)(7)(E) to protect from disclosure information related to internal agency group email addresses, Interpol Notices, and screenshots, instructions, and a database code related to the ICE OPLA internal database, PLAnet. Disclosure of this information could reveal law enforcement techniques, procedures, and/or guidelines which could reasonably be expected to risk circumvention of the law. *Id.* ¶ 22.

Plaintiff's Response: The plaintiff disputes the legal argument that the documents satisfy this requirement of Exemption 7(E).

28. ICE officers, Special Agents, and OPLA attorneys use the internal group email inboxes to conduct their official job duties. These email inboxes contain and facilitate communications amongst ICE employees and are used advance the ICE mission, which is to protect the United States from the cross-border crime and illegal immigration that threatens national security and public safety. *Id.* ¶ 23.

   Plaintiff's Response: Disputed that this is a material fact. The plaintiff is not seeking to challenge the ICE's Exemption 7(E) redactions to internal group email inbox addresses.

29. The PLAnet database is a case management system used primarily by OPLA attorneys to manage their immigration cases. The ICE Office of Enforcement and Removal Operations ("ERO") is responsible for identifying non-citizens illegally present in the United States, apprehending them and managing them while they are in custody, and removing them from the United States. ERO Officers also use PLAnet to stay abreast of changes in custody decisions for a particular non-citizen and to help with the execution of final removal orders. The basic function of the system is to provide attorneys and ERO Officers with comprehensive information on cases being litigated under the Immigration and Nationality Act in immigration court and federal court. *Id.* ¶ 24.

   Plaintiff's Response: Disputed that this is a material fact. The plaintiff is not seeking to challenge the ICE's Exemption 7(E) redactions to PLAnet information.

30. The disclosure of internal group email inbox addresses and PLAnet information could aid unauthorized parties in gaining improper access to law enforcement databases and systems and assist in the unauthorized party's navigation of those law enforcement databases and systems. *Id.* ¶ 25.

   Plaintiff's Response: Disputed that this is a material fact. The plaintiff is not seeking to challenge the ICE's Exemption 7(E) redactions to internal group email inbox addresses or PLAnet information.

31. Knowing the database structure, how to navigate the system, or internal paths and codes could reveal sensitive information that would allow a hacker to access or manipulate the agency's database or systems. *Id.*

   Plaintiff's Response: Disputed, both because this is not a material fact, as the plaintiff is not seeking to challenge the ICE's Exemption 7(E) redactions to PLAnet information, and because there is no evidence that this statement is supported by a witness with personal knowledge, or by

expert opinion. *See* Fed. R. Evid. 602; Fed. R. Evid. 701; Fed. R. Evid. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

32. Release of the internal email inboxes would increase the chance that a bad actor could harm the agency by attempting to hack ICE systems, such as through the use of phishing scams, or by attacking ICE systems, such as through a brute force attack. *Id.*

    Plaintiff's Response: Disputed, both because this is not a material fact, as the plaintiff is not seeking to challenge the ICE's Exemption 7(E) redactions to internal group email inbox addresses, and because there is no evidence that this statement is supported by a witness with personal knowledge, or by expert opinion. *See* Fed. R. Evid. 602; Fed. R. Evid. 701; Fed. R. Evid. 56(c)(2).

33. Disclosure of these techniques and practices could permit those seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. *Id.*

    Plaintiff's Response: Disputed, both because this is not a material fact, as the plaintiff is not seeking to challenge the ICE's Exemption 7(E) redactions to internal group email inbox addresses, and because there is no evidence that this statement is supported by a witness with personal knowledge, or by expert opinion. *See* Fed. R. Evid. 602; Fed. R. Evid. 701; Fed. R. Evid. 56(c)(2).

34. Further, how law enforcement officers or OPLA attorneys access and navigate databases, as well as the internal group email addresses, are law enforcement techniques and procedures that are not commonly known. *Id.* ¶ 26.

    Plaintiff's Response: Disputed, because this is not a material fact, as the plaintiff is not seeking to challenge the ICE's Exemption 7(E) redactions to internal group email inbox addresses, as to the legal argument regarding "techniques and procedures," and because there is no evidence that this statement is supported by a witness with personal knowledge, or by expert opinion. *See* Fed. R. Evid. 602; Fed. R. Evid. 701; Fed. R. Evid. 56(c)(2).

35. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. *Id.*

Plaintiff's Response: Disputed, both because this is not a material fact, as the plaintiff is not seeking to challenge the ICE's Exemption 7(E) redactions to PLAnet information, and because there is no evidence that this statement is supported by a witness with personal knowledge. *See* Fed. R. Evid. 602; Fed. R. Evid. 56(c)(2).

36. The release of law enforcement sensitive information regarding INTERPOL Notices and the law enforcement processes and procedures related to use of those Notices in removal proceedings before EOIR could reasonably be expected to risk circumvention of the law. *Id.* ¶ 27.

    Plaintiff's Response: The plaintiff disputes the legal argument that the documents satisfy this requirement of Exemption 7(E).

37. INTERPOL Notices are international alerts circulated by Interpol to communicate information from police in a member state to their counterparts around the world about crimes, criminals, and threats. *Id.*

    Plaintiff's Response: Undisputed.

38. Disclosure of law enforcement sensitive techniques and procedures regarding the use of INTERPOL Notices in removal proceedings, including how to verify the Notices, would reveal law enforcement techniques, procedures, or guidelines which could reasonably be expected to risk circumvention of the law. *Id.*

    Plaintiff's Response: The plaintiff disputes the legal argument that the documents satisfy this requirement of Exemption 7(E).

39. Thus, disclosure of these techniques could allow subjects of the INTERPOL Notices to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. *Id.*

    Plaintiff's Response: Disputed because there is no evidence that this statement is supported by a witness with personal knowledge, or by expert opinion. *See* Fed. R. Evid. 602; Fed. R. Evid. 701; Fed. R. Evid. 56(c)(2).

40. This information is not widely known. Disclosure serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. *Id.*

    Plaintiff's Response: Disputed because the plaintiff has presented contrary argument regarding public knowledge and benefit, *see* Pl's Cross Mot. Summ. J. at 19-20, and because there is no

evidence that this statement is supported by a witness with personal knowledge. *See* Fed. R. Evid. 602; Fed. R. Evid. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

**FOIA IMPROVEMENT ACT**

41. The FOIA Improvement Act of 2016 codified the Department of Justice's foreseeable harm standard, which ICE has been following for years. ICE FOIA only withholds information when the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. *Id.* ¶ 28.

    Plaintiff's Response: Disputed as to ICE's compliance with the law.

42. In this case, with respect to Exemption (b)(5), the agency reasonably foresees that disclosure would harm the attorney work-product privilege, which protects the adversarial trial process by insulating the attorney's preparation from scrutiny. *Id.* ¶ 29.

    Plaintiff's Response: The plaintiff disputes the legal argument regarding foreseeable harm.

43. The identifiable and foreseeable harm in disclosing this information would be its chilling effect on the ability of agency attorneys to effectively communicate with each other regarding how to prepare to represent the agency in litigation. *Id.*

    Plaintiff's Response: Disputed, both because there is no evidence that this statement is supported by a witness with personal knowledge, or by expert opinion. *See* Fed. R. Evid. 602; Fed. R. Evid. 701; Fed. R. Evid. 56(c)(2).

44. Further, disclosure of these records also would inhibit the candid discussion of issues between employees, which would hinder the ability of the OPLA attorneys to be fully informed about legal issues arising before the immigration courts, as well as inhibit their ability to assess any future litigation risks. *Id.*

    Plaintiff's Response: Disputed because there is no evidence that this statement is supported by a witness with personal knowledge, or by expert opinion. *See* Fed. R. Evid. 602; Fed. R. Evid. 701; Fed. R. Evid. 56(c)(2).

45. In this case, with respect to Exemption (b)(7)(E), the agency reasonably foresees that disclosure would: 1) cause harm by disclosing law enforcement sensitive database screenshots, codes, instructions, and internal group email inboxes that would allow bad actors to access or manipulate ICE systems; (2) cause harm by disclosing law enforcement sensitive techniques and procedures

regarding the use of INTERPOL Notices in removal proceedings, including how to verify the Notices. *Id.* ¶ 30.

Plaintiff's Response: The plaintiff disputes this legal argument regarding foreseeable harm.

**SEGREGABILITY**

46. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." *Id.* ¶ 31.

    Plaintiff's Response: Undisputed.

47. ICE conducted a line-by-line review to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied. *Id.* ¶ 32.

    Plaintiff's Response: Undisputed.

48. With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and nonexempt portions were released. *Id.* ¶ 33.

    Plaintiff's Response: The plaintiff disputes this legal argument regarding segregation.

49. ICE did not withhold any non-exempt information on the grounds that it was non-segregable. *Id.*

    Plaintiff's Response: Undisputed that is ICE's position. *But see, e.g., supra* ¶ 16 (identifying potential factual information subject to disclosure that may not have been properly segregated and released).

**Plaintiff's Local Rule 56.1 Statement of Undisputed Facts in Support of its Cross-Motion for Summary Judgment**

**THE ROLE OF OPLA**

50. Immigration and Customs Enforcement (ICE) prosecutes over two million immigration removal cases and detains over 20,000 people in the United States. *See Immigration Detention Quick Facts*, TRAC (last updated on Dec. 4, 2022), https://trac.syr.edu/immigration/quickfacts/detention.html; *Immigration Court Quick Facts*, TRAC (last updated in Nov. 2022), https://trac.syr.edu/immigration/quickfacts/eoir.html.

51. OPLA leadership provides guidance to OPLA attorneys about various legal and other developments, and about the handling of various aspects of immigration removal proceedings through messages known as "Broadcast Messages" and through other written communications that are transmitted to all OPLA attorneys. *See* ECF No. 22-3.

52. One of OPLA's functions is to set policies that govern how its attorneys handle certain aspects of their duties with regard to immigration removal proceedings. *See, e.g.*, Memorandum from Kerry E. Doyle, Principal Legal Advisor, to OPLA Attorneys (Apr. 3, 2022), ice.gov/doclib/about/offices/opla/OPLA-immigration-enforcement_guidanceApr2022.pdf ("Guidance to OPLA Attorneys Regarding the Enforcement of Civil Immigration Laws and the Exercise of Prosecutorial Discretion").

53. OPLA leadership sometimes communicates agency policy to OPLA attorneys through "Broadcast Messages" or through other written communications that are transmitted to all OPLA attorneys. *See, e.g.*, *id*; ECF No. 22-3.

54. OPLA's policies regarding certain aspects of removal proceedings sometimes change from one presidential administration to the next. *See ICE Issues Enforcement Guidance to OPLA Attorneys Implementing EO 13768*, IMMIGRATION POLICY TRACKING PROJECT (last accessed on Nov. 23, 2022), immpolicytracking.org/policies/ice-issues-enforcement-guidance-implementing-eo-13768/ (tracking changes in policy implementing an executive order).

55. OPLA leadership also sometimes uses Broadcast Messages or other written communications to communicates instructions that are administrative in nature, including relating to the processing of files and the maintenance of information in one or more databases. *See* ECF No. 22-3 at 132-34, 135-39.

**THE PRODUCTION IN *ACLUM V. ICE***

56. After Plaintiff American Civil Liberties Union Foundation of Massachusetts (ACLUM) submitted its FOIA request seeking "[a]ny and all guidance to ICE OPLA and/or OCC [Office of Chief Counsel] attorneys that is currently in effect," ECF No. 1-1 at 2, ICE did not respond within the statutory deadline, *see* 5 U.S.C. § 552(a)(6)(A), and ACLUM filed suit, ECF No. 1 at ¶¶ 1, 14.

57. The cover letters accompanying ICE's May 23 and June 17, 2022 productions, as well as its November 16, 2022 re-production, did not address whether disclosure of the redacted materials

would foreseeably harm an interest protected by the asserted FOIA exemptions. Exhibit 1 to Declaration of Medha Swaminathan.

58. The documents now contested in this litigation are 42 documents sent by OPLA leadership to OPLA trial attorneys across the country, or, in some cases, to OPLA attorneys in Boston. ECF No. 22-3. Some are what ICE calls "Broadcast Messages," while others are communications that are disseminated to OPLA attorneys. *Id.* All of the records are from OPLA headquarters or from supervisors or leadership at OPLA Boston. *Id.* For ease of reference, the plaintiff refers to all 42 documents as Broadcasts.

59. None of the 42 contested documents pertains to the case of any specific individual in removal proceedings. Instead, all of the documents are of general applicability to all removal proceedings, or to particular categories of removal proceedings. *Id.*; ECF No. 22-2.

60. One or more of the 42 contested documents communicates OPLA policy regarding the handling of a particular aspect of removal proceedings. *See, e.g.*, *id.* at 1 ("The information withheld contained the thoughts, opinions, and impressions of agency counsel, including guidance from senior attorneys to line attorneys regarding the impacts of exercising prosecutorial discretion in certain immigration removal proceedings[.]"); *id.* at 8 ("The information withheld contained the thoughts, opinions, and impressions of agency counsel, including guidance from senior attorneys to line attorneys regarding litigation strategy in immigration court; and thoughts and guidance on how to use and verify INTERPOL Notices in removal proceedings."); *id.* at 15 (identifying record entitled "Responding to Requests for Documents from Respondents in Removal Proceedings").

61. One or more of the 42 contested documents communicates instructions that are administrative in nature, including instructions about case processing, the processing of files, and the maintenance of information in ICE databases. *See, e.g.*, ECF No. 22-3 at 132-34, 135-39.

62. One document in the production is a January 25, 2022 email to OPLA attorneys in Boston. ECF No. 22-3 at 129. The 2022 email attaches a three paragraph email entitled "Responding to Requests for Documents from Respondents in Removal Proceedings" and dated January 8, 2013. *Id.* at 131. In the present production, ICE redacted most of the second paragraph and all of the third paragraph of the 2013 email as attorney work product. *Id.* But ICE previously released the same 2013 email in response to a FOIA request by Betty Ginsbert of the Immigration Justice Clinic at Benjamin N. Cardozo School of Law. *See* Swaminathan Decl. On that occasion, ICE disclosed the second and third paragraphs of the 2013 email in full. *See* Ex. 2 to Swaminathan Decl.

63. The paragraph and a half of text over which ICE now asserts work product privilege describes OPLA's policy regarding how to handle requests by noncitizens in removal proceedings for documents from their file, and how to respond to requests for a full immigration "A-file." *See id.*

64. That paragraph and a half of text elaborates on OPLA's "policy" of being "reasonable" when a noncitizen in removal proceedings requests documents in their file. *See id.*

Respectfully submitted,

*/s/ Adriana Lafaille*
Matthew R. Segal (BBO #654489)
Adriana Lafaille (BBO #680210)
Medha Swaminathan (Md. 2211290214)*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
alafaille@aclum.org

*appearing *pro hac vice* with leave of Court