UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC., <br><br> Plaintiff, <br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendant. | Civil Action No. 1:22-cv-10407-PBS |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, United States Immigration and Customs Enforcement ("ICE" or "Defendant"), by its attorney, Rachael S. Rollins, United States Attorney for the District of Massachusetts, respectfully submits this opposition to Plaintiff American Civil Liberties Union of Massachusetts, Inc.'s ("ACLUM") Cross-Motion for Summary Judgment and reply in support of Defendant's Motion for Summary Judgment.

In response to the ACLUM's FOIA request seeking any and all guidance to ICE Office of the Principal Legal Advisor ("OPLA") and/or the Office of Chief Counsel ("OCC") attorneys that is currently in effect, ICE withheld portions of internal guidance issued by OPLA to ICE attorneys in contemplation of and for the purpose of advancing litigation before the immigration courts under Exemption 5 and the attorney work-product privilege. This information falls into the core of the work-product doctrine, and the ACLUM's arguments to the contrary are unavailing. There is no exception to the work-product privilege for "positions that attorneys should take on behalf of an agency" as the ACLUM contends, Pl.'s Opp'n and Cross Mot. for Summ. J., Dkt. 32 at 5, nor are

the documents at issue purely administrative in nature. No further segregability analysis is required, and ICE has adequately justified the harm that would come with release of the exempt information. Additionally, ICE properly withheld portions of a document regarding INTERPOL Notices pursuant to Exemption 7(E). As set forth below, and in Defendant's Motion for Summary Judgment, ICE has met its burden to justify its redactions and is entitled to summary judgment in its favor.

A.  **ICE's Redactions Pursuant to Exemption 5 Were Proper**

   1. **ICE Met Its Burden to Show the Documents Withheld Under Exemption 5 Are Attorney Work-Product**

ICE has met its burden to show the information redacted under Exemption 5 is protected by the attorney work-product privilege. *See State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 66 (1st Cir. 2002). As set forth in ICE's Motion for Summary Judgment, the withheld information consists of portions of "Broadcast Announcements," "Broadcast Messages," "Practice Pointers," "Standard Operating Procedures," and other emails, which convey confidential practice pointers, legal strategies, legal arguments, and legal analysis on various issues arising during litigation before the immigration courts, as well as guidance on how to conduct that litigation. SUMF, Dkt. 22 at ¶ 15, Pineiro Decl., Dkt. 22-1 ¶ 17; *see also* Suppl. Pineiro Decl. ¶ 4. The documents at issue were sent by OPLA attorneys to other OPLA attorneys,[1] Dkt. 22 ¶¶ 9, 13, and were prepared to assist ICE attorneys in prevailing in litigation conducted before the immigration courts, *id.* ¶ 15. *See State of Maine*, 298 F. 3d at 68 ("documents should be deemed prepared for litigation and

---

[1] The ACLUM incorrectly asserts that "all of the documents at issue were sent from OPLA headquarters or from supervisors or leadership at OPLA Boston." Dkt. 32 at 2 n.1. As set forth in the *Vaughn* index, Entry 38 is an e-mail sent from an OPLA Boston Assistant Chief Counsel (not a supervisor) to all OPLA Boston attorneys. *Vaughn* Index, Dkt. 22-2 at 14.

within the scope of the Rule if, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation.").

This information falls within the core of the attorney work-product doctrine, and ICE is entitled to summary judgment in its favor. *See U.S. v. Deloitte, LLP*, 610 F.3d 129, 135 (D.C. Cir. 2010) (a court "must still protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation. This type of work product, which is often described as opinion work product, is virtually undiscoverable.") (internal quotations and citations omitted); *see also Soghoian v. DOJ*, 885 F. Supp. 2d 62, 73 (D.D.C. 2012) ("The Court finds that these documents are covered by the attorney work product privilege because they present the legal strategies of the DOJ attorneys who will be required to litigate on behalf of the government.").

ICE has adequately justified its assertion of Exemption 5 in its *Vaughn* index and the Declarations of Fernando Pineiro. *See* Dkt. 22-1; 22-2; *see also* Suppl. Pineiro Decl. The *Vaughn* index describes each document, including its title, sender and recipients, as well as the subject-matter contained therein. Dkt. 22-2. The *Vaughn* index also describes the nature of the withheld information, its relevance to litigation, and the foreseeable harm from its release. *Id*. The descriptions are not "sweeping" or "conclusory," as the ACLUM contends. Dkt. 32 at 11. Rather they accurately point out that the withheld information contains the thoughts, opinions, and impressions of agency counsel, including guidance to line attorneys on how to conduct litigation in immigration court and the subject matter of that guidance. Dkt. 22-2. The descriptions of the documents are similar because they largely consist of the same types of documents: all responsive to the ACLUM's specific request for guidance to attorneys litigating in immigration court that is

currently in effect. FOIA Request, Dkt. 1-1. Moreover, in the majority of the documents themselves, much is left unredacted, so the ACLUM is able to gain additional insight into the subject and nature of the document. Dkt. 22-3, *see also* Dkt. 33 ¶ 15 ("the plaintiff acknowledges many of the documents instruct OPLA attorneys to 'consider the following practice pointers.'"). The information in the *Vaughn* index and Pineiro Declarations demonstrates that each document logically falls under Exemption 5 and is sufficient to allow the ACLUM to contest the redactions. *See Church of Scientology Int'l v. U.S. Dep't of Just.*, 30 F.3d 224, 231 (1st Cir. 1994); *Bell v. United States*, 563 F.2d 484, 487 (1st Cir. 1977). As such, ICE is entitled to summary judgment.

### 2. Guidance to ICE Attorneys About Litigation Positions in Immigration Court Is Properly Protected Attorney-Work Product

The ACLUM contends that ICE's redactions pursuant to Exemption 5 are improper because the documents at issue contain legal positions that ICE attorneys may take in immigration court. Dkt. 32 at 6. Such an argument is extraordinary and must be rejected. Documents sent from attorneys to other attorneys providing guidance about legal positions in adversarial litigation reveal the attorneys' mental impressions, conclusions, opinion, and legal theories developed in anticipation of litigation and are at the core of the attorney work-product doctrine. *See Deloitte, LLP*, 610 F.3d at 135.

First, the ACLUM's proposition that the work-product privilege is inapplicable because "agency law and policy positions cannot be withheld under Exemption 5" has been rejected by courts. Dkt. 32 at 6. In support of its argument, the ACLUM cites to *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975). By doing so, it appears to be invoking the "working law" theory. But arguments about "working law" have no place where the attorney work-product privilege protects documents from disclosure. "Working law" arguments arise in the context of the deliberative process privilege, which is not at issue in this case. "The working law exception places

a boundary on the deliberative process privilege, requiring disclosure of 'opinions and interpretations which embody the agency's effective law and policy' and 'have the force and effect of law.'" *ACLU of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 490 (9th Cir. 2018) (citations omitted). That was the issue in *Sears*, 421 U.S. at 149-154. And there was no suggestion in that case that "working law" would be an exception to the separate assertion of the attorney work-product privilege. *See id.* at 154.

The D.C. Circuit has rejected the suggestion that "working law" arguments can overcome an assertion of the attorney work-product privilege, *see Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002), as has the Ninth Circuit, *see ACLU of N. Cal.*, 880 F.3d at 490. And, as the Ninth Circuit noted, "the Supreme Court has held that any final agency opinion or policy interpretation 'subject to the affirmative disclosure requirement of § 552(a)(2) [i]s nevertheless shielded from disclosure under Exemption 5 [if] it contain[s] a privileged attorney's work product.'" *Id.* (citing *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 360 n. 23 (1975)). The ACLUM cites no case holding that a "working law" theory can overcome the attorney work-product privilege.

Nor are the documents at issue here the "working law" of ICE because they discuss or otherwise reflect strategies, defenses, risks, and arguments that may arise in litigation. Dkt. 22 ¶¶ 13, 15; *see Sears*, 421 U.S. at 159-60 ("the public's interest in disclosure is substantially reduced by the fact ... that the basis for the General Counsel's legal decision will come out in the course of litigation before the Board; and that the 'law' with respect to these cases will ultimately be made not by the General Counsel but by the Board or the courts"); *Fams. for Freedom v. U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375, 396 (S.D.N.Y. 2011) ("the secret law doctrine in FOIA cases generally arises in contexts in which agencies are *rendering decisions* based on non-public

5

analyses. I am aware of no precedent for evaluating whether law enforcement *policies* constitute secret law."); *see also ACLUF v. U.S. Dep't of Just.*, No. 12-cv-7412, 2014 WL 956303 (S.D.N.Y. Mar. 11, 2014) (rejecting argument that DOJ guidance to prosecutors was "working law" and holding it was properly withheld as attorney work-product). The analysis of legal strategies to be employed in litigation, including defenses and arguments that could be raised in court, is indisputably opinion work-product and is protected from disclosure. *See Deloitte*, *LLP*, 610 F.3d at 135.

Despite the litigation-specific content in the documents, the ACLUM attempts to equate the materials with generic legal guidelines, outside the context of litigation. *E.g.*, Dkt. 32 at 6 (distinguishing work product from a "basic memorandum by the legal staff of an agency which is used by the agency as a guide in the handling of cases involving private parties"), ("agency law and policy positions"), *id*. at 7 ("broad agency policies"). That characterization is at odds with the record and cannot support the ACLUM's apparent effort to overcome the litigation context in which these materials were developed.

In support of this assertion, the ACLUM points to cases in which courts ordered disclosure of agency guidance. *E.g.*, Dkt. 32 at 6-7 (citing *Jordan v. DOJ*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc); *ACLU of N. Cal.*, 880 F.3d at 486; *Am. Immr. Couns. v. U.S. Dept of Homeland Sec.*, 905 F. Supp. 2d 206, 222 (D.D.C. 2012). But those cases concerned documents that were not related to litigation. In *Jordan*, the court emphasized that no litigation would be brought due to the policy of prosecutorial discretion. 591 F.2d at 775. And the *Jordan* court's reference to "effective policy" was not made in the context of any work-product analysis at all, but in regard to the invocation of the deliberative process privilege, which is again, not at issue here. In *ACLU of N. Cal.*, the court found that "the portions of the USABook that provide instructions to investigators

regarding obtaining court authorization for electronic surveillance" were not protected by the work-product privilege, not because they were guidance, but because they would have been created in "substantially similar form" regardless of whether an investigation led to a criminal prosecution. 880 F.3d at 486. In *American Immigration Counsel*, the court differentiated between a "legal opinion meant to bind the agency," which would not be protected, and a "memo plotting litigation strategy," which would. 905 F. Supp. 2d at 222. The documents at issue here are entirely about litigation, both current and future, are not legal opinions meant to bind the agency with the force and effect of law, and are specifically designed to aid ICE attorneys in their handling of cases in immigration court. Dkt. 22 ¶ 15.

The ACLUM relies heavily on *Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Just. Exec. Office for U.S. Attorneys*, 844 F.3d 246, 250–51 (D.C. Cir. 2016) ("*NACDL*") and the fact that the Department of Justice has published the Justice Manual. Dkt. 32 at 7-8. But neither argument can support the weight assigned by the ACLUM. In *NACDL*, the D.C. Circuit did distinguish between "neutral" accounts of government policy, such as the already publicly released Justice Manual, and the "Blue Book," which imparted litigation strategy to government lawyers, and remanded for consideration of whether neutral statements of government policy were reasonably segregable. 844 F.3d at 257. However, the Justice Manual is created by an entirely different agency in different circumstances and had already been made public. *Id.* ("In this case, the government acknowledges that it has already publicized its general policy statements about federal prosecutors' discovery obligations."). Moreover, the court in *NACDL* did not address the fact that a statement of policy contained in a document that is attorney work-product does not make *that* document subject to disclosure under FOIA. *See Fed. Open Mkt. Comm. of Fed. Reserve Sys.,* 443 U.S. at 360 n.23; *Tax Analysts*, 294 F.3d at 76; *ACLU of N. Cal.*, 880 F.3d at 490.

In any event, the documents at issue here are much more similar to the Blue Book, which the *NACDL* court found was protected by the work-product doctrine, conveying advice, practice notes, and legal strategies to in-the-field ICE attorneys, than to the general statements of policy found in the Justice Manual. *NACDL*, 844 F.3d at 255-56 ("NACDL advocates drawing a line between (unprivileged) documents that convey agency policy and (potentially privileged) documents that help the agency prevail in court. Whatever the validity of such a line, it would not advance NACDL's cause because the Blue Book was designed to help federal prosecutors prevail in court on behalf of the government."). These are not rote instructions, and the guidance involves attorney thought and analysis. *See* Dkt. 22-2.

For example, in Entry 43, the unredacted portion explains that the memorandum outlines OPLA-Boston' Standard Operating Procedures for implementing Secretary Alejandro Mayorkas's memorandum entitled *Guidelines for the Enforcement of Civil Immigration Law* dated September 30, 2021, and Principal Legal Advisor Trasvina's memorandum entitled *Interim Guidance to OPLA Attorneys Regarding Civil Immigration Enforcement and Removal Policies and Priorities*, dated May 27, 2021. Dkt. 22-2 at 16; *see also* Suppl. Pineiro Decl. ¶¶ 6-8 (correcting typographical error). The Mayorkas Memoranda, and the other memoranda referenced in the unredacted portion of the document, are all publicly available, and set forth ICE's policy on the matter. Dkt. 22-3 at 140.[2] What has been redacted is guidance, strategy, and analysis from a supervisory attorney within the OPLA Boston Field Office to other Boston ICE attorneys about how to implement the memoranda for cases in litigation before the immigration courts. Dkt. 22-2 at 16. In Entry 10, ICE also properly withheld Guidance on Sensitive Gender-Based PSG Issues in EOIR and Circuit Court Litigation, which provided legal guidance and litigation strategy to ICE attorneys in light of

---

[2] Available at: https://www.ice.gov/doclib/news/guidelines-civilimmigrationlaw.pdf

a recent Board of Immigration Appeals decision on sensitive gender-based issues that may arise before the immigration courts and circuit courts. Dkt. 22-2 at 4; Dkt. 22-3 at 23-25. And in Entry 24, ICE redacted guidance and strategy for redactions in Form I-213 when those documents are submitted in litigation before the immigration court. Dkt. 22-2 at 9, 22-3 at 66. These documents do not finally decide the rights of any parties, and respondents in removal proceedings are free to challenge any legal positions they believe are improper. That is the nature of the adversarial process. Simply because the ACLUM would like to know this information, as would ICE's adversaries in litigation before the immigration court, does not remove attorney work-product protections.

The ACLUM also points to one document that it asserts was released without certain redactions in another FOIA and contends contains "nonprivileged statements of agency law or policy."[3] Dkt. 32 at 11; Dkt. 34. But the unredacted text of this document (Entry 40) shows that ICE is properly, and conservatively, asserting the attorney work-product privilege. Dkt. 22-2 at 15. In a 2013 email, Jim Stolley, OPLA Director of Field Operations provided guidance to all ICE attorneys following a decision in *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010). In this case, ICE did not redact the discussion of *Dent*, that ICE's policy is to be "reasonable in releasing documents requested by respondents," or what ICE attorneys must by law provide to every respondent in removal proceedings. Dkt. 22-3 at 131. What ICE did redact is more specific guidance on what attorneys should "generally provide" on a "case by case basis" and a description of circumstances

---

[3] The unredacted version of this document was first brought to ICE's attention in this litigation through the ACLUM's Cross Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment. Dkt. 32. Although ICE continues to believe that portions of this document were properly withheld pursuant to Exemption 5, because it has already been released, ICE has reproduced the document to Plaintiff without the Exemption 5 redactions. Suppl. Pineiro Decl. ¶ 9.

where it may be appropriate to direct respondents to FOIA. *Id.*; Dkt. 34-1. Final decisions are left up to the line attorney who will make judgments on a case-by-case basis, based on the specific facts in any given case. *Id.* The redacted information is attorney thought on how to best represent DHS in removal proceedings when responding to document requests and is properly protected as attorney work-product.

Disclosing the documents at issue in this case would undermine the very purpose of the attorney work-product privilege, which exists because documents "reflecting [an entity]'s litigation strategy and its assessment of its strengths and weaknesses cannot be turned over to litigation adversaries without serious prejudice to [its] prospects in the litigation." *United States v. Adlman*, 134 F.3d 1194, 1200 (2d Cir. 1998). The documents reflect ICE's legal strategies on various issues before the immigration courts. They are protected as attorney work-product, which ICE properly withheld pursuant to Exemption 5.

### 3. The Withheld Documents Do Not Concern Purely Administrative Matters

Next, the ALCUM argues that ICE improperly redacted purely administrative material. Dkt. 32 at 8. That is not the case. While some courts have held that communications dealing with "merely administrative, logistical, or scheduling matters," are "outside the scope of the work-product doctrine," *Valley Forge Ins. Co. v. Hartford Iron & Metal Inc.*, No. 1:14-cv-00006, 2018 WL 739870, at * 4 (N.D. Ind. Feb 6, 2018), other courts have doubted the existence of any such "administrative" exception, as even "administrative" documents can reveal an attorney's mental impressions and strategies, *see Citizens for Respons. and Ethics in Washington v. U.S. Dep't of Just.*, 48 F. Supp. 3d 40, 49 (D.D.C. 2014) ("In short, an attorney's mental impressions and strategies can be revealed even by documents that may, at first glance, be characterized as "administrative" rather than "substantive").

10

The ACLUM identifies two documents it contends "appear to contain administrative instructions," specifically the information under the headings "Identifying Cases for Upcoming DD Hearings-Requesting Files/Processing Files Post Hearing" and "ERO Filing of NTAs and Processing of A-Files" in Entries 41 and 42. Dkt. 32 at 12 (citing Dkt. 22-3 at 132-134, 135-139). The redacted information consists of portions of OPLA Boston Standard Operating Procedures (SOPs) regarding the Dedicated Docket (where immigration judges aim to issue a decision within 300 days of the initial master calendar hearing)[4] within OPLA Boston's area of responsibility. Dkt. 22-2 at 15-16. Unlike the cases cited by the ACLUM, the SOPs do not relate to purely administrative matters such as the scheduling of depositions or even internal procedures for tracking time and assigning cases. *See e.g., Valley Forge Ins. Co*, 2018 WL 739870, at * 4; *Louise Trauma Center, LLC v. U.S. Dep't of Just.*, No. 20-cv-3517, 2022 WL 278771, at *6 (D.D.C. Jan. 30, 2022) (stating that some new attorney training materials discuss purely administrative issues; concluding that while it was possible that some of the pages may qualify for the attorney work-product privilege, the defendant had not provided sufficient information). Rather, the SOPs instruct, advise, and guide OPLA Boston attorneys on how to identify, manage, and properly file cases on the Dedicated Docket. Dkt. 22-2 at 15-16. In *ACLUM v. U.S. Dep't of Educ.*, 320 F. Supp. 3d 270, 281–82 (D. Mass. 2018), another session of this court held that Department of Education documents which "explain which loans should be referred to litigation, and how the litigation materials should be prepared" were protected by the attorney work-product doctrine, as "the information sheds light on Defendant's litigation strategy, thoughts, and plans for the

---

[4] https://www.justice.gov/eoir/boston-immigrationcourt#:~:text=Dedicated%20Docket%20(July%2019%2C%202021,the%20initial%20master%20calendar%20hearing.

presentation of evidence." *Id.* Release of the SOPs likewise would shed light on ICE's litigation strategy regarding the Dedicated Docket in immigration court.

### B. ICE Adequately Justified the Harm from Disclosure of ICE's Attorney Work-Product

ICE OPLA employs thousands of attorneys who represent the Department of Homeland Security in immigration removal proceedings brought in immigration courts across the country. *See* Dkt. 22 ¶¶ 20-21. To ensure uniformity and consistency in the litigation of those cases, OPLA provides litigation advice in documents like the Broadcast Messages, Practice Pointers, and emails at issue in this case. *Id.* ¶ 15. Of necessity, that litigation advice is not case specific.

Giving the government the full benefit of the attorney work-product privilege under Exemption 5 would protect the integrity of the "adversary trial process itself." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980); *see id.* (explaining that the purpose of the privilege "is to encourage effective legal representation within the framework of the adversary system" (quotation marks omitted)). By providing ICE attorneys with litigation advice, OPLA enables the government's lawyers to conduct litigation according to the best practices developed by ICE as a whole, which benefits not only the interests of their client, the Department of Homeland Security, but also "the integrity of our system." *Id.* By contrast, preventing the government, as the ACLUM proposes, from relying on the privilege when its lawyers prepare litigation advice used in removal proceedings, "would ignore the function performed by the withheld material and would conflict with the well established rules of discovery." *Delaney, Migdail & Young, Chartered v. I.R.S.*, 826 F.2d 124, 127 (D.C. Cir. 1987) (citation and parenthetical explanation omitted).

As ICE has already articulated, "the agency reasonably foresees that disclosure would harm the attorney work-product privilege, which protects the adversarial trial process by insulating the attorney's preparation from scrutiny. The identifiable and foreseeable harm in disclosing this information would be its chilling effect on the ability of agency attorneys to effectively communicate with each other about how to prepare to represent the agency in litigation. Further, disclosure of these records also would inhibit the candid discussion of issues between employees, which would hinder the ability of OPLA attorneys to be fully informed about legal issues arising before immigration courts, as well as inhibit their ability to assess any future litigation risks." Dkt. 22 ¶¶ 42-44.

The same harm is articulated for each document because each document falls into the same category: litigation guidance provided to ICE attorneys practicing before the immigration courts. *Reporters Comm. for Freedom of the Press v. FBI*, 3 F. 4th 350, 369 (D.C. Cir. 2021) (agencies may group together like records and explain the harm that would result from release of each group). These are not "generic" or "boilerplate" articulations of harm, nor do they repeat the legal standard for the attorney work-product privilege. *See id.* Public release of this information would no doubt benefit ICE OPLA's adversaries in the immigration court, as the ACLUM contends, but the ACLUM is not entitled to pry-open ICE's litigation strategy. Allowing it to do so would harm the integrity of the adversarial process as a whole. *See Reporters Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 110 (D.D.C. 2021) (stating "an agency's burden under the foreseeable harm requirement may be more easily met when invoking other privileges [the deliberative process privilege] and exemptions for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated."); *Delaney*, 826 F.2d at 127 ("plaintiff here is not trying to ascertain the agency's view of the law in order to comply or to advise clients on how to

comply" it is "seeking the agency's attorneys' assessment of the program's legal vulnerabilities in order to make sure it does not miss anything in crafting its legal case against the program. This is precisely the type of discovery the Court refused to permit in *Hickman v. Taylor*, 329 U.S. 495, 513, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947)." ).

### C. No Further Segregability Analysis Is Required

All of the contested material being withheld constitutes attorney work-product not subject to disclosure pursuant to FOIA. Generally, when a document is fully protected by the work-product privilege, an agency need not segregate and disclose non-exempt material. *NACDL*, 844 F.3d at 256. Where courts have required a segregability analysis in the work-product context, the analysis "does not call for parsing the [document] line-by-line or segregating material dispersed throughout the document. Instead, the emphasis is on segregation of non-exempt material found in logically divisible sections. *Id*. at 257. Despite this, ICE did conduct a line-by-line review for non-exempt information and exercised its discretion to release much of the substance of the core values underlying the attorney work-product privilege. Dkt. 22 ¶¶ 47, 16; *see ACLU of N. Cal.*, 880 F. 3d at 489 (requiring segregation of only sections consisting of broad recitations of case holdings and summaries of applicable law). In short, the government has not merely met its burden under FOIA; it has exceeded it.

### D. ICE Properly Withheld Information Pursuant to Exemption 7(E) within Entry 22: "Foreign Fugitive Portfolio-Interpol Transition"

As an initial matter, the Court need not reach the Exemption 7(E) question because the document entitled "Foreign Fugitive Portfolio-Interpol Transition" (Entry 22) is properly withheld under Exemption 5 as attorney work-product. Dkt. 22-2 at 8. Should the Court nevertheless consider Exemption 7(E), Entry 22 is properly withheld under that exemption, and the ACLUM's arguments to the contrary must be rejected.

First, the ACLUM contends that the information withheld from Entry 22 does not satisfy the threshold requirement for Exemption 7(E) because it was not compiled for law enforcement purposes. Dkt. 32 at 16. The ACLUM appears to argue that materials are compiled for law enforcement purposes only if the material "pertain[s] to specific investigations conducted by agencies. . . in other words, investigatory files." *Id.* (quoting *Fams. For Freedom*, 797 F. Supp. 2d at 397). But "[t]he amended threshold to Exemption 7 'resolve[s] any doubt that law enforcement manuals and other non-investigatory materials can be withheld under (b)(7) if they were compiled for law enforcement purposes and their disclosure would result in one of the six recognized harms to law enforcement interests set forth in the subparagraphs of the exemption.'" *Tax Analysts*, 294 F.3d at 79 (quoting S.REP. NO. 98-221, at 23 (1983)). "Exemption 7 uses the term 'law enforcement' to describe the act of enforcing the law, both civil and criminal." *Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016).

Entry 22 provides "information regarding the process and procedures for using INTERPOL Notices in removal proceedings, including guidance on how to verify the Notices. Dkt. 22-2 at 8; Dkt. 22 ¶ 38. It was created by ICE to assist in the conduct of removal proceedings before EOIR and pertains to ICE's obligation to enforce the immigration laws of the United States by investigating, detaining, and pursuing removal proceedings against non-U.S. individuals who may be present in the United States illegally. *Id.* ¶ 24. As such, Document 22 meets the threshold of Exemption 7(E).

Second, ICE has shown that disclosure of the information would risk circumvention of the law.[5] To meet this standard, ICE must show only a chance of a reasonably expected risk that

---

[5] ICE does not concede that the standard articulated in *Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016) is the proper standard governing whether a risk of circumvention of harm must be shown regardless of whether the information is a technique, procedure, or guideline. *Cf.* Dkt. 32 at 17 n. 9. Rather, because ICE has demonstrated risk of circumvention of the law, the

disclosure would lead circumvention of the law. *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). As the D.C. Circuit has held, Exemption 7(E) offers "a relatively low bar for the agency to justify the withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). ICE has met this standard. As set forth in the Pineiro Declaration, disclosure of law enforcement sensitive techniques and procedures regarding the use of INTERPOL Notices in removal proceedings, including how to verify the Notices, would reveal law enforcement techniques, procedures, or guidelines which could reasonably be expected to risk circumvention of the law. Dkt. 22-1 ¶ 27. Disclosure of the guidance, including how ICE verifies the notices, could permit those seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. *Id.* General public awareness about the fact that ICE uses INTERPOL Notices in removal proceedings does not undercut the fact that Exemption 7(E) continues to apply to protect specific, non-public information about the procedures for their use in removal proceedings, including the specifics of how the INTERPOL Notices are verified. *Cf.* Dkt. 32 at 18.

Third, ICE has articulated the reasonable foreseeable harm from the release of Entry 22. Disclosing law enforcement sensitive techniques and procedures regarding the use of INTERPOL Notices in removal proceedings, including how to verify the Notices, would cause harm by risking circumvention of the law. Dkt. 22 at 45; *see Citizens for Respons. and Ethics in Washington v. DHS*, 525 F. Supp. 3d 181, 192 (D.D.C. 2021) (FOIA Improvement Act does not require a higher standard of foreseeable harm than the substantive standards under Exemption 7(E)). The ACLUM's interest in the information does not eliminate this harm, and respondents in removal proceedings remain free to litigate the use of INTERPOL Notices in immigration court and in

---

Court does not need to reach this question.

federal courts should they desire to do so.

### E. Release Is Not an Appropriate Remedy

Finally, the ACLUM maintains that, should the Court grant its motion for summary judgment, the court should order full release of the challenged documents, with the exception of the Exemption 7 redactions the ACLUM is not challenging, is appropriate. Dkt. 32 at 19. As discussed above, ICE has met its burden and has provided detailed declarations to support its withholdings. Should the Court find these insufficient, the normal course is to allow ICE the opportunity to address the Court's concerns through supplemental filings or by submission of the contested documents for in camera review. *See State of Maine*, 298 F.3d at 73; *Moradi v. Morgan*, 527 F. Supp. 3d 144, 160 (D. Mass. 2021) (requiring CBP to submit supplemental affidavits). There is no reason to depart from this standard practice here, where there has been no bad faith by ICE nor any delay in the litigation.

### CONCLUSION

Based upon the foregoing, Defendant's Motion for Summary Judgment should be granted and Plaintiff's Motion for Summary Judgment should be denied.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: /s/ *Erin E. Brizius*
ERIN E. BRIZIUS
Assistant U.S. Attorney
John J. Moakley Federal
CourthouseOne Courthouse Way,
Ste. 9200 Boston, MA  02210
(617) 748-3398
erin.e.brizius2@usdoj.gov