**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC., <br><br> Plaintiff, <br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br><br> Defendant. | Civil Action No. 1:22-cv-10407-PBS |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant, U.S. Immigration and Customs Enforcement ("ICE" or "Defendant"), by

its attorney, Rachael S. Rollins, United States Attorney for the District of Massachusetts,

hereby responds to Plaintiff American Civil Liberties Union of Massachusetts, Inc.'s

("ACLUM" or "Plaintiff") Statement of Undisputed Material Facts. Dkt. 33.

**THE ROLE OF OPLA**

50. Immigration and Customs Enforcement (ICE) prosecutes over two million immigration removal cases and detains over 20,000 people in the United States. *See Immigration Detention Quick Facts*, TRAC (last updated on Dec. 4, 2022), https://trac.syr.edu/immigration/quickfacts/detention.html; *Immigration Court Quick Facts*, TRAC (last updated in Nov. 2022), https://trac.syr.edu/immigration/quickfacts/eoir.html.

   Defendant's Response: Undisputed.

51. OPLA leadership provides guidance to OPLA attorneys about various legal and other developments, and about the handling of various aspects of immigration removal proceedings through messages known as "Broadcast Messages" and through other written communications that are transmitted to all OPLA attorneys. *See* ECF No. 22-3.

   Defendant's Response: Undisputed.

52. One of OPLA's functions is to set policies that govern how its attorneys handle certain aspects of their duties with regard to immigration removal proceedings. *See, e.g.*, Memorandum from Kerry E. Doyle, Principal Legal Advisor, to OPLA Attorneys (Apr. 3, 2022),ice.gov/doclib/about/offices/opla/OPLA-immigration enforcement_guidanceApr2022.pdf ("Guidance to OPLA Attorneys Regarding the Enforcement of Civil Immigration Laws and the Exercise of Prosecutorial Discretion").

Defendant's Response: Undisputed.

53. OPLA leadership sometimes communicates agency policy to OPLA attorneys through "Broadcast Messages" or through other written communications that are transmitted to all OPLA attorneys. *See, e.g.*, *id*; ECF No. 22-3.

Defendant's Response: Undisputed that OPLA leadership sometimes communicates agency policy to OPLA attorneys through "Broadcast Messages" or through other written communications that are transmitted to all OPLA attorneys. Policy memoranda from the Principal Legal Advisor have not been withheld in the disputed documents. *See* Dkt. 22-2; 22-3.

54. OPLA's policies regarding certain aspects of removal proceedings sometimes change from one presidential administration to the next. *See ICE Issues Enforcement Guidance to OPLA Attorneys Implementing EO 13768*, IMMIGRATION POLICY TRACKING PROJECT (last accessed on Nov. 23, 2022), immpolicytracking.org/policies/ice-issues-enforcement-guidance-implementing-eo-13768/ (tracking changes in policy implementing an executive order).

Defendant's Response: Undisputed. Defendant further states that the changes in policy cited by Plaintiff in Paragraph 54 are publicly available.

55. OPLA leadership also sometimes uses Broadcast Messages or other written communications to communicates instructions that are administrative in nature, including relating to the processing of files and the maintenance of information in one or more databases. *See* ECF No. 22-3 at 132-34,135-39.

Defendant's Response: Defendant disputes Plaintiff's characterization of the information as "administrative in nature" such that it is unprotected by the attorney work-product doctrine. The documents found at Dkt. 22-3 at 132-34 and 135-39 (Entries 41 and 42 of the Vaugh Index) are not Broadcast Messages sent by OPLA leadership in Washington, DC. They are OPLA Boston Standard Operating Procedures. The internal OPLA-Boston SOPs were transmitted via email from the OPLA Boston Deputy Chief Counsel to all OPLA Boston attorneys and instruct, advise, and guide OPLA Boston attorneys on the Filing of Notices to Appear, Processing of Alien Files, How to Identify Cases, How to Prepare Cases, How to File Motions, and General Considerations for Litigating Dedicated Docket Cases, all regarding dedicated docket cases litigated in immigration court. *See* Dkt. 22-2 at 15-16.

**THE PRODUCTION IN *ACLUM V. ICE***

56. After Plaintiff American Civil Liberties Union Foundation of Massachusetts (ACLUM) submitted its FOIA request seeking "[a]ny and all guidance to ICE OPLA and/or OCC [Office of Chief Counsel] attorneys that is currently in effect," ECF No. 1-1 at 2, ICE did not respond within the statutory deadline, *see* 5 U.S.C. § 552(a)(6)(A), and ACLUM filed suit, ECF No. 1 at ¶¶ 1, 14.

    Defendant's Response: Undisputed.

57. The cover letters accompanying ICE's May 23 and June 17, 2022 productions, as well as its November 16, 2022 re-production, did not address whether disclosure of the redacted materials would foreseeably harm an interest protected by the asserted FOIA exemptions. Exhibit 1 to Declaration of Medha Swaminathan.

    Defendant's Response: Undisputed. Defendant disputes that this information is contained in Exhibit 1 to the Declaration of Medha Swaminathan. Dkt. 34-1.

58. The documents now contested in this litigation are 42 documents sent by OPLA leadership to OPLA trial attorneys across the country, or, in some cases, to OPLA attorneys in Boston. ECF No. 22-3. Some are what ICE calls "Broadcast Messages," while others are communications that are disseminated to OPLA attorneys. *Id.* All of the records are from OPLA headquarters or from supervisors or leadership at OPLA Boston. *Id.* For ease of reference, the plaintiff refers to all 42 documents as Broadcasts.

    Defendant's Response: Disputed. The document found at Entry 38 of the *Vaughn* index is from an OPLA Boston Assistant Chief Counsel. Dkt. 22-2 at 14.

59. None of the 42 contested documents pertains to the case of any specific individual in removal proceedings. Instead, all of the documents are of general applicability to all removal proceedings, or to particular categories of removal proceedings. *Id*.; ECF No. 22-2.

    Defendant's Response: Undisputed.

60. One or more of the 42 contested documents communicates OPLA policy regarding the handling of a particular aspect of removal proceedings. *See, e.g.*, *id*. at 1 ("The information withheld contained the thoughts, opinions, and impressions of agency counsel, including guidance from senior attorneys to line attorneys regarding the impacts of exercising prosecutorial discretion in certain immigration removal proceedings[.]"); *id.* at 8 ("The information withheld contained the thoughts, opinions, and impressions of agency counsel, including guidance from senior attorneys to line attorneys regarding litigation strategy in immigration court; and thoughts and guidance on how to use and verify INTERPOL Notices in removal proceedings."); *id.* at 15 (identifying record entitled "Responding to Requests for Documents from Respondents in Removal Proceedings").

3

Defendant's Response: Disputed to the extent Plaintiff is contending the documents communicate "policy" unprotected by the attorney work-product doctrine. The contested documents communicate OPLA litigation positions and strategy, which are properly withheld as attorney work-product. *See* Dkt. 22-1 ¶ 17, 22-2.

61. One or more of the 42 contested documents communicates instructions that are administrative in nature, including instructions about case processing, the processing of files, and the maintenance of information in ICE databases. *See, e.g.*, ECF No. 22-3 at 132-34, 135-39.

    Defendant's Response: Defendant disputes Plaintiff's characterization of the information as "administrative in nature" such that it is unprotected by the attorney work-product doctrine. The documents found at Dkt. 22-3 at 132-34 and 135-39 (Entries 41 and 42 of the Vaugh Index) are OPLA Boston Standard Operating Procedures which instruct, advise, and guide OPLA Boston attorneys on the Filing of Notices to Appear, Processing of Alien Files, How to Identify Cases, How to Prepare Cases, How to File Motions, and General Considerations for Litigating Dedicated Docket Cases, all regarding dedicated docket cases litigated in immigration court. *See* Dkt. 22-2 at 15-16.

62. One document in the production is a January 25, 2022 email to OPLA attorneys in Boston. ECF No. 22-3 at 129. The 2022 email attaches a three paragraph email entitled "Responding to Requests for Documents from Respondents in Removal Proceedings" and dated January 8, 2013. *Id.* at 131. In the present production, ICE redacted most of the second paragraph and all of the third paragraph of the 2013 email as attorney work product. *Id.* But ICE previously released the same 2013 email in response to a FOIA request by Betsy Ginsberg of the Immigration Justice Clinic at Benjamin N. Cardozo School of Law. *See* Swaminathan Decl. On that occasion, ICE disclosed the second and third paragraphs of the 2013 email in full. *See* Ex. 2 to Swaminathan Decl.

    Defendant's Response: Defendant states that the referenced documents speak for themselves. Defendant further states that ICE was unable to identify the Ex. 1 to the Swaminathan Decl. as produced to Betsy Ginsberg through FOIA. Suppl. Pineiro Decl. ¶ 9. Finally, Defendant states there is no Exhibit 2 to the Swaminathan Decl. Dkt. 34.

63. The paragraph and a half of text over which ICE now asserts work product privilege describes OPLA's policy regarding how to handle requests by noncitizens in removal proceedings for documents from their file, and how to respond to requests for a full immigration "A-file." *See id.*

    Defendant's Response: Defendant states that the referenced document speaks for itself. Defendant further states that ICE is no longer asserting Exemption 5 for Dkt. 22-3 at 131 and reproduced a version to Plaintiff without the contested Exemption 5 redactions. Suppl. Pineiro Decl. ¶ 9.

64. That paragraph and a half of text elaborates on OPLA's "policy" of being "reasonable" when a noncitizen in removal proceedings requests documents in their file. *See id*.

Defendant's Response: Defendant states that the referenced document speaks for itself.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:    /s/ *Erin E. Brizius*
ERIN E. BRIZIUS
Assistant U.S. Attorney
John J. Moakley Federal Courthouse
One Courthouse Way, Ste. 9200
Boston, MA  02210
(617) 748-3398
erin.e.brizius2@usdoj.gov