**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC., <br><br>　　　　　　　　　　Plaintiff, <br><br>　　　v. <br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br>　　　　　　　　　　Defendant. | No. 1:22-cv-10407-PBS |

## <u>PLAINTIFF'S REPLY IN SUPPORT OF SUMMARY JUDGMENT</u>

Through broadcast messages sent to its attorneys, Immigration and Customs Enforcement (ICE) gives guidance and sets the agency's positions on matters impacting over two million immigration removal cases. In response to a Freedom of Information Act Request (FOIA) by the American Civil Liberties Union of Massachusetts (ACLUM), ICE withheld the 42 Broadcasts at issue here as attorney work product. ACLUM is now entitled to summary judgment.

First, ICE cannot show that the Broadcasts are attorney work product covered by Exemption 5. In its latest submission, ICE confirms that it has not endeavored to segregate and disclose unprivileged policy statements in the Broadcasts, and has instead broadly assumed the documents to be subject to the protection reserved for the mental impressions and theories of attorneys preparing for a case. Second, even if the Broadcasts contain work product, ICE cannot meet FOIA's separate requirement to show that foreseeable harm to the integrity of the adversary process would result from their disclosure. ICE's filing tosses the independent harm inquiry to the wind and simply asks the Court to find that all disclosure of its attorneys' work product should remain protected. Third, with regard to one document, ICE has not met its burden to justify its reliance on Exemption 7(E).

**I. ICE's submission confirms it has broadly labeled the Broadcasts as work product without attempting to segregate policy statements or administrative instructions.**

ICE's filing now makes clear that it withheld the 42 Broadcasts with no effort to distinguish between the protected mental impressions of an attorney and nonexempt material such as policy statements or administrative instructions. ICE thus fails to meet its burden under Exemption 5.

**A. ICE has not disclosed unprivileged statements of agency policy in the Broadcasts.**

The attorney work product privilege provides attorneys, including government attorneys, with the privacy to "think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 864 (D.C. Cir. 1980). But as ACLUM has shown, it does not shield entire agencies from having to disclose their *policies*, including policies about the handling of categories of legal cases, just because the people issuing and receiving the policies are attorneys. *See* ECF No. 32 at 6-8. ACLUM previously noted that ICE did not appear to have segregated any such "nonexempt statements of policy" in this case. Instead, the agency withheld everything—except certain "factual information and case summaries"—without showing that the Broadcasts are protected work product as opposed to other nonprivileged communications. *See* ECF No. 32 at 9-11 (quoting ECF No. 22-1 at ¶ 17).

ICE's response now confirms that it has not attempted to disclose policy statements contained in the 42 Broadcasts. ECF No. 35 at 8-10. It admits segregation concerns do not explain its redactions; all of the material withheld under Exemption 5 is asserted to be work product. ECF No. 22-1 at ¶ 33.[1] ICE also affirms that all but one of the documents are one-way transmittals from leadership to line attorneys, and that they do not discuss any specific noncitizen's case. ECF No.

---

[1] "Where the requested document is generic, pertaining to a broad class of future cases, it should generally be easier to separate material that is exempt from material that is non-exempt." *ACLU of N. Cal. v. DOJ*, 880 F.3d 473, 489 (9th Cir. 2018).

36 at ¶¶ 58-59; ECF No. 22-2.[2] The agency has even confirmed that it uses Broadcasts like these to communicate agency policies to its attorneys. ECF No. 36 at ¶ 53.

That leaves ICE with a narrow path. To prevail in its claim that these Broadcasts are all work product, ICE must either 1) show that there is *no such thing* as a nonexempt statement of policy that can be communicated from leadership to attorneys handling cases in immigration court, or 2) prove that *these* 42 documents contain no nonexempt statements of policy. It has done neither.

*First*, ICE does little to undermine the difference between nonexempt policy statements and the types of discussions of legal theories and strategies that could be protected work product. The D.C. Circuit elaborated on this distinction by comparing two Department of Justice (DOJ) texts: the "Justice Manual" and the "Blue Book." *National Association of Criminal Defense Lawyers v. Executive Office for United States Attorneys*, 844 F.3d 246, 252, 256 (D.C. Cir. 2016) ("*NACDL*"). Because the Justice Manual sets forth "statements of agency policy" for prosecutors, the court explained that it is not work product even though it expressly seeks to guide attorneys in their handling of legal cases. *Id.* at 252. In contrast, because the Blue Book "imparts litigation strategy to government lawyers"—including "case-handling tips and tactical advice for litigating," the court concluded that it largely *is* attorney work product and that only segregable "nonexempt statements of policy" must be disclosed. *Id.* at 256-57; *see also* ECF No. 32 at 8 & n.3.

ICE first describes as "extraordinary" the argument that its law and policy positions are not attorney work product. ECF No. 35 at 4. But it does not contend that *NACDL* was wrongly decided,

---

[2] Thirty-five of the documents (entries 2 to 36) are from ICE's Office of the Principal Legal Advisor (OPLA) to all OPLA attorneys, while five (entries 37, 39 and 41-43) are from OPLA Boston leaders to OPLA Boston attorneys. ECF No. 22-2. One document (entry 38) was sent to OPLA Boston attorneys by an Assistant Chief Counsel in Boston. And the remaining one (entry 40) is the 2013 Broadcast that ACLUM obtained separately. *See* ECF No. 34. It was sent to OPLA Boston attorneys as an attachment to the email at entry 39. *See* ECF No. 22-3 at 129-31.

and it concedes the Justice Manual contained "general statements of policy" despite being addressed to litigating attorneys. *Id.* at 7. ICE only attempts to distinguish *NACDL* on the grounds that it involved DOJ rather than ICE, and that the Justice Manual was already public, *id.*, facts that do not unsettle the distinctions drawn by the D.C. Circuit.

ICE also addresses other cases cited by ACLUM—two of which specifically involve resources given to federal prosecutors—and contends that these cases do not address the context of litigation. ECF No. 35 at 6-7 (citing, *e.g.*, *Jordan v. DOJ*, 591 F.2d 753 (D.C. Cir. 1978) and *ACLU of N. Cal v. DOJ*, 880 F.3d 473 (9th Cir. 2018)). These arguments are puzzling. For example, ICE argues that *Jordan* is "not related to litigation" because it involved guidance to United States Attorneys about prosecutorial discretion, ECF No. 35 at 6; *Jordan*, 591 F.2d at 757-58, 775-76, but several of the Broadcasts now being withheld also relate to prosecutorial discretion.[3] ICE simply does not show that its policies and positions, communicated from agency leadership to more than a thousand line attorneys, should categorically fall within the work product privilege for the private mental impressions and processes of an attorney preparing for litigation.[4]

---

[3] *See, e.g.*, ECF No. 22-3 at 140-48 (discussing prosecutorial discretion); *id.* at 35-37 (discussing administrative closure of immigration proceedings); *id.* at 1-2 (discussing settlement that provides for a favorable exercise of prosecutorial discretion for certain noncitizens, *CARECEN v. Jaddou*, No. 1:20-cv-02363, ECF No. 68 (D.D.C. Mar. 21, 2022)).

[4] ICE devotes much of its energy to refuting an argument, which ACLUM did not advance, regarding the "working law" exception to the deliberative process privilege. ECF No. 35 at 4-6. In the deliberative process context, the "working law" exception recognizes that if a communication that is in some sense predecisional is actually setting out a rule of decision for a category of cases being adjudicated, then it is not privileged. *See Fams. for Freedom v. CBP*, 797 F. Supp. 2d 375, 396 (S.D.N.Y. 2011). OPLA does not adjudicate cases, and ACLUM does not ask this Court to hold that the Broadcasts contain secret rules governing the adjudication of cases. That does not mean, of course, that the work product protection at issue here applies every time OPLA attorneys write down words. *See Jordan*, 591 F.2d at 775 (denying work product claim by United States Attorney's Office, noting that "[t]he work-product rule does not extend to every written document generated by an attorney; it does not shield from disclosure everything that a lawyer does. Its purpose is more narrow, its reach more modest.").

*Second*, since any statements of policy in the Broadcasts would not be privileged, ICE can only prevail by supplying facts showing that the 42 Broadcasts contain no policy statements whatsoever. But ICE's latest submission does not overcome its earlier failure to prove that the Broadcasts are work product. *See* ECF No. 32 at 9-11.

ICE states that the Broadcasts "are much more similar to the Blue Book" than the Justice Manual, but does not show that to be true. ECF No. 35 at 8. For example, the agency asserts for the first time that "[t]he documents at issue were . . . prepared to assist ICE attorneys in *prevailing in litigation*" in immigration court, *id.* at 2 (emphasis added), presumably echoing *NACDL*'s determination that the Blue Book "was designed to help federal prosecutors prevail in court on behalf of the government," 844 F.3d at 255-56. But the records and filings in this case undercut ICE's claim and make clear that some of the Broadcasts address positions that can be *favorable* to noncitizens and would not help ICE win its cases. For instance, several of the Broadcasts discuss prosecutorial discretion, *see supra* n.3, and the previously released 2013 record reveals a policy favoring certain disclosures, ECF No. 34-1.[5] Even the agency's declarant only went so far as to say the Broadcasts were "prepared for the purpose of advancing DHS's *position*," and made no claim that their purpose was exclusively to help ICE win in litigation. ECF No. 22-1 ¶ 17.

To be sure, the Broadcasts may well *contain* attorney work product. ICE admits that the Broadcasts include both legal "positions and strategy." ECF No. 36 at ¶ 60. But ICE's failure to

---

[5] ICE claims the withholdings in the 2013 document are properly protected "attorney thought on how to best represent DHS in removal proceedings." ECF No. 35 at 10. Yet this document contains just the sort of nonexempt policy information found in the Justice Manual. *See* Justice Manual, U.S. DEP'T JUST., at 9-5.002, justice.gov/jm/justice-manual (listing considerations for prosecutors about when to "provid[e] discovery beyond that required by the discovery obligations or . . . sooner than required," such as "enhancing the likelihood of receiving reciprocal discovery by defendants" and "strategic considerations that enhance the likelihood of achieving a just result in a particular case"). For good reason, ICE previously determined that the 2013 Broadcast was not attorney work product. *See* Declaration of Betsy Ginsberg & Exhibit to Ginsberg Decl.

distinguish privileged from unprivileged communications, and its reliance on generic descriptions of the Broadcasts' contents, prevent it from satisfying its burden to justify its withholdings.

### B.  ICE does not refute that there are segregable administrative instructions.

ICE's latest filing similarly shows it has improperly withheld administrative instructions. ACLUM has pointed to Broadcast sections that appear to contain information that is administrative in nature rather than work product, such as instruction about "processing" files. ECF No. 32 at 12. And because ICE has only claimed to have segregated and produced "factual information and case summaries," and nothing else, ACLUM previously explained that ICE did not appear to have considered whether portions of the Broadcasts were unprivileged administrative instructions, much less proven that its redactions were warranted. *Id.* at 10 (quoting ECF No. 22-1 at ¶ 17).

In response, ICE does not deny that the documents highlighted by ACLUM—and potentially others—contain instructions that are administrative in nature. ICE only asserts that there are no "documents" that consist entirely or "purely" of unprivileged administrative instructions. *See* ECF No. 35 at 10-12. That is plainly inadequate.

ICE also suggests that this Court should "doubt[]" whether administrative instructions are outside the work product privilege. *Id.* at 10. The case it cites stands only for the proposition that materials that "may, at first glance, be characterized as 'administrative' rather than 'substantive'"—in that case, emails from attorneys to staff regarding scheduling and staffing in connection with a specific investigation—can still turn out to reveal "an attorney's mental impressions and strategies." *Citizens for Resp. & Ethics in Wash. v. DOJ*, 48 F. Supp. 3d 40, 48-49 (D.D.C. 2014). Nothing in that case or in ICE's submission suggests that disclosure of administrative material in *this* case would reveal the "mental impressions and strategies" of attorneys. Because ICE has not refuted that there are segregable portions of the Broadcasts containing unprivileged administrative instructions, it cannot justify its blanket withholdings.

**II. Disclosure of the Broadcasts is warranted on the basis of ICE's failure to demonstrate that any foreseeable harm would result.**

Even if the Broadcasts were work product, ICE's submission now confirms the agency does not assert any specific harm to the integrity of the adversary process that would result from their disclosure—beyond an argument that all disclosure of OPLA work product would cause such harm. That omission is fatal to its claims of privilege.

Since 2016, amendments to FOIA have required the government to demonstrate not only that a FOIA exemption applies, but also that "the agency reasonably foresees that disclosure would harm an interest protected by an exemption," 5 U.S.C. § 552(a)(8)(A)(i)(I)—which in this case requires showing harm to the integrity of the adversary process, *see State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 66 (1st Cir. 2002). The requirement creates an independent inquiry beyond the existence of an applicable exemption. *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 & n.2 (D.C. Cir. 2021). Yet as ACLUM previously pointed out, ECF No. 32 at 13, ICE's opening memorandum did not mention foreseeable harm at all, and its declaration and *Vaughn* index merely parrot boilerplate claims that the disclosure of each document could "inhibit . . . candid discussion" among ICE attorneys. *See* ECF No. 21, 22-2.

In response, ICE has now clarified the nature of its foreseeable harm claim. ICE asks this Court to hold that the integrity of the trial process would be served if it receives "the full benefit of the attorney work-product privilege." ECF No. 35 at 12. In other words, far from seeking to make an independent showing of harm, ICE collapses the two requirements into one and contends that harm necessarily exists if *any* work product in its Broadcasts is shared. ICE does not justify its claimed harm based on the specific contents of any Broadcast. Even though one of the Broadcasts has already been released (inadvertently and despite containing work product, according to ICE, *see* ECF No. 35-1 at ¶ 9), ICE does not assert that any harm has followed. Nor

7

does ICE argue that releasing any or all of the 42 Broadcasts would *directly* harm the adversarial process by letting noncitizens unfairly "probe [ICE counsel's] thoughts and plans concerning the case." *See Coastal States Gas Corp.*, 617 F.2d at 864.

Instead, in identical language repeated for each document in its *Vaughn* index, ICE asserts that release could cause a generalized chilling effect that could indirectly harm the adversarial process. ICE assumes disclosure could "chill[] . . . the ability of agency attorneys to effectively communicate with each other" and "inhibit the candid discussion of issues between employees," which in turn could "hinder" ICE attorneys' "ability . . . to be fully informed," and to "assess any future litigation risks," which could then weaken the quality of lawyering and harm the adversarial process.[6] ECF No. 22-2; ECF No. 35 at 12. These assumptions simply spell out ICE's claim that any release of OPLA attorneys' work communications may cause the requisite harm—reasoning that contravenes the very purpose of the FOIA amendments. *See Reps. Comm.*, 3 F.4th at 369.

Importantly, ICE concedes that disclosing the Broadcasts would benefit noncitizens in removal proceedings. ECF No. 35 at 13. Most of these noncitizens are unrepresented and face significant challenges in presenting their cases, which can involve life and death consequences.[7] Given the imbalance of legal knowledge amid these stakes, it is far from "self-evident" that access to information about how ICE approaches its cases would harm, rather than help, the integrity of the adversarial process. *See* ECF No. 35 at 13 (quoting *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 110 (D.D.C. 2021)). Because ICE has failed to demonstrate any such harm, disclosure is required.

---

[6] The assertion is based on one paragraph of the declaration of a FOIA officer who does not claim personal knowledge or expert qualification. ECF No. 22-1 at ¶ 29; *see* ECF No. 33 at ¶ 42.

[7] *See* Emily Creighton & Jennifer Whitlock, *What Does Legal Representation Look Like in Immigration Courts Across the Country?*, IMMIGRATION IMPACT (Aug. 23, 2022), immigrationimpact.com/2022/08/23/legal-representation-immigration-courts-across-country.

**III. ICE failed to carry its burden to justify withholding a Broadcast relating to its attorneys' use of Interpol Notices under Exemption 7(E).**

ICE cannot show that the Interpol-related Broadcast it has redacted under Exemption 7(E) is "compiled for law enforcement purposes" or that its disclosure "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7).

First, ICE has not satisfied the threshold requirement of showing the Broadcast to its attorneys was compiled for law enforcement purposes. *See* ECF No. 32 at 16-17. ICE cites *Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002) for the proposition that Exemption 7(E) applies to "non-investigatory" materials. ECF No. 35 at 15. But *Tax Analysts* explains that, since the 1986 FOIA amendments, Exemption 7(E) is not limited to materials about a *specific* investigation; rather, it applies to documents about law enforcement investigations generally, "including law enforcement manuals and the like." 294 F.3d at 79. The case does not support the contention that instructions about litigation sent by lawyers to other lawyers are "for law enforcement purposes." *See Lanuza v. United States*, No. 2:14-cv-01641, 2019 WL 3571053, at *3 (W.D. Wash. Aug. 6, 2019) (noting "ICE attorneys are not bestowed the statutory powers that would qualify them as 'investigative or law enforcement officers'" under the Federal Tort Claims Act).

Second, ICE did not show a "risk of circumvention." ACLUM previously argued that the Interpol Broadcast is a guideline (not a technique or procedure) to which the circumvention requirement undisputedly applies, and, in turn, that ICE cannot satisfy that requirement with a FOIA officer's vague and nearly meaningless assertion that release "could allow subjects" of the Notices to "tak[e] proactive steps to counter operational and investigative actions taken by ICE during law enforcement operations." ECF No. 32 at 17-18 (quoting ECF No. 22-2 at 8). ICE does not dispute that the Broadcast is a guideline, but contends circumvention is a "relatively low bar." *See* ECF No. 35 at 15-16 & n.5 (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)).

9

Even so, "boilerplate" and "generic assertions" like the ones made by ICE here are insufficient. *ACLU v. Off. of the Dir. of Nat. Intel.*, No. 10 Civ. 441, 2011 WL 5563520, at *11 (S.D.N.Y. Nov. 15, 2011). For example, in *Long v. ICE*, an ICE technology specialist "identifie[d] a specific kind of risk—a Structured Query Language [(SQL)] injection attack." 149 F. Supp. 3d 39, 50 (D.D.C. 2015). ICE submitted evidence that the information requested could allow a hacker to conduct the exact cybersecurity attack ICE was concerned about. *Id*. at 51. But at oral argument, the agency "was unable to identify any SQL injection attacks that have occurred without a public access point." *Id*. at 52-53. Ultimately, the court denied summary judgment to the agency on Exemption 7(E), because the agency had not articulated the risk of harm with sufficient specificity and detail as to warrant non-disclosure. *Id.*; *see also Long v. ICE*, 279 F. Supp. 3d 226, 236 (2017) (again denying summary judgment despite ICE's attempt to further justify non-disclosure).[8]

As the court stated in *Long*, "[t]he Government cannot simply cite Exemption 7(E) and expect the court to rubber stamp its withholdings." 279 F. Supp. 3d at 234. Because ICE has not met its burden under Exemption 7(E), the record is subject to release under FOIA.

### Conclusion

ACLUM respectfully requests that this Court deny ICE's motion for summary judgment, grant ACLUM's cross-motion, and order the immediate release of the redacted information.

---

[8] *See also Pinson v. DOJ*, 202 F. Supp. 3d 86, 104 (D.D.C. 2016) (finding DOJ "has not explained the nexus between any information contained in the memorandum and the possible disclosure of investigatory or prosecutorial techniques" and, "beyond its boilerplate assertion, . . . has not yet explained what material in the . . . memoranda would pose that risk").

Dated: February 2, 2022

Respectfully submitted,

AMERICAN CIVIL LIBERTIES UNION OF
MASSACHUSETTS, INC.

*/s/ Adriana Lafaille*
Matthew R. Segal (BBO #654489)
Adriana Lafaille (BBO #680210)
Medha Swaminathan (Md. 2211290214)*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
alafaille@aclum.org

*appearing *pro hac vice* with leave of Court

11