**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                               )
AMERICAN CIVIL LIBERTIES UNION OF  )
MASSACHUSETTS, INC.,           )
                               )
        Plaintiff,             )
                               )          Civil Action
v.                             )          No. 22-cv-10407-PBS
                               )
U.S. IMMIGRATION AND CUSTOMS   )
ENFORCEMENT,                   )
                               )
        Defendant.             )
_____)
```

## MEMORANDUM AND ORDER

August 9, 2023

Saris, D.J.

Plaintiff, the American Civil Liberties Union of Massachusetts (ACLUM), brings this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking to compel Defendant United States Immigration and Customs Enforcement (ICE) to disclose written guidance the agency provides its attorneys about the performance of their duties. Defendant has moved for summary judgment on the grounds that the redactions in the 42 documents at issue are (1) internal information protected by the attorney work-product doctrine under FOIA Exemption (b)(5), or (2) information compiled for law enforcement purposes, which would disclose the agency's techniques, procedures, and/or guidance, under FOIA Exemption (b)(7)(E). Plaintiff has cross-moved for summary

1

judgment. After both a hearing and an <u>in camera</u> review of the redacted documents, the Court **<u>ALLOWS</u>** the motions in part, and **<u>DENIES</u>** them in part.

## FACTUAL BACKGROUND

The record contains evidence of the following undisputed facts.

ICE prosecutes around two million immigration removal cases and detains 20,000 people a year. Its attorneys represent the Department of Homeland Security (DHS) in removal proceedings before the Executive Office for Immigration Review (EOIR) across the country, and actively litigate on behalf of the government in immigration courts nationwide. The Office of the Principal Legal Advisor (OPLA) is the largest legal program within DHS, with over 1,250 attorneys and 290 support personnel. OPLA provides a full range of legal services to ICE programs and offices, including operating as the "exclusive representative" of DHS in immigration removal proceedings before EOIR. Dkt. 33 ¶ 21.

The 43 documents at issue are intra-agency communications between attorneys, specifically communications from high-level OPLA attorneys to OPLA trial attorneys. Some of the documents assist in the conduct of removal proceedings before EOIR. They include descriptions of cases, practice pointers, legal strategies, legal analysis, legal argument, and guidance. Some documents include administrative guidance and protocols. Defendant

has produced about 757 pages of documents, which are subject to redactions based on various FOIA exemptions. In presenting the documents, ICE states that it has not withheld factual information and case summaries, only protected materials. Plaintiff challenges some of the redactions pursuant to Exemption (b)(5) and one document involving INTERPOL procedures pursuant to Exemption (b)(7)(E). The government has submitted a <u>Vaughn</u> index and a declaration by Fernando Pineiro ("the Pineiro Declaration") in support of the redactions. <u>See</u> Dkt. 22-2. Pineiro is the Director of ICE's FOIA Office, which is responsible for processing and responding to ICE's FOIA requests. The <u>Vaughn</u> index has 43 separate entries,[1] each with a description of the records, a description of the redactions, and the agency's reasons for redacting.

## <u>LEGAL STANDARD</u>

### I. <u>The Freedom of Information Act</u>

The policy underlying FOIA is one of "broad disclosure", whereby the "government must supply any information requested by any individual unless it determines that a specific exemption, narrowly construed, applies." <u>N.H. Right to Life v. HHS</u>, 778 F.3d 43, 49 (1st Cir. 2015) (quoting <u>Church of Scientology Int'l v.</u>

---

[1] At this stage of the litigation, Plaintiff no longer challenges the redactions in Entry 1, Entry 35, and Entry 41 under Exemption (b)(7)(E); only Entry 22 -- the INTERPOL document -- remains in dispute. <u>See</u> Dkt. 32 at 16 n.8.

U.S. Dep't of Just., 30 F.3d 224, 228 (1st Cir. 1994)). Generally, "any doubts" regarding the application of an exemption should be "resolved in favor of disclosure." Carpenter v. U.S. Dep't of Just., 470 F.3d 434, 438 (1st Cir. 2006). "The government bears the burden of proving that withheld materials fall within one of the statutory exemptions, and district courts are required to make de novo determinations as to the validity of the asserted exemptions." Id. (cleaned up).

To establish the applicability of a FOIA exemption, agencies often submit a Vaughn index -- a "comprehensive list of all documents that the government wants to shield from disclosure in [FOIA] litigation, each document being accompanied by a statement of justification for nondisclosure." N.H. Right to Life, 778 F.3d at 48 n.3 (cleaned up). A Vaughn index must afford "the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." Church of Scientology Int'l, 30 F.3d at 231 (quoting Wiener v. FBI, 943 F.2d 972, 977-78 (9th Cir. 1991)). If a court finds a Vaughn index inadequate and no other support is provided, the court can choose to permit discovery limited to specified documents, conduct an in camera review of the selected documents, order release of some documents, or direct a combination of these procedures. Id. at 240 (footnote omitted). A court may also deny summary judgment if it finds a Vaughn index inadequate

to demonstrate proper invocation of FOIA exemptions. COMPTEL v. FCC, 910 F. Supp. 2d 100, 114 (D.D.C. 2012); see also Pub. Emps. for Env't Resp. v. Off. of Sci. & Tech. Pol'y, 825 F. Supp. 2d 104, 105 (D.D.C. 2011) (holding that "summary judgment is inappropriate . . . because [the agency]'s Vaughn index is legally insufficient for the Court to determine whether the redactions and withholdings were proper").

## II. **Exemption 5**

Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption encompasses the attorney work-product privilege, FTC v. Grolier Inc., 462 U.S. 19, 20 (1983), first established in Hickman v. Taylor, 329 U.S. 495 (1947), and codified for civil discovery in Fed. R. Civ. P. Rule 26(b)(3).

"The privilege protects work done by an attorney in anticipation of, or during, litigation from disclosure to the opposing party." Maine v. U.S. Dep't of Interior, 298 F.3d 60, 66 (1st Cir. 2002). The First Circuit has held that "documents should be deemed prepared for litigation and within the scope of the Rule if, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." Id. at 68 (cleaned up). "The purpose of the privilege

is to protect the integrity of the adversary process by providing a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." ACLU Found., Inc. v. U.S. Dep't of Educ., 320 F. Supp. 3d 270, 281 (D. Mass. 2018) (citing Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for U.S. Att'ys, 844 F.3d 246, 250-51 (D.C. Cir. 2016)) (cleaned up). Invocation of the privilege does not depend on the existence of a specific case or claim. Nat'l Ass'n of Crim. Def. Laws., 844 F.3d at 255; Schiller v. NLRB, 964 F.2d 1205, 1208 (D.C. Cir. 1992) (finding that documents that contain "tips for handling [a class of] cases that could affect subsequent . . . litigation" are the "sort of information -- prepared in anticipation of litigation -- [that] falls within the attorney work-product privilege and, therefore, within exemption 5"), abrogated on other grounds by Milner v. Dep't of the Navy, 562 U.S. 562 (2011); see also Hawkinson v. ICE, 554 F. Supp. 3d 253, 271 (D. Mass. 2021) (training materials for attorneys handling bond hearings were properly withheld as attorney work product).

Courts have held that certain kinds of information do not fall within the attorney work-product doctrine. First, documents conveying neutral accounts of policy cannot be withheld under Exemption 5. Nat'l Ass'n of Crim. Def. Laws., 844 F.3d at 255 ("[W]e agree . . . that materials serving no cognizable

adversarial function, such as policy manuals, generally would not constitute work product."); <u>ACLU Found.</u>, 320 F. Supp. 3d at 280 (citing <u>Brennan Ctr. for Just. at NYU Sch. of Law v. U.S. Dep't of Just.</u>, 697 F.3d 184, 195 (2d Cir. 2012)); <u>cf.</u> <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 151-53 (1975) (holding that the deliberative process privilege in Exemption 5 calls for disclosure of opinions and interpretations that embody the agency's "effective law and policy").

Second, information that has been "officially acknowledged" or is in the "public domain" cannot be withheld as attorney work product. <u>Davis v. U.S. Dep't of Just.</u>, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (citing <u>Afshar v. Dep't of State</u>, 702 F.2d 1125, 1130-34 (D.C. Cir. 1983)).

Third, communications dealing with merely administrative, logistical, or scheduling matters are outside the scope of the work-product doctrine. <u>See</u> <u>Louise Trauma Ctr., LLC v. Dep't of Just.</u>, No. 20-3517 (RC), 2022 WL 278771, at *6 (D.D.C. Jan. 30, 2022); <u>ACLU Found.</u>, 320 F. Supp. 3d at 281-82.

Finally, even if a document is protected by the work-product doctrine, it is not properly withheld unless there is foreseeable harm to the integrity of the litigation process. Congress passed the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538 (2016), in response to concerns that agencies were "overusing [FOIA] exemptions to protect records that should be releasable

under the law." H.R. REP. NO. 391-114, at 9 (2016); <u>see also</u> S. REP. No. 4-114, at 2 (2015). Congress expressed particular concern about agency overuse of Exemption 5 and the deliberative process privilege. H.R. REP. NO. 391-114, at 9 ("The deliberative process privilege is the most used privilege and the source of the most concern regarding overuse."); <u>see also</u> S. REP. NO. 4-114, at 3. The FOIA Improvement Act codified the "foreseeable harm" standard to seek a "presumption of openness" in the administration of FOIA. <u>See</u> H.R. REP. NO. 391-114, at 9; S. REP. NO. 4-114, at 7-8. The standard requires that even where documents are protected work product, the agency must disclose records unless it "reasonably foresees that disclosure would harm" an interest protected by an exemption.   5 U.S.C.   § 552(a)(8)(A)(i)(I).   Pertaining   to Exemption 5, courts have interpreted the foreseeable harm standard to warrant disclosure by an agency unless the agency can demonstrate a "focused and concrete" harm that would result from disclosure. <u>Reps. Comm. for Freedom of the Press v. FBI</u>, 3 F.4th 350, 370 (D.C. Cir. 2021) (holding that the Federal Bureau of Investigations (FBI) through "a series of boilerplate and generic assertions" failed to demonstrate a foreseeable chilling effect on internal communications as a result of public release); <u>Machado Amadis v. U.S. Dep't of State</u>, 971 F.3d 364, 367, 370-71 (D.C. Cir. 2020) (finding that the government demonstrated specific harm by way of a chilling effect resulting from disclosure of attorneys'

forms). In other words, the agency must "articulate" a link between the withheld information and a foreseeable harm to an interest protected by the specific FOIA Exemption. Reps. Comm. for Freedom of the Press v. U.S Customs & Border Prot., 567 F. Supp. 3d 97, 110 (D.D.C. 2021) ("[T]he agency must articulate, in a 'focused and concrete' way, the harm that would result from disclosure, including the basis and likelihood of that harm.").

### III. **Exemption 7**

Exemption 7(E) protects certain law enforcement records if an agency satisfies two conditions. First, the agency must show that the records were compiled for a law enforcement purpose. 5 U.S.C. § 552(b)(7). To meet this requirement, the agency "need only 'establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law.'" Blackwell v. FBI, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting Campbell v. U.S. Dep't of Just., 164 F.3d 20, 32 (D.C. Cir. 1998) (cleaned up)). Second, the agency must show that the records would either (1) "disclose techniques and procedures for law enforcement investigations or prosecutions," or (2) "disclose guidelines for law enforcement investigations or prosecutions" and that "such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E) (emphases added). In determining whether records contain

"techniques or procedures" protected by Exemption 7(E), the focus is on whether disclosure "would reveal particulars about the way in which an agency enforces the law and the circumstances that will prompt it to act." Knight First Amend. Inst. at Columbia Univ. v. U.S. Citizenship & Immigr. Servs., 30 F.4th 318, 333 (2d Cir. 2022) (holding that questions as to Terrorism-Related Inadmissibility Grounds constitute "techniques or procedures," as used for the law enforcement purpose of identifying and preventing terrorists from entering the United States). To show that disclosure may "risk circumvention of the law," an agency must demonstrate an increased risk that "a law will be violated or that past violators will escape legal consequences." Mayer Brown LLP v. IRS, 562 F.3d 1190, 1193 (D.C. Cir. 2009).

Investigative techniques and procedures routine and generally known to the public are not protected by Exemption 7(E). Rosenfeld v. U.S. Dep't of Just., 57 F.3d 803, 815 (9th Cir. 1995). However, if the means and "circumstances" of the techniques and procedures are not publicly known as well, the known investigative techniques and procedures become protected under Exemption 7(E). See Catledge v. Mueller, 323 F. App'x 464, 467 (7th Cir. 2009) (citations omitted).

## DISCUSSION

After an in camera review of the pertinent documents, i.e., the Vaughn index, the Pineiro Declaration, and the unredacted

documents, the Court finds that many of the 42 documents are indeed protected by the work-product doctrine, as they were created in anticipation of litigation. For example, many of the documents include "practice pointers" for litigating attorneys or provide critical analyses of caselaw beyond simply summarizing the holdings.

However, the Court also finds that ICE has not met its burden of showing that the work-product doctrine, under Exemption (b)(5), applies to certain documents <u>at all</u>, e.g., administrative guidance or protocols.

Finally, ICE has only put forward generic, blanket statements asserting that the disclosure of the documents poses foreseeable harm under the FOIA Improvement Act of 2016; in identical language repeated for each document in its <u>Vaughn</u> index, ICE asserts that release could cause a generalized chilling effect that could indirectly harm the adversarial process. ICE states disclosure could "chill[] . . . the ability of agency attorneys to effectively communicate with each other" and "inhibit the candid discussion of issues between employees." Dkt. 22-2; Dkt. 35 at 12. These effects could in turn "hinder" ICE attorneys' "ability . . . to be fully informed," and to "assess any future litigation risks," weakening the quality of lawyering and finally harming the adversarial process. Dkt. 35 at 12.

The Court has reviewed each entry to determine whether ICE has met its burden under Exemption (b)(5) or Exemption 7(E) and the FOIA Improvement Act of 2016. In the following analyses, docket citations correspond to the Vaughn index (Dkt. 22-2), whereas Bates numbers refer to the unredacted documents available through the Court's in camera review, e.g., Bates 001. The Court, moving from top to bottom of any specified page, addresses each entry as follows:

Entry 2. Defendant has not proven that the redaction in the broadcast announcement is justified. See Bates 001 & 011. The redacted information appears to be a description of a publicly disclosed agreement and operational guidance for meeting the terms of the agreement. The Vaughn index's claim that disclosure would result in a foreseeable harm is not persuasive. See Dkt. 22-2 at 1.

Entry 3. Defendant has not met its burden with respect to the first redaction ("The question has arisen . . .") and the first paragraph of the second redaction ("Consistent with . . ."). See Bates 012. Both portions are descriptive of the law and disclosure would not be chilling. The remainder of the redaction, i.e., the second paragraph of the second redaction, constitutes advice or litigation strategy and qualifies under Exemption (b)(5).

Entries 4, 10, 12, 13, 14, 15, 16, 20, 21, 25, 26, 27, 29, 30, 32. Defendant has met its burden of showing that the redaction

for these "practice pointers" falls within Exemption (b)(5) and disclosure would harm the integrity of the adversarial process.

Entry 5. Defendant has met its burden of demonstrating that most of the redactions are "practice pointers" subject to Exemption (b)(5). See Dkt. 22-2 at 2; Bates 026-29. However, the fifth bullet ("AG Garland . . .") on Bates 027 does not involve litigation strategy but reviews the state of the law and the rescission of a publicly available prior memorandum. Disclosure would not be chilling: the passage is a policy statement.

Entry 6. Defendant has met its burden of proving that the redactions fall within Exemption (b)(5) as they discuss litigation strategy, with one exception: the redactions on Bates 030 do not discuss litigation strategy but rather describe the state of the law. Disclosure does not chill attorney discussion.

Entry 7. Defendant has not met its burden of proving that the first three redactions on Bates 034 qualify under Exemption (b)(5) because they describe the state of the law and disclosure will not chill attorney discussion. However, the "practice pointers" involve litigation strategy and fall within Exemption (b)(5).

Entry 8. Defendant has met its burden of proving that the "practice pointers" fall within Exemption (b)(5) as they discuss litigation strategy. The first redaction on Bates 036 is administrative in nature and is not protected.

Entry 9. Defendant has met its burden of demonstrating that the "practice pointers" and critical discussion of the caselaw reflect litigation strategy. However, the first redaction on Bates 041 does not fall within Exemption (b)(5) because it discusses the state of the law and disclosure will not chill attorney discussion.

Entry 11. Defendant has met its burden of demonstrating that most of the redactions are "practice pointers" subject to Exemption (b)(5). However, the third and fourth bullets ("Pending . . . 1003.23(b)(3).") on Bates 049 do not involve litigation strategy but restate general policies previously available in a public memorandum. Disclosure would not chill.

Entry 17. Defendant has met its burden of proving that the "practice pointers" reflect litigation strategy under Exemption (b)(5) and disclosure would chill attorney discussion. However, the neutral discussion of California and New York State law on Bates 066 ("For example . . . contendere.'" and "On the other hand . . . Apr. 12, 2019)") should not be redacted.

Entry 18. Defendant has not met its burden of proving that the first two redactions on Bates 070 ("As a practical matter . . . concurring)." and "OPLA attorneys . . . .' See id.") fall within Exemption (b)(5) because they merely restate the law and disclosure would not chill attorney speech. However, the remainder of the redactions are justified because disclosure would chill attorney speech.

14

Entry 19. Defendant has not met its burden of proving that Exemption (b)(5) applies. This broadcast appears to describe a publicly available settlement agreement and the administrative procedures to implement it.

Entry 22. Defendant has not met its burden of establishing that any of the redactions are warranted under Exemption(b)(5) because this email involves administrative procedures for INTERPOL transitions of foreign fugitive cases. However, the final redaction ("Notices . . . .") is warranted under Exemption (7)(E) because the information relates to the timing and procedures of INTERPOL enforcement.

Entry 23. Defendant has not met its burden of proving that the first redaction in full on Bates 429-30 was warranted by Exemption (b)(5) because it is a discussion of the caselaw. Only the beginning and end of said redaction is protected, i.e., ("Moving forward . . . ." and "In arguing . . . ."). Moreover, the remaining redactions involve litigation strategy, legal analysis, and "practice pointers" which are exempt from disclosure.

Entry 24. Defendant has not met its burden of demonstrating that this email in full is work product within Exemption (b)(5). It is administrative guidance about redactions on Form I-213.

Entry 28. Defendant has not met its burden of showing that the redactions on Bates 501 are exempt from disclosure as they reflect the administrative process for implementing Operation

Horizon, not legal analysis or strategy. However, it has proven that the redactions on Bates 502-05 are justified attorney work product because they discuss the impact of court cases on various administrative procedures.

Entry 31. Defendant has met its burden of proving that the redaction on Bates 536 falls within Exemption (b)(5) because it reflects litigation strategy. However, the redactions on Bates 587-92 ("As background . . . Id. at 155.") are not within the exemption because they merely state the holdings of various cases and disclosure would not chill attorney discussion. However, the "practice pointers" on Bates 592-96 fall within the exemption because they reflect litigation strategy.

Entry 33. Defendant has not met its burden of showing that the redactions, which primarily involve administrative matters, fall within Exemption (b)(5).

Entry 34. Defendant has not met its burden of showing that the first redaction on Bates 602 falls within Exemption (b)(5), which is administrative in nature. The remaining redactions involve litigation strategy on Bates 602-04 and fall within Exemption (b)(5).

Entry 35. Defendant has not met its burden of proving that the redactions on Bates 605-09 fall within Exemption (b)(5) because they involve administrative and operational instructions and procedures.

Entry 36. Defendant has met its burden of proving that the redactions are warranted under Exemption (b)(5), except for the last two bullets on Bates 613, which are administrative in nature. Their disclosure would not chill.

Entry 37. Defendant has not met its burden of proving that the redactions are warranted under Exemption (b)(5) because they involve primarily administrative procedures.

Entry 38. Defendant has met its burden of proving that the first redaction on Bates 619 is warranted under Exemption (b)(5) as it discusses litigation strategy, but not the next two redactions, which are administrative in nature.

Entry 39. Defendant has met its burden of proving that the first two redactions on Bates 674 are warranted under Exemption (b)(5) as they discuss litigation strategy, but not the last redaction, which is administrative in nature.

Entry 40. Defendant has not met its burden of proving that the redactions are warranted under Exemption (b)(5). They discuss administrative policy, not litigation strategy, and their disclosure would not have a chilling effect.

Entries 41, 42. Defendant has failed to meet its burden of proving that the redactions on Bates 696–98 and Bates 725–28 are warranted under Exemption (b)(5) because they set out operating procedures, with the exception of those redactions on Bates 698 and 728-29 ("General Considerations for Litigating Dedicated

Docket Cases . . . .") that involve litigation strategy and fall within Exemption (b)(5).

Entry 43. Defendant has not met its burden of proving that the redactions in Bates 746-53 are warranted under Exemption (b)(5) because the document primarily involves procedures and administrative protocols implementing policies set by the Principal Legal Advisor. However, the redactions in Bates 753-54 are warranted because they are attorney work product reflecting litigation strategy, beginning with Paragraph B.

**ORDER**

Plaintiff's cross-motion for summary judgment (Dkt. 31) is **ALLOWED** in part and **DENIED** in part. Defendant's motion for summary judgment (Dkt. 20) is **ALLOWED** in part and **DENIED** in part. The government shall disclose the documents within 60 days, consistent with this Order.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge